UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSEPH ATTARDI, et al.<br>    Plaintiffs,<br><br>v.<br><br>BAYER CORPORATION and<br>BAYER CORPORATION SEVERANCE<br>PAY PLAN,<br>    Defendants. | )<br>)<br>)<br>)<br>) Civil Action No.: 04-10728 WGY<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

Defendants Bayer Corporation and Bayer Corporation Severance Pay Plan respectfully submit this Memorandum of Law in Support of Defendants' Motion for Summary Judgment.

Effective September 1, 1998, Bayer Corporation sold the printed circuit board operation of its AGFA Division to EFTC (D.St. at ¶¶ 4, 5, 7 and 10).[1]  As part of the transaction (and as required by the Asset Purchase Agreement between Bayer and EFTC), each of Bayer printed circuit board employees was offered and accepted employment by EFTC at the same location, and for salary/wage rates that were equal or greater to the salary/wage rates that Bayer paid them (D.St. at ¶¶ 5-11).

Section 3.06(8) of the Bayer Corporation Severance Pay Plan (D.St. at ¶¶ 12-14) (hereinafter "Severance Plan") provided:

> A severed employee will not be eligible for a severance benefit under this Plan if his or her employment with [Bayer] terminates for one of the following reasons: . . .

---

[1] "D.St." references are to paragraphs in Defendants' Local Rule 56.1 Statement of Undisputed Material Facts, which contains exhibit references.

1

> In connection with a divestiture of all or part of the assets of an Employer or the sale of all or part of the stock of an Employer, as a result of which as of the date of sale the Severed Employee (i) is employed by the Acquiring Entity or an affiliate of the Acquiring Entity, or (ii) is offered employment by the Acquiring Entity or an affiliate of the Acquiring Entity which offered employment (a) does not require the Severed Employee to Relocate and (b) is at a wage or salary level (determined without regard to employee benefits offered by either the Employer, the Acquiring Entity or the affiliate of the Acquiring Entity) equal to or greater than the Severed Employee's wage or salary level at the Employer on his Employment Severance Date . . .

Based on these basic operative facts, and for the reasons set forth herein, Defendants submit that Plaintiffs' claims must be dismissed in their entirety. Plaintiffs' claims for benefits are contrary to an express exclusion in the Severance Plan. Plaintiffs' claims for benefits also are barred by Plaintiffs' failure to exhaust the Severance Plan's administrative remedies. Additionally, Plaintiffs' claims for severance pay, for ERISA breach of fiduciary duty, and under common law all are time-barred due to Plaintiffs' failure to timely file their claims with this Court. Lastly, Plaintiffs' common-law claims are pre-empted by ERISA.

**II.      SUMMARY OF MATERIAL FACTS NOT IN DISPUTE**

**A.      Background: Bayer Maintains an ERISA Severance Pay Plan with Business Sale Exclusion.**

In 1998, Bayer Corporation conducted business throughout the United States through various divisions and business units, including its AGFA Division, which operated manufacturing facilities in three locations in Wilmington, Massachusetts, including a printed circuit board manufacturing unit. (D.St. at ¶¶ 1, 2). The 63 Plaintiffs in this action were among the 75 or so employees who worked in Bayer's printed circuit board operation in 1998.

At all relevant times herein, Bayer maintained the Severance Plan, a written, non-vested ERISA welfare benefit plan (D.St. at ¶¶ 12-13). Bayer Corporation was the Plan Administrator. (D.St. at ¶ 17). The Severance Plan expressly excluded from eligibility employees who, in the context of a divestiture of a Bayer business unit, were offered employment by the acquiror at a

2

wage/salary rate that was at least equal to the employee's former Bayer wage/salary rate. (D.St. at ¶ 14).

In August 1995, Bayer Corporation mailed to each Bayer employee a copy of a Summary Plan Description (hereafter, the "SPD"), which explained all of Bayer's ERISA-governed benefit plans, including the Severance Plan (D.St. at ¶¶ 20-21).[2] The SPD (D.St. at ¶ 22) contains the following severance pay exclusion provision:

> **When benefits are not paid**
>
> You will not be eligible for benefits if the plan administrator determines that: . . .
>
> - The premises, products, processes, or other activities of the division you work for are relocated, assigned, sold, leased, licensed, or subcontracted, and you are offered a comparable position (even if you choose not to accept it); . . .
>
> A "comparable position" is defined as employment that:
> - Does not require you to commute 35 or more miles farther than you did prior to your termination; and
> - Is at a wage or salary level (determined without regard to employee benefits) equal to or greater than your wage or salary level on the date of your termination.
>
> If you accept a new position, regardless of whether it is a comparable position, you will not be eligible for severance benefits with respect to your prior position, even if that position was eliminated. Generally, you accept a new position when you agree to assume the new position.

**B.    Bayer Sells Its Printed Circuit Board Operation to EFTC; Plaintiffs Accept EFTC Job Offers and Are Not Paid Severance.**

In early 1998, the Wilmington-based managers of Bayer's AGFA Division decided to divest the printed circuit business (D.St. at ¶ 3). A number of potential acquirors were contacted and asked to submit proposals for the printed circuit board operation (D.St. at ¶ 3). EFTC

---

[2] Copies of the SPD were also available to employees from the Bayer Human Resources Department and from employees' supervisors (D.St. at ¶¶ 34, 61).

Corporation, a contract manufacturer specializing in electronic fabrication, submitted a proposal in which it would purchase the printed circuit board shop, make job offers at the same salary/wage rate that Bayer was paying, and manufacture the printed circuit boards needed by Bayer at the same location using the former Bayer printed circuit board operation employees (D.St. at ¶¶ 4-6). Bayer and EFTC signed a Letter of Intent on July 15, 1998, confirming these terms (D.St. at ¶¶ 4-6).

Thereafter, Bayer held a series of group meetings with its printed circuit board employees. During these meetings, and in various other settings prior to September 1, 1998, Bayer officials told the printed circuit board employees that, because of the nature of the planned transaction, they would not be eligible for severance pay under the terms of the Bayer Severance Pay Plan (D.St. at ¶¶ 36-37). Employees were also told that, based on the terms of the Bayer Severance Plan, they would not be eligible for benefits if they declined EFTC job offers (D.St. at ¶¶ 36-37).

On or about August 14, 1998, EFTC made job offers to employees of the Bayer printed circuit board operation at salary/wage rates equal to or greater than their Bayer salary/wage rates, and for positions located in the same location as Bayer's printed circuit board operation (D.St. at ¶¶ 5, 8, 9, 10). EFTC representatives held meetings with the employees at which the employees filled out employment applications with EFTC, signed non-disclosure agreements with EFTC, and either enrolled in or declined EFTC's employee benefits plans, including health, dental, life, and 401(k) plans (D.St. at ¶¶ 56, 62).

All of the Plaintiffs accepted EFTC employment offers prior to, and in anticipation of, the closing on September 1, 1998 (D.St. at ¶ 9).

C.  **Agfa Corporation Is Formed in 1999; Plaintiffs Seek Severance Payments from Agfa Corporation.**

Four months after EFTC purchased the printed circuit board operation and hired Plaintiffs, Bayer divested its entire AGFA Division by spinning it off as Agfa Corporation, a new, independent corporation. (D.St. at ¶ 39).

On April 2, 2002, Plaintiffs' counsel wrote to the President of Agfa Corporation, demanding severance pay based on the September 1, 1998 EFTC transaction (D.St. at ¶¶ 41-43). The letter stated that "the factual/legal basis of [Plaintiffs'] ERISA claim" was based on Agfa Corporation's severance payments to employees laid off from its machine/model shop. Plaintiffs contended that consistent administration of the severance plan required that they also be paid severance. Agfa Corporation's attorney responded by letter dated June 3, 2002, in which he explained the differences between the EFTC transaction and Agfa Corporation's treatment of machine/model shop employees and noted that the time to appeal the EFTC decision had expired (D.St. at ¶ 44).[3]

The initial Complaint in this matter was filed on April 9, 2004 only against Agfa Corporation and Agfa Corporation's Severance Pay Plan (D.St. at ¶ 47). Plaintiffs filed a motion to substitute Bayer Corporation and Bayer Corporation Severance Plan as Defendants on August 23, 2004, and that motion was granted on September 7, 2004. Plaintiffs' First Amended Complaint, naming Bayer Corporation and the Bayer Corporation Severance Pay Plan, was filed on September 10, 2004 (D.St. at ¶ 48).

### III. STANDARD OF REVIEW

Summary judgment is appropriate if there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Madera v. Marsh USA, Inc., 426 F.3d 56,

---

[3] Only one Plaintiff, Robert Brown, has testified that he allegedly made an oral claim to Bayer for severance benefits in 1998.

61 (1st Cir. 2005) (citing Fenton v. John Hancock Mut. Life Ins. Co., 400 F.3d 83, 87 (1st Cir.), cert. den., 126 S. Ct. 380 (2005)). Where, as here, the moving party points to a lack of adequate evidence supporting the nonmoving party's case, the onus is on the non-moving party to present facts demonstrating a genuine issue for trial. See J. Geils Band Employees Benefit Plan v. Smith Barney Shearson, Inc., 76 F.3d 1245, 1251 (1st Cir.), cert. den., 519 U.S. 823 (1996).

When reviewing a denial of benefits under ERISA, the standard of review depends on the discretion afforded to the administrator under the ERISA plan. Campbell v. Bank Boston, N.A, 327 F.3d 1 (1st Cir. 2003). When, as here, the benefit plan grants the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court's review is limited to whether the administrator's decision was 'arbitrary or capricious.'" Id. at 5-6; Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 17-18 (1st Cir. 2006). See also Bachelder v. Comm. Satellite Corp., 837 F.2d 519, 521-22 (1st Cir. 1998) ("unless the trustees' interpretation of the plan is arbitrary or capricious, or without rational basis, it may not be disregarded.") (citing Rueda v. Seafarers Int'l Union of North America, 576 F.2d 939, 942 (1st Cir. 1978)). The First Circuit has already examined the relevant Plan and SPD language in this case and found that a deferential "arbitrary and capricious" standard of judicial review applies. Terry v. Bayer Corporation, 145 F.3d 28, 37 (1st Cir. 1998).[4]

---

[4] The Bayer SPD states (D.St. at ¶ 26): "Bayer Corporation shall have the exclusive discretionary right to interpret the terms and provisions of the Plans and to determine any and all questions arising under the Plans or in connection with the administration thereof, including, without limitation, the right to remedy or resolve possible ambiguities, inconsistencies, or omissions, by general rule or particular decision." Section 4.04 of the Plan states (D.St. at 18): "The Administrative Committee shall be authorized and have full discretion to interpret this Plan and to determine all questions arising in the administration, construction and application of the Plan. The decision of the Administrative Committee upon all matters within the scope of its authority shall be conclusive and binding on all parties."

## IV. ARGUMENT

### A. PLAINTIFFS' CLAIMS ARE BARRED BY THE FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES.

Claimants must exhaust their administrative remedies under an ERISA plan before bringing a lawsuit. Terry, 145 F.3d at 40; Drinkwater v. Metropolitan Life Ins. Co., 846 F.2d 821, 825 (1st Cir.), cert. den., 488 U.S. 909 (1988). Bayer's administrative review process was fully and clearly set forth in the SPD (D.St. at ¶ 23) and in the Severance Plan (D.St. at ¶ 16). Plaintiffs had a full and fair opportunity in 1998 to read and understand the relevant review procedures in the SPD, which also explained how to acquire additional information about this severance benefit and obtain copies of the actual Severance Plan (D.St. at ¶¶ 20, 21-30).[5] No Plaintiff challenged Bayer's determination that the EFTC transaction was not a severance pay event under the terms of the Plan or the SPD. Thus, Plaintiffs' failure to exhaust the Severance Plan's administrative review procedure requires that the instant claim for benefits be denied. Madera, 426 F.3d at 61-62.[6]

The letter from Plaintiffs counsel to Agfa Corporation (D.St. at ¶¶ 41-43), sent to the wrong company almost four years after the EFTC transaction, failed to satisfy exhaustion requirements. See Terry, 145 F.3d at 37-38 ("The same principles which inform the ERISA exhaustion requirement also counsel that part of that internal process includes the responsibility on the claimants part to file appeals in a timely fashion."). Moreover, that letter was restricted to a single claim: that Agfa Corporation's payment of severance to the machine/model shop employees required that severance be paid to Plaintiffs (D.St. at ¶ 44). Plaintiffs counsel's letter did not

---

[5] The SPD gave explicit instructions to employees concerning how to obtain the Severance Plan either from Bayer for from the U.S. Government (D.St. at ¶¶ 28-30).

[6] Mr. Brown, the one Plaintiff who claims to have orally challenged Bayer's decision on severance pay based on past reduction-in-force practices, nevertheless would be time barred from raising his claim since he cannot claim that he was "unaware" as of September 1, 1998 that his rights allegedly were violated.

advance any claims that the Severance Plan itself required payment of severance, that Plaintiffs should have been given an option to select severance pay instead of EFTC jobs, or that the SPD was ambiguous.

Plaintiffs also claim that their failure to exhaust administrative remedies is excused by Bayer's failure to provide them written notice of the denial of their severance. This claim is similarly misplaced. Although some of the Plaintiffs inquired informally about whether they were eligible for severance pay because severance was paid in past reductions-in-force, no Plaintiff made an oral claim to Bayer for severance benefits under the terms of the Plan. Since Plaintiffs never made a claim for severance benefits under the SPD or Plan, there was nothing for Bayer to deny in writing, and ERISA provisions concerning written notice of denial and the applicable review process do not apply. See Madera, 426 F.3d at 62.

**B.     PLAINTIFFS' CLAIMS ARE BARRED BY APPLICABLE STATUTES OF LIMITATION.**

**1.     Severance Plan Time Limits**

The Bayer SPD and Severance Plan contain specific deadlines and requirements for timely administrative review. If employees receive no response within 90 days of filing a claim for benefits, the claim is deemed denied (D.St. at ¶¶ 16, 23). The SPD and Severance Plan further require that requests for review of benefit denials be filed 60 days after an initial claim is denied (D.St. at ¶¶ 16, 23). See Terry, 145 F.3d at 40 (Court held claimant to Bayer Plan's 60 day appeal period). Plaintiffs' failure to invoke the Severance Plan review procedure requires dismissal of their claims.[7]

---

[7] This case should be dismissed with prejudice, and not held in abeyance or dismissed without prejudice pending submission of the Plaintiffs' claims to Bayer's ERISA Review Committee based on futility principles. The time periods under the Severance Plan have long expired, and the Severance Plan itself makes clear that no severance benefits are owed to the Plaintiffs. See, e.g., Madera 426 F.3d at 63-64 (summary judgment dismissal of ERISA case upheld on exhaustion, timeliness and substantive merits); Recupero v. NE Telephone & Telegraph Co., 118 F.3d 820, 840 (1st Cir. 1997). See also Rivera-Diaz v. American Airlines, Inc., 2000 U.S. App. LEXIS 18008 (1st Cir. 2000)

**2.      ERISA Section 502(a)(1)(B) Claims for Benefits Are Time-Barred.**

When no shorter statute of limitations is provided within an ERISA plan, a claim for benefits under ERISA is governed by the statute of limitation prescribed for contract actions in the state in which the claim is brought; thus, Massachusetts' six-year statue of limitation for contracts applies here. See, e.g. Alcorn v. Raytheon Company, 175 F. Supp. 2d 117, 120-21 (D.Mass. 2001).

The EFTC transaction closed, and any claim for severance benefits arose, on September 1, 1998. The motion to permit amendment of the Complaint to add Bayer and the Bayer Severance Plan was granted on September 7, 2004, and the First Amended Complaint was not filed until September 10, 2004, more than six years after any claim for benefits arose. Thus, Plaintiffs' claims for benefits under ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), are time-barred. See Watson v. Deaconess Hospital, 298 F.3d 102, 118 (1st Cir. 2002) (ERISA claim against defendant added to suit after statute of limitations expired was time-barred).[8]

**3.      ERISA Fiduciary Duty Breach Allegations Are Time-Barred**

ERISA Section 413(2), 29 U.S.C. §1113(2), requires that breach of fiduciary duty claims under ERISA Section 404, 29 U.S.C. §1104, be brought within three years of Plaintiff's actual knowledge of breach. Edes v. Verizon Communications, Inc., 417 F.3d 133, 140-141 (1st Cir. 2005). Plaintiffs learned that they would not receive Bayer severance pay in August 1998. Some Plaintiffs admit that they knew prior to September 1, 1998 that EFTC's fringe benefits were less

---

(unpublished). If the Court does not dismiss the case based on futility, then Plaintiffs must submit their claims for benefits to Bayer's ERISA Review Committee, as required by the Severance Plan.

[8] In their 2002 letter to Agfa Corporation, Plaintiffs' counsel claims only that disparate treatment of machine shop employees requires payment of severance benefits. If Plaintiffs seek to amend their complaint to add ERISA Section 510 discrimination claims (29 U.S.C. §1140), such claims are barred by the applicable Massachusetts three year statute of limitation. Edes, 417 F.3d at 138; Muldoon v. C.J. Muldoon & Sons, 278 F.3d 31, 32 (1st Cir. 2002); M.G.L. c. 260, §2A.

generous than Bayer's,[9] and, by late September-early October 1998, all Plaintiffs understood that fact (D.St. at ¶¶ 48, 54, 55, 56, 62, 64).  See Edes, 417 F.3d at 139.

Plaintiffs' delay of more than five years before raising any claim of fiduciary breach renders their present attempt to pursue fiduciary breach allegations time-barred.  See Edes, 417 F.3d at 142; ERISA Section 413(2), 29 U.S.C. §1113(2).[10]

### C. PLAINTIFFS' CLAIMS FOR SEVERANCE PAY LACK MERIT; THE EXPRESS TERMS OF THE PLAN EXCLUDE PLANTIFFS FROM SEVERANCE PAY ELIGIBILITY.

#### 1. Section 3.06(8) of the Plan Makes Plaintiffs Ineligible for Severance Benefits Under 29 USC §1132(a)(1)(B).

Plaintiffs' claim for benefits must be brought pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. §1132(a)(1)(B), which authorizes participants to bring a civil action "to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan."  The Plaintiffs are not entitled to any benefits under the Bayer Severance Pay Plan because Section 3.06(8) of the Plan explicitly disqualifies them from severance eligibility (D.St. at ¶¶ 14, 19, 22).  Each Plaintiff was offered employment with EFTC at an equal or greater salary and at the same location where they had worked for Bayer.  All Plaintiffs and other printed circuit board employees accepted EFTC employment prior to September 1, 1998 (D.St. at ¶¶ 9, 19).  Thus, the express language of Bayer Severance Pay Plan requires rejection of Plaintiffs' claim for severance benefits.

---

[9] Cf. Edes 417 F.3d at 142 (actual knowledge requirement not intended to excuse willful blindness by Plaintiff).  In this case, the only way Plaintiffs could go through EFTC benefit orientation in August 1998 and not realize that the benefits were different would be by engaging in willful blindness.  (See D.St. at ¶¶ 54, 55, 56, 59, 62, 63, 64, 65).

[10] Alternatively, the Plaintiffs' fiduciary breach claim is barred by the alternative six year statute of limitations for fiduciary duty claims in ERISA §413(1), 29 USC §1113(1), for the reasons stated in Section IV(B)(2) above concerning the untimeliness of Plaintiffs' Section 502(a)(1)(B) claim for severance benefits.

**2.   Plaintiffs' Claim That The Term "Divestiture" in Severance Plan Section 3.06(8) Does Not Include the Sale of Assets Is Without Merit.**

Plaintiffs argue that Plan Section 3.06(8) does not apply to the EFTC sale based on a narrow definition of the term "divestiture" found in a Massachusetts Superior Court opinion.[11] This newly-minted claim lacks merit for several reasons. First, by its express terms, the Severance Plan is governed by Pennsylvania, and not Massachusetts, law (D.St. at ¶ 13, (Section 4.12)). Second, in Plan Section 3.06(8) itself, it is clear that the terms "sale" and "divestiture" are synonymous; the most common way for a company to divest assets is to sell them. Third, the term "divestiture" is commonly understood to apply to the sale of corporate business units and was so understood by Bayer officials in 1998 (D.St. at ¶ 50).[12] Accordingly, Plaintiffs' effort to impose an illogical definitional gloss to Plan Section 3.06(8) is without merit;[13] Bayer is well-within its broad discretion in defining "divestiture" as including the sale of assets.[14]

**3.   Agfa Corporation's Payment of Severance Pay to Machine/Model Shop Employees Does Not Entitle Plaintiffs to Severance Pay.**

There is no merit in Plaintiffs' claim, stated in the 2002 letter to Agfa Corporation (D.St. at ¶¶ 41-43), that Agfa Corporation's payment of severance to laid off machine/model shop

---

[11] See Bain Capital v. Wesley Jessen Corp., 16 Mass L. Rep. 257, 2003 Mass Super. LEXIS 124 (2003) (Van Gestel, J.).

[12] Courts often use "divestiture" synonymously with "sale." See, e.g., Ed Peters Jewelry Co. v. C&J Jewelry, 124 F.3d 252, 266 (1st Cir. 1997); Dinco v. Dylex, Ltd., 111 F.3d 964, 966 (1st Cir. 1997); Aronson v. Servus Rubber, Div of Chromalloy, 730 F.2d 12, 13 (1st Cir. 1984); Joyce v. John Hancock Fin. Servs., 2006 U.S. Dist. LEXIS 84799 at *8 (D. Mass. Nov. 2, 2006); Aretakas v. Gen Signal, Inc. 2006 U.S. Dist. LEXIS 38058 at *7 (D. Mass. Jun. 7, 2006); Crowell v. Ionics, Inc., 343 F.Supp. 2d 1, 9 (D. Mass 2004). Dictionaries also define "divestiture" to mean, among other things, the sale, liquidation, spinoff or disposal of a business unit. See, e.g., The American Heritage Dictionary of the English Language, (Joseph P. Pickett, Executive Ed., Houghton Mifflin Company 4th ed. 2006) (defining "divestiture" alternatively as "an act of divesting" or "the sale, liquidation or spinoff of a corporate division or subsidiary"); Oxford English Dictionary, (J.A. Simpson & E.S.C. Weiner, eds., Clarendon Press 2d ed. 1989) (noting that a definition of "divestiture" used chiefly in the United States is, "in financial contexts, the policy or practice of selling off subsidiary interests or withdrawing from investments").

[13] See Liston v. Unum Corp. Off. Sev. Plan, 330 F.3d 19, 23 (1st Cir. 2003) (rejecting claimant's literal plan interpretation that made no sense).

[14] The question as to how Plan terms should be defined is the quintessential and exclusive discretionary function of the plan administrator. See D.St. 18, 26. See also Bachelder, 837 F.2d at 521.

11

employees in 2000 required payment of severance by Bayer to printed circuit board employees transferred to EFTC in 1998.

First, Agfa Corporation is a separate and distinct corporation with its own severance plan. Plaintiffs never were employed by Agfa Corporation. Plaintiffs' untimely demand was on the wrong severance plan and addressed to the wrong corporation.

Second, Agfa Corporation's machine/model shop closure was factually different than Bayer's EFTC divestiture. The Agfa Corporation machine/model shop was closed, its employees were laid off, and its equipment was auctioned off (D.St. at ¶¶ 44-45). There was no asset purchase agreement that guaranteed the machine/model shop employees continued employment without interruption with the purchaser, and less than half of the former machine/model shop employees eventually were hired by the purchaser of the machine/model shop equipment (D.St. at ¶ 45). There is no evidence whatsoever that any machine/model shop employees were offered jobs at equal or greater salaries with their new employer. Thus, the Plaintiffs' cannot show that Agfa Corporation's layoff of machine/model shop employees is relevant.[15]

**4.      Plaintiffs "expectations" do not entitle them to severance pay.**

Plaintiffs' claim that severance payments to previous laid-off employees somehow created an enforceable expectation of severance lacks merit. Non-vested ERISA welfare benefits are governed by the written terms of the plan, and not employees' uninformed hopes or expectations. See Balestracci v. NSTAR Electric & Gas Corp., 449 F.3d 224, 230 (1st Cir. 2006). See also D.St. at ¶ 13 (Section 4.11); D.St. at ¶ 25.

---

[15] McGath Auto Body v. North Shore, Inc., 7 F.3d 665, 670 (7th Cir 1993); Kourinos v. Interstate Brands Corp., 324 F.Supp.2d 105, 108, 109 (D.Me. 2004).

### D. PLAINTIFFS' CLAIM THAT THEY SHOULD HAVE BEEN ALLOWED TO REJECT EFTC JOB OFFERS AND RECEIVE SEVERANCE PAY AS LAID OFF EMPLOYEES LACKS MERIT.

Plaintiffs' alternative ERISA Section 502(a)(1)(B) claim for benefits is premised on the fact that, before September 1998, Bayer's Wilmington management had allowed employees to indicate informally a willingness to be included in future reductions-in-force and had given severance to those employees who subsequently were selected for inclusion in reductions-in-force. The Plaintiffs argue that, based on this history, they each should have been given the option to either take an EFTC job or receive Bayer severance pay.[16]  This argument is without merit.

First, Plaintiffs' approach is directly contrary to the express, written terms of the Severance Plan and the SPD, both of which expressly make clear, in the event employees declined EFTC offers, they would be disqualified from severance pay eligibility (D.St. at ¶¶ 14, 22).

Second, this case does not involve a reduction-in-force (D.St. at ¶ 65). Rather, it invokes a corporate divestment of a business unit in which employees continued employment without interruption with the new owner in the same location and at equal or higher salaries.[17]

Third, Plaintiffs' position misstates the record. Bayer did not consider "volunteers" for all reductions-in-force (D.St. at ¶¶ 51-52). Moreover, Bayer did not select specific volunteer employees for layoff if such selection was contrary to Bayer's business interests (D.St. at ¶ 52).

Bayer's decision not to conduct a reduction-in-force, but rather to divest the printed circuit board operation with a contractual provision specifying continued employment of circuit board employees with EFTC, was reasonable and lawful. Employers are generally free to make business

---

[16] If Plaintiffs wished to pursue this theory, it should have been raised in 1998 before the ERISA Review Committee. Liston, 330 F.3d at 23-24.

[17] See Adage v. Allen 967 F.2d 695, 700 (1st Cir. 1992) (citations omitted) ("The term 'reduction-in-force' would rarely be thought to cover, for severance pay purposes, the selling of a division to another company under circumstances in which the workforce is kept solidly in place by the purchaser, doing roughly comparable work for roughly comparative wages.")

decisions, even if such decisions impact ERISA plans or eligibility. See The Blaw Knox Ret. Inc. Plan v. White Consol. Indus., 998 F.2d 1185, 1189 (3d Cir. 1993) (employer's sale of unprofitable business units was a "corporate business decision" not subject to ERISA's fiduciary provisions, even though sale was structured to include existing pension plans). See also Campbell, 327 F.3d at 6 ("The ERISA fiduciary duty doctrine envisions that one entity will have a fiduciary duty attach to some actions but not others . . .."); Vartanian v. Monsanto Co., 131 F.3d 264, 268 & n.5 (1st Cir. 1997).[18] Here, Bayer's decision to structure the transaction with EFTC as it did was not only lawful, but also was contemplated by the express terms of the Severance Pay Plan, which provided that employees would not receive severance if they were offered comparable employment with the purchaser of a Bayer business unit (D.St. at ¶ 14).

  **E. PLAINTIFFS' CLAIM THAT THE SPD ENTITLES THEM TO SEVERANCE LACKS MERIT.**

  **1. The SPD Is Consistent with the Severance Plan's Exclusion of Plaintiffs from Severance Pay Eligibility.**

ERISA Section 102(a), 29 U.S.C. §1022(a) requires, in relevant part, that summary plan descriptions be sufficiently accurate and comprehensive to reasonably apprise participants of their rights and obligations under the plan. As this Court noted in Joyce, although terms of an SPD that are in conflict with the underlying plan may be binding on the plan administrator, a claimant must show that he was harmed by the violation to recover based on the conflicting SPD terms. Joyce v. John Hancock Fin. Servs., 2006 U.S. Dist. LEXIS 84799 at *38 (D. Mass. Nov. 2, 2006) (citing Mauser v. Raytheon Co. Pension Plan, 239 F.3d 51, 55 (1st Cir. 2001)).

---

[18] Further, because employers may entirely revoke welfare benefit plans at any time, lesser actions, like structuring a transaction in a manner that legitimately avoids severance obligations, likewise are proper. See Balestracci, 449 F.3d at 232-33; Campbell, 327 F.3d at 6-7.

There is no substance to Plaintiffs' belated claim, first raised in 2004, that Plaintiffs are entitled to Bayer severance based on an alleged "ambiguity" in the Bayer Summary Plan Description. The Bayer Summary Plan Description at issue provides as follows (D.St. at ¶ 22):

**When benefits are not paid**

You will not be eligible for [severance benefits] if the plan administrator determines that:…

- [7] The company offers you a comparable position (even if you choose not to accept it);

- [8] The division of the company you work for or the company itself is sold or divested and you either:
  - become an employee of the new owner, or
  - the new owner offers you continuing employment in a comparable position (even if you choose not the accept it);

- [9] The premises, products, processes, or other activities of the division you work for are relocated, assigned, sold, leased, licensed, or subcontracted, and you are offered a comparable position (even if you choose not to accept it);

Plaintiffs initially argue that bullet point 8 is inapplicable because only the printed circuit board operation, and not Bayer's entire AGFA Division, was sold to EFTC. Plaintiffs then note that, while bullet point 8 makes reference to "new owner," bullet point 9 only references an "offer of comparable position" without specifying whether such an offer must be from Bayer, the new owner, or both. Plaintiffs' argument concludes with the proposition that employees reasonably could construe bullet point 9 as applying only to inter-company offers within Bayer in the absence of an express reference to "a new owner." Plaintiffs' argument is flawed in several respects.

First, the language of the bullet point 7 of the SPD, which Plaintiffs conveniently ignore, expressly disqualifies from severance eligibility employees who accept comparable job offers from Bayer. Bullet point 7 would be utterly redundant if Plaintiffs' construction of bullet point 9

15

was adopted. See Bouchard v. Crystal Coin Shop Co., 843 F.2d 10, 13-14 (1st Cir. 1998) (Court should avoid interpretation of plan that would render plan provision superfluous).

Indeed, the common sense interpretation of bullet point 9, used by Bayer's officials (D.St. at ¶ 31), is that bullet point 9 applies to all comparable job offers, both from the new owner or from Bayer.[19] Indeed, why would any company deny severance to employees who transferred to a new company as part of the sale of an entire division, but grant severance benefits to identically-situated employees who transfer to a new company as part of a sale of less than a full division? Bayer's construction of the SPD, which instead focuses on the lack of employment continuity, makes eminent sense.

Of course, the purported "ambiguity" in the SPD is resolved dispositively by the Severance Plan Section 3.06(8), which explicitly provides that "comparable job offers" from an acquiror of all or part of the Company's assets" disqualify employees from severance pay eligibility. Since the Severance Pay Plan is not silent, but rather directly addresses this alleged ambiguity, the express Severance Pay Plan terms (Section 3.06) are dispositive. See Joyce, 2006 U.S. Dist. LEXIS 84799 at *41-*42; Bachelder, 837 F.2d at 521. See also Davis v. First Union Corp. 213 F.Supp. 2d 29, 35 (D.Mass. 2002); Fenton, 400 F.3d at 89.

## 2.  **Even If Plaintiffs Could Show That They Were Confused by the SPD Language, They Cannot Establish Detrimental Reliance.**

Terms of a SPD that conflict with a Plan must not be considered unless the participant demonstrates some significant reliance upon the faulty language. Fenton, 400 F.3d at 88; Bachelder, 837 F.2d 519, 522-23; Govoni v. Bricklayers, Masons & Plasters Int'l Union, 732 F.2d 250, 252 (1st Cir. 1984). To advance this claim, each Plaintiff must show that they reviewed the

---

[19] The interrelation of the three bullet points is plain to observe. Bullet point 7 addresses inter-company transfers generally. Bullet point 8 only references acquiring companies because, when a whole division is sold, typically all of the division's employees transfer to the acquiror and cross-over within Bayer would be rare. Bullet point 9 addresses situations, like the EFTC transaction, where only part of a business is sold; in this context, some employees remain with Bayer while others are offered positions with the acquiror.

SPD prior to September 1, 1998 and believed that the "ambiguous" SPD terms required severance payment.[20]  This showing, however, would conclusively establish that Plaintiffs' claims accrued prior to September 1, 1998, and would thus confirm the basis for dismissal under applicable statutes of limitations.  Moreover, if Plaintiffs accepted EFTC's job offers believing that they were owed severance, how could detrimental reliance be shown?

      F.      **PLAINTIFFS' ESTOPPEL AND MISREPRESENTATION CLAIMS LACK MERIT.**

Plaintiffs "alternatively" plead that Bayer is liable "under estoppel, both state and federal," from denying their severance benefits.  This claim apparently is premised on the highly disputed allegation by some Plaintiffs that, prior to the sale, Bayer intentionally made misrepresentations to printed circuit board employees that the fringe benefits offered by EFTC would be better or equal to those of Bayer to induce employees to accept EFTC jobs.  Plaintiffs further speculate that, absent such misrepresentations, enough employees would have refused EFTC job to disrupt the sale, resulting in the eventual shutdown of the printed circuit board operation and the payment of severance to them.  (But see D.St. at ¶¶ 54-57, 59, 63-65).

As this Court recently has noted, the First Circuit openly has questioned whether an equitable estoppel claim is permitted under ERISA.  Joyce, 2006 U.S. Dist. LEXIS 84799 at *49, citing Mauser, 239 F.3d at 57-58.

Further, the Plaintiffs' estoppel and misrepresentation claims are inconsistent with the plain language of the Severance Plan and SPD, which both state that, for purposes of determining severance pay eligibility, a "comparable position" is a job affording greater or equal compensation

---

[20] In fact, although all Plaintiffs were afforded copies of the SPD prior to the EFTC transaction, there is scant evidence that employees ever read the SPD (D.St. at ¶¶ 60, 61). See Mauser, 239 F.3d at 55 ("It is not enough to show a 'mere expectation' that certain benefits will materialize; action must have been taken in reliance on reasonable expectations formed after reading [the SPD]."); Fenton, 400 F.3d at 88.  Moreover, this alleged ambiguity in the SPD was not raised to Bayer officials at the time of the transaction, or even in Plaintiffs counsel's 2002 letter to Agfa Corporation.

"excluding employee benefits." Essentially, Plaintiffs' estoppel claim would require an interpretation of the severance plan contrary to its express terms; it would effectively amend the severance plan to define "comparable position" to include employee benefits.

In any event, Plaintiffs' claim that Bayer's alleged misrepresentation effectively overrides the terms of the Severance Plan and entitles them to severance pay under estoppel principles is contrary to law. See, e.g., Fenton, 400 F.3d at 87-89 (extraneous documents may not alter terms of ERISA plan); Liston v. UNUM Corp. Officer Severance Plan, 330 F.3d 19, 25 (1st Cir. 2003); Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274, 279 (1st Cir. 2000); Perry v. New England Bus. Svc., Inc., 347 F.3d 343, 346 & n.3 (1st Cir. 2003); Nelson v. Carle Clinic Ass'n P.C., 328 F.3d 915, 917 (7th Cir.), cert. den., 540 U.S. 1073 (2003).

Moreover, if Plaintiffs alternatively seek recovery under ERISA breach of fiduciary duty provisions or Massachusetts common law tort theories for the alleged misrepresentation, such claims are time-barred.[21]

### G.   PLAINTIFFS' STATE LAW CLAIMS FOR BREACH OF CONTRACT, INTENTIONAL MISREPRESENTATION AND COVENANT OF GOOD FAITH AND FAIR DEALING ARE PRE-EMPTED BY ERISA.

Plaintiffs' First Amended Complaint contains alternative Massachusetts state law claims for breach of contract, "state law" estoppel and violation of the implied covenant of good faith and fair dealing. Since such Massachusetts common law claims by their very nature relate to the claim for benefits under the Severance Plan, they are pre-empted by ERISA. See, e.g., Ingersoll-Rand v. McClendon, 498 U.S. 133, 111 S.Ct. 478 (1990); Hampers v. W.R. Grace & Co., Inc., 202 F.3d 44, 51 (1st Cir. 2000); McMahon v. Digital Equip. Corp. Corp, Inc., 162 F.3d 28, 36 (1st Cir.

---

[21] Any state law claims based on the alleged misrepresentation about EFTC benefits would be pre-empted by ERISA for the reasons stated in Section IV(G) below. Miara v. First Allmerica Fin. Life Ins. Co., 379 F. Supp. 2d 20 (D.Mass. 2005). In any event, those state law claims are also time-barred. See M.G.L. Ch. 260, §2(A)

1998); Vartanian v. Monsanto Co., 14 F.3d 697, 700 (1st Cir. 1994); Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196, 299 (1st Cir. 1977).

## CONCLUSION

For the foregoing reasons, Defendants respectfully submit that Plaintiffs case should be dismissed in its entirety, with prejudice.

                            Respectfully submitted,

                            BAYER CORPORATION and BAYER
                            CORPORATION SEVERANCE PAY PLAN,

                            By Their Attorneys,


                            /s/ John F. Welsh
                            John F. Welsh, BBO # 522640
                            Bello Black & Welsh LLP
                            One Exeter Plaza
                            699 Boylston Street, 10th Floor
                            Boston, MA 02116
                            (617) 247-4100


Dated:  January 17, 2007