BAYER CORPORATION

SEVERANCE PAY PLAN

(Restated effective as of January 1, 1995)

TABLE OF CONTENTS

                                                          Page

ARTICLE I - Definitions

    Section 1.01    Acquiring Entity..........................1
    Section 1.02    Administrative Committee.................1
    Section 1.03    Affiliate................................1
    Section 1.04    COBRA....................................1
    Section 1.05    Code.....................................1
    Section 1.06    Compensation.............................2
    Section 1.07    Employee.................................2
    Section 1.08    Employer.................................2
    Section 1.09    Employment Commencement Date.............2
    Section 1.10    Employment Severance Date................2
    Section 1.11    Full Years of Service....................2
    Section 1.12    Bayer....................................2
    Section 1.13    Plan.....................................2
    Section 1.14    Relocate.................................2
    Section 1.15    Severed Employee.........................2
    Section 1.16    Termination for Cause....................3


ARTICLE II - Participation in the Plan

    Section 2.01  Eligibility to Participate...............3


ARTICLE III - Benefits

    Section 3.01    Conditions to Entitlement of Benefits....3
    Section 3.02    Amount of Severance Benefit..............4
    Section 3.03    Payment of Severance Benefit.............5
    Section 3.04    Continuation of Employee Benefits........5
    Section 3.05    COBRA....................................6
    Section 3.06    Ineligible Terminations of Employment....6
    Section 3.07    Notice to Employees......................7
    Section 3.08    Re-employment/Reinstatement..............8

Section 3.09  Cessation Upon Refusal to Accept
              Re-employment...........................9
Section 3.10  Death Benefit...........................9

ARTICLE IV - Administration of the Plan

Section 4.01  Administrative Committee.................9
Section 4.02  Officers and Agents.....................9
Section 4.03  Meetings and Committee Action...........9
Section 4.04  Powers.................................10
Section 4.05  Rules and Regulations..................10
Section 4.06  Reports................................10
Section 4.07  Employer to Furnish Information.........10
Section 4.08  Claims Procedure.......................10
Section 4.09  Employment of Professional Assistance...11
Section 4.10  Indemnification........................11
Section 4.11  Amendment and Termination..............12
Section 4.12  Governing Law..........................12
Section 4.13  Effect of a Mistake....................12

APPENDIX A - SEVERANCE PAY SCHEDULE
APPENDIX B - REQUEST FOR LUMP SUM PAYMENT OF SEVERANCE BENEFITS
APPENDIX C - FORM OF RELEASE

BAYER CORPORATION
SEVERANCE PAY PLAN


Bayer Corporation (formerly Miles Inc.), an Indiana corporation, hereby amends and restates the Miles Inc. Severance Pay Plan, effective as of January 1, 1995, to reflect the new name of the corporate sponsor and to amend the definition of "compensation" to include commissions. In all other respects, this Plan is merely a continuation of the Miles Inc. Severance Pay Plan.


ARTICLE I

Definitions

In this Plan the singular includes the plural, the masculine includes the feminine and the initially capitalized words shall have the following meanings unless the context clearly indicates otherwise:

Section 1.01. Acquiring Entity. In connection with the divesture of all or part of the assets of an Employer or the sale of all or part of the stock of an Employer, any entity which acquires all or part of the assets of an Employer or the stock of an Employer.

Section 1.02. Administrative Committee. The committee appointed by the Board of Directors of Bayer to act on behalf of Bayer with respect to the Plan.

Section 1.03. Affiliate. Any entity whose participation in this Plan is approved by the Executive Committee of the Board of Directors of Bayer.

Section 1.04. COBRA. The continuation coverage provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985, currently contained in Code section 4980B, as such provisions may be amended from time to time.

Section 1.05. Code. The Internal Revenue Code of 1986, as amended. References to a section of the Code will include references to a successor section containing substantially similar provisions.

Section 1.06. Compensation. The Severed Employee's weekly base salary on his or her Employment Severance Date, as more specifically defined in the summary plan description of the Plan. Effective as of January 1, 1995, a Severed Employee's weekly base salary includes the average weekly commissions earned

by him or her during the twelve-month period preceding his or her Employment Severance Date.

Section 1.07. Employee. A person who regularly is employed by an Employer as a full-time salaried employee or an hourly paid employee or a part-time employee who is scheduled to work at least twenty hours per week; provided, however, that the term "Employee" shall not include an individual covered by a collective bargaining agreement between employee representatives and an Employer unless the collective bargaining agreement expressly provides for participation in this Plan.

Section 1.08. Employer. Bayer and its Affiliates.

Section 1.09. Employment Commencement Date. The first day on which an Employee is employed by an Employer.

Section 1.10. Employment Severance Date. The date the notice period provided in Section 3.07 expires with respect to a Severed Employee or would have expired but for the Severed Employee receiving pay in lieu of the applicable notice.

Section 1.11. Full Years of Service. The number of months of employment during the period beginning with the Employment Commencement Date and ending on the Employment Severance Date, excluding any period of time not actively employed by an Employer, divided by twelve. An Employee who is (i) not actively employed by an Employer and (ii) eligible to receive benefits under the Employer's long term disability plan will be considered "actively employed" for purposes of determining Full Years of Service under this Plan.

Section 1.12. Bayer. Bayer Corporation, an Indiana corporation, which will be the Plan's "administrator," as defined in section 3(16)(A) of the Employee Retirement Income Security Act of 1974, as amended, and may act through the Administrative Committee.

Section 1.13. Plan. The Bayer Corporation Severance Pay Plan as now in effect or hereafter amended from time to time.

Section 1.14. Relocate. The requirement that a Severed Employee move to a new principal place of work which requires the Severed Employee to commute at least 35 miles more than his commute to his former principal place of work with an Employer.

Section 1.15. Severed Employee. An Employee who is designated pursuant to Section 2.01 as being eligible to participate in the Plan and whose employment with all Employers terminates in accordance with the terms of this Plan.

Section 1.16. <u>Termination for Cause</u>. A termination of employment as a result of theft, lying, insubordination, violation of safety rules, unlawful discrimination, public lewdness, consumption of alcohol on the premises of an Employer, use, sale or distribution of drugs, disclosure of confidential information regarding an Employer or its operations, the aiding or assisting of any person or entity which is competitive with an Employer, conviction of a felony, or any other reason which the Administrative Committee, in its sole discretion, shall deem appropriate.

## ARTICLE II

## Participation in the Plan

Section 2.01. <u>Eligibility to Participate</u>. An Employee shall participate in the Plan as of the later of his or her Employment Severance Date or the date such Employee is designated in writing by the Administrative Committee as being eligible to participate in this Plan.

## ARTICLE III

## Benefits

Section 3.01. <u>Conditions to Entitlement of Benefits</u>. Except as otherwise provided in Sections 3.06 and 3.09 and subject to the conditions described below, upon involuntary termination of employment with all Employers, a Severed Employee shall be entitled to a severance benefit under this Article III if such involuntary termination of employment is due to declining business conditions, position elimination, unavailability of a position where an Employee is able to return to work after a bona fide medical leave of absence, discontinuance/relocation of operations, inability to meet the requirements of the position or any other reason which the Administrative Committee, in its sole discretion, shall deem appropriate. The Administrative Committee's determination of the cause of the Severed Employee's termination of employment shall be conclusive and binding on all parties. As conditions to initial receipt and continuation of benefits under this Plan, all Severed Employees must:

    (i)   return to the Employer all property of the Employer
          held by the Severed Employee,

    (ii)  hold confidential any and all information concerning an
          Employer, whether with respect to its business, opera-
          tions, finances, Employees or otherwise;

(iii)   cooperate fully with an Employer to complete the transition of matters with which the Severed Employee is familiar or responsible and to make himself or herself reasonably available to answer questions or assist in matters which may require attention after the Severed Employee's Employment Severance Date;

(iv)    execute and deliver to his or her Employer such forms as the Administrative Committee, in its sole discretion, shall decide, including but not limited to a general release substantially in the form attached as Appendix C with such changes as the Administrative Committee may from time to time authorize; and

(v)     comply with any additional requirements contained in such Severed Employee's employment contract or employee agreement, if any.

If, in the judgment of the Administrative Committee, the Severed Employee has violated one or more of the above conditions to entitlement of benefits, the Administrative Committee, upon written notice to the Severed Employee, may elect either to:

(i)     terminate the Severed Employee's participation in this Plan, in which case all severance benefits paid to the Severed Employee shall be repaid to the Employer within thirty days of the date of the written notice; or

(ii)    discontinue the payment to the Severed Employee of the Severed Employee's severance benefits, in which case the Severed Employee's obligations under this Section 3.01 shall continue in full force and effect.

The Administrative Committee's election to discontinue payment of severance benefits instead of terminating the Severed Employee's participation in this Plan shall be in addition to, and not in lieu of, all legal and equitable remedies available to restrain further violations of the conditions to entitlement of benefits by the Severed Employee and to recompense the Employer for damages caused by the Severed Employee's violations.  The notice of violation given by the Administrative Committee to the Severed Employee shall inform the Severed Employee of the option elected hereunder.

Section 3.02.  Amount of Severance Benefit.  Subject to Section 3.01, each eligible Severed Employee shall be entitled to a severance benefit determined under the schedule set forth in Appendix A.  Any amounts owed by the Severed Employee to an Employer shall be deducted from the Severed Employee's severance

benefit in such manner as the Administrative Committee, in its sole discretion, shall decide.

The Severed Employee will also be paid for all accrued vacation entitlements which have not been taken as of his or her Employment Severance Date. Any severance benefits payable under this Plan shall be coincident with, and not in addition to, any benefits payable to a Severed Employee under the Worker Adjustment and Retraining Notification Act.

Section 3.03.    Payment of Severance Benefit. A Severed Employee shall receive his or her severance benefit in accordance with his or her established pay schedule payable at the beginning of the first pay period immediately following the later of (i) his or her Employment Severance Date or (ii) the expiration of the revocation period, if any, applicable to the general release executed by the Severed Employee and continuing until fully paid without interest. Notwithstanding the foregoing, the Severed Employee may request a lump sum payment of his or her severance benefit in writing in the form attached hereto as Appendix B or such other form as may be satisfactory to the Administrative Committee. The Administrative Committee or its delegee, in its sole discretion, may reject any such request.

Section 3.04.    Continuation of Employee Benefits.

(a)  Health and Welfare Benefits. For the duration of severance benefit payments hereunder, the Severed Employee shall continue to be eligible to participate and make contributions to the cost of Employer-provided medical, dental, life and accidental death and dismemberment benefits and be eligible to make contributions to an employee spending account, provided that the Severed Employee was entitled to participate in such benefit plans and make such contributions as of the Employment Severance Date. All medical, dental, life and accidental death and dismemberment benefits will be discontinued at the end of the month in which severance benefit payments hereunder cease. The Severed Employee will no longer be eligible to make contributions to an employee spending account upon cessation of severance benefit payments hereunder.

If a Severed Employee receives a lump sum payment of severance benefits hereunder, then medical, dental, life and accidental death and dismemberment benefits will cease as of the end of the month in which the Severed Employee's Employment Severance Date occurs and the Severed Employee will be ineligible to make contributions to an employee spending account as of his or her Employment Severance Date.

Regardless of the form of payment of the Severed Employee's severance benefit hereunder, all employee benefits

other than those specified above will cease as of his or her last day worked, including but not limited to the following:

(i)    short-term disability;

(ii)   long-term disability;

(iii)  vacation accruals;

(iv)   holiday pay;

(v)    business travel and accident insurance; and

(vi)   any other employee benefit program not specifically mentioned herein.

(b)  Retirement Benefits.  Solely for the purpose of determining a Severed Employee's (i) eligibility for a deferred vested retirement benefit under any qualified defined benefit plan, (ii) vested interest in accounts under any qualified defined contribution plan or (iii) eligibility for post-retirement medical or life insurance benefits under such plans sponsored by an Employer on the date the Severed Employee commences participation in this Plan, the employment of a Severed Employee will be considered to be continued for the number of weeks such Severed Employee is entitled to receive severance benefits hereunder, regardless of whether a lump sum payment of severance benefits is requested and approved.  However, all employer and employee contributions on behalf of a Severed Employee to any defined contribution plan maintained by an Employer as well as all benefit accruals for such Severed Employee under any defined benefit plan sponsored by an Employer will cease as of such Severed Employee's Employment Severance Date.  Further, a Severed Employee whose severance benefit hereunder is based on the Sterling Winthrop Inc. severance plan (as noted in Appendix A) will not be eligible for the service credit otherwise provided in this Section.

Section 3.05.  COBRA.  The medical and dental benefits which are continued throughout the duration of the severance benefit payments shall be identical to the coverage offered to active Employees.  The period of COBRA continuation coverage shall begin on the Severed Employee's Employment Severance Date and the number of months during which medical and dental benefits are received under Section 3.04 shall be credited against the Severed Employee's period of COBRA continuation coverage.

Section 3.06.  Ineligible Terminations of Employment.  A Severed Employee will not be eligible for a severance benefit under this Plan if his or her employment with an Employer terminates for one of the following reasons:

(1)  Termination for Cause;

(2)  Voluntary resignation;

(3)  Death;

(4)  Disability;

(5)  Retirement;

(6)  Failure to return from leave of absence (except in the case of a bona fide medical leave of absence where no job is available when the Employee is able to return to work) or unavailability of a position after a personal leave of absence;

(7)  Temporary layoff;

(8)  In connection with a divestiture of all or part of the assets of an Employer or the sale of all or part of the stock of an Employer, as a result of which as of the date of sale the Severed Employee (i) is employed by the Acquiring Entity or an affiliate of the Acquiring Entity, or (ii) is offered employment by the Acquiring Entity or an affiliate of the Acquiring Entity which offered employment (a) does not require the Severed Employee to Relocate and (b) is at a wage or salary level (determined without regard to employee benefits offered by either the Employer, the Acquiring Entity or the affiliate of the Acquiring Entity) equal to or greater than the Severed Employee's wage or salary level at the Employer on his Employment Severance Date;

(9)  In connection with a relocation, assignment, sale, lease, license or subcontracting of an Employer's premises, products, processes or other activities, if the Severed Employee is offered a position with an Employer which (a) does not require the Severed Employee to Relocate and (b) is at a wage or salary level (determined without regard to employee benefits) equal to or greater than the Severed Employee's wage or salary level on the date the position is offered; or

(10)  In connection with an involuntary termination, if the Severed Employee is offered a position with the Employer which (a) does not require the Severed Employee to Relocate and (b) is at a wage or salary level (determined without regard to employee benefits) equal to or greater than the Severed Employee's wage or salary level on the date the position is offered.

Section 3.07.  Notice to Employees.  An Employee whose employment is about to be terminated in a manner which would cause the Employee to receive a severance benefit under this Plan shall be given as much notice of his or her pending termination

of employment as is (i) consistent with business conditions, (ii) required by an employment contract between the Employee and an Employer, or (iii) required by the Worker Adjustment and Retraining Notification Act or any other applicable federal or state statute; provided, however, that a minimum of two (2) weeks notice shall be given to the Employee.

At the discretion of the management of the local site or business unit at which the Employee is employed, the Employee may be provided with Compensation in lieu of the notice required by the above paragraph. Where a minimum of two (2) weeks notice cannot be given to the Employee as required above, the Employee shall receive two (2) weeks Compensation in lieu of notice. In either event, any Compensation received in lieu of notice shall be in addition to the severance benefits provided under Section 3.02 above.

In the event an Employee is on probation for any reason, the Employee shall not be eligible for either notice or Compensation in lieu of notice under this Section 3.07.

Section 3.08. Re-employment/Reinstatement. In the event a Severed Employee is re-employed or reinstated by an Employer while receiving severance benefit payments under this Plan, the severance benefit payments shall immediately cease. In the event a Severed Employee receives a lump sum payment, upon re-employment or reinstatement with an Employer, the Severed Employee shall repay that portion of the lump sum payment attributable to the differential between:

(i)   the number of weeks of severance pay to which the Severed Employee was entitled under Section 3.02 above; and

(ii)  the number of weeks between the Severed Employee's Employment Severance Date and the date the Severed Employee is re-employed or reinstated with an Employer.

The repayment of any portion of a lump sum payment shall be made by reasonable payroll deduction. As a condition of re-employment, the Severed Employee must sign a written authorization permitting such deductions.

In the event the Severed Employee's employment is terminated in a manner which causes the Severed Employee to receive a severance benefit under this Plan within two (2) years of the date he or she is re-employed or reinstated with an Employer, the Severed Employee will receive a severance benefit under Section 3.02, with his or her number of Full Years of Service computed by adding his or her Full Years of Service prior to re-employment or reinstatement to his or her Full Years of Service after re-employment or reinstatement and subtracting the number of weeks already paid to the Severed Employee attributable to his or her termination of employment prior to re-employment or reinstatement or, as applicable, the portion of any lump sum

payment not repaid by the Severed Employee upon re-employment or reinstatement in accordance with this Section 3.08.

Section 3.09.  Cessation Upon Refusal to Accept Re-employment.  In the event that a Severed Employee does not accept re-employment offered by an Employer which (i) does not require the Severed Employee to Relocate, (ii) is at a wage or salary level equal to or greater than the Severed Employee's wage or salary level on his or her Employment Severance Date and (iii) is in a position comparable to that position held by the Severed Employee on his or her Employment Severance Date, as conclusively determined by the Administrative Committee, then the Administrative Committee may, in its sole discretion, cease severance benefits otherwise payable under the terms of this Plan unless the Severed Employee provides evidence, satisfactory to the Administrative Committee, that the Severed Employee has obtained employment elsewhere.

Section 3.10.  Death Benefit.  In the event a Severed Employee dies while still eligible to receive severance benefit payments under Section 3.02, the remainder of his or her severance benefit payments shall be made in a lump sum to his or her beneficiary of record under the Employer's life insurance program.  If the Severed Employee has not designated a beneficiary of record under the Employer's life insurance program, the remainder of the Employer's severance benefits shall be paid in a lump sum to the Severed Employee's surviving spouse or, if the Severed Employee does not have a surviving spouse, to the Severed Employee's estate.

ARTICLE IV

Administration of the Plan

Section 4.01.  Administrative Committee.  The general administration of the Plan, and the responsibility for carrying out the provisions hereof, shall be retained by Bayer which will act through the Administrative Committee.

Section 4.02.  Officers and Agents.  The members of the Administrative Committee shall elect one of their members as chairman and shall also elect a secretary who may, but need not, be a member of the Administrative Committee; and may authorize one or more of their number or any agent to execute or deliver any instrument or make any payment in their behalf, and may employ such clerical personnel as they may require in carrying out the provisions of the Plan.

Section 4.03.  Meetings and Committee Action.  The Administrative Committee shall hold meetings upon such notice, at such place or places, and at such time or times as they may from time to time determine.  A majority of the Administrative Committee may act by meeting (whether in person or by telephone) or by writing executed without a meeting.  The reasonable out of pocket

expenses of the members of the Administrative Committee incurred in connection with such meetings and actions shall be reimbursed by Bayer.

Section 4.04. <u>Powers</u>. Bayer, acting through the Administrative Committee, shall have complete control of the administration of the Plan, with all powers necessary to enable it properly to carry out its duties in that respect. The Administrative Committee shall be authorized and have full discretion to interpret this Plan and to determine all questions arising in the administration, construction and application of the Plan. The decision of the Administrative Committee upon all matters within the scope of its authority shall be conclusive and binding on all parties.

Section 4.05. <u>Rules and Regulations</u>. Subject to the limitations of this Article IV, the Administrative Committee from time to time shall establish such supplemental rules and regulations for the administration of the Plan and the transaction of its business as it deems necessary.

Section 4.06. <u>Reports</u>. The Administrative Committee shall be responsible for the preparation and delivery of all reports, notices, plan summaries and plan descriptions required to be filed with any governmental office or to be given to any Employee, Severed Employee or the Severed Employee's beneficiary.

Section 4.07. <u>Employer to Furnish Information</u>. Upon request of the Administrative Committee, an Employer shall furnish such information in its possession as will aid the Administrative Committee in the performance of its duties hereunder.

Section 4.08. <u>Claims Procedure</u>.

(a) <u>Denial of Claims</u>. If any claim for benefits under the Plan is wholly or partially denied, the claimant shall be given notice in writing within a reasonable period of time after receipt of the claim by the Plan (not to exceed 90 days after receipt of the claim or, if special circumstances require an extension of time, written notice of the extension shall be furnished to the claimant and an additional 90 days will be considered reasonable) by registered or certified mail of such denial. The notice of denial shall be written in a manner calculated to be understood by the claimant and shall set forth the following information:

  (1) the specific reasons for such denial;

  (2) specific reference to pertinent Plan provisions on which the denial is based;

  (3) a description of any additional material or information necessary for the claimant to perfect the claim and an

explanation of why such material or information is necessary; and

(4) an explanation of the Plan's claim review procedure.

(b) <u>Deemed Denial</u>. If a claimant does not receive a notice of denial within 180 days after receipt of the claim, the claim will be deemed to have been denied and the claimant will be able to request a review of the denial pursuant to subsection (c).

(c) <u>Review of Denial</u>. A claimant whose claim has been denied under subsection (a) or whose claim is deemed to have been denied under subsection (b) may request a review by Bayer of the decision denying the claim. A claimant may request a review by filing with Bayer a written request for such review. The request must be filed within 60 days after the notice of denial under subsection (a) is received, or within 60 days after a denial is deemed to have occurred under subsection (b). The claimant may review pertinent documents, and submit issues and comments in writing within the same 60-day period. If such request is so filed, such review shall be made by Bayer within 60 days after receipt of such request, unless special circumstances require an extension of time for processing, in which case the claimant shall be so notified and a decision shall be rendered as soon as possible, but not later than 120 days after receipt of the request for review. The Participant or beneficiary shall be given written notice of the decision resulting from such review, which notice shall include specific reasons for the decision, written in a manner calculated to be understood by the claimant, and specific references to the pertinent Plan provisions on which the decision is based.

Section 4.09. <u>Employment of Professional Assistance</u>. Bayer is empowered, on behalf of the Plan, to engage accountants, legal counsel and such other personnel as it deems necessary or advisable to assist it in the performance of its duties under the Plan. The functions of any such persons engaged by Bayer shall be limited to the specific services and duties for which they are engaged, and such persons shall have no other duties, obligation or responsibilities under the Plan. Such persons shall exercise no discretionary authority or discretionary control respecting the management of the Plan. All reasonable expenses thereof shall be borne by Bayer.

Section 4.10. <u>Indemnification</u>. Bayer shall indemnify any individual who is directed by Bayer to carry out responsibilities and duties imposed by this Plan including but not limited to members of the Administrative Committee against any and all claims, losses, damages, and expenses, including counsel fees, approved by Bayer, and any liability, including any amounts paid in settlement with Bayer's approval, arising from the individual's action or failure to act, in connection with such person's responsibilities and duties under the Plan, except

when the same is judicially determined to be attributable to the gross negligence or willful misconduct of such person.

Section 4.11. _Amendment and Termination_. Bayer does hereby reserve the right to amend, modify, or terminate the Plan at any time. The Plan may be amended, modified or terminated by the written action of the Executive Committee of the Board of Directors, but the Executive Committee may delegate this authority to such individuals or committees as the Executive Committee deems appropriate.

Section 4.12. _Governing Law_. The terms, provisions and effect of this Plan shall be construed, enforced and administered according to the laws of the Commonwealth of Pennsylvania and the United States of America.

Section 4.13. _Effect of a Mistake_. In the event of a mistake or misstatement as to the eligibility, participation, or service of any Participant, or the amount of payments made or to be made to a Participant or beneficiary, Bayer shall, if possible, cause to be withheld or accelerated or otherwise make adjustment of such amounts of payments as will in its sole judgment result in the Participant or beneficiary receiving the proper amount of payments under this Plan.

IN WITNESS WHEREOF, Bayer has caused this Plan to be amended and restated this 30th day of November, 1995.

WITNESS:                           BAYER CORPORATION

_____             By: _____
        Secretary                  Title: _____

APPENDIX A

SEVERANCE PAY SCHEDULE

Subject to the terms and conditions in the Plan, a Severed Employee shall receive his or her severance pay benefit computed as follows:

| Full Years of Service | Weeks of Compensation |
|---|---|
| Less than 3 years | 4 |
| 3 years | 6 |
| 4 years | 8 |
| 5 years | 10 |
| 6 years | 12 |
| 7 years | 14 |
| 8 years | 16 |
| 9 years | 18 |
| 10 years | 20 |
| 11 years | 22 |
| 12 years | 24 |
| 13 years | 26 |
| 14 years | 28 |
| 15 years | 30 |
| 16 years | 32 |
| 17 years | 34 |
| 18 years | 36 |
| 19 years | 38 |
| 20 years | 40 |
| 21 years | 42 |
| 22 years | 44 |
| 23 years | 46 |
| 24 years | 48 |
| 25 years | 50 |
| 26 years | 52 |
| 27 years | 54 |
| 28 years | 56 |
| 29 years | 58 |
| 30 years | 60 |

And so on at 2 week increments for each additional Full Year of Service.

Notwithstanding the foregoing, an Employee who was employed by Sterling Winthrop Inc. ("Sterling") on November 1, 1994 and who becomes a Severed Employee on or prior to November 1, 1996 will be entitled to a benefit under the terms and conditions of the Sterling severance plan based on his attained age and salary grade as of November 1, 1994 and his years of service with Sterling and an Affiliate as of his Employment Severance Date.

APPENDIX B

REQUEST FOR LUMP SUM PAYMENT OF SEVERANCE BENEFITS

Name of Employee: _____    Social Security No:_____

Address: _____
         _____
         _____

I hereby request the payment of my benefits under the Bayer Corporation Severance Pay Plan (the "Plan") in a lump sum.

I hereby acknowledge that the normal form of payment of severance benefits under the Plan is a series of periodic payments in accordance with my normal pay schedule. I understand that payment of lump sum severance benefits is subject to approval in the sole discretion of the Plan's Administrative Committee.

I hereby acknowledge that, as a result of receiving my benefits under the Plan in a lump sum, I am not eligible for the continuation of medical, dental, life and accidental death and dismemberment benefits on an employer-paid basis and that I am no longer eligible to make contributions to any employee spending account.

I understand that, while the Administrative Committee will carefully consider my request for the lump sum payment of my severance pay benefits, it retains full discretion to approve or disapprove my request regardless of whether it has approved similar requests for other severed employees in the past.

Executed by me this _____ day of _____, 19__,
with full intent to be legally bound.

_____        _____
Witness                                Employee

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

FOR EMPLOYER'S USE ONLY:

                    Site-Human Resources

    Dated: _____        By:_____

Comments:

## SEPARATION AGREEMENT AND GENERAL RELEASE

THIS IS AN AGREEMENT between _____ ("Employee") and Bayer Corporation ("the Company") under the terms of the Bayer Corporation Severance Pay Plan (the "Plan").

In exchange for the mutual promises set forth below, and intending to be legally bound, the Company and the Employee agree that:

1. Subject to the terms and conditions contained in the Plan, the Company will pay Employee the severance benefits provided for in the Plan.

2. Employee acknowledges that he or she has been advised by the Company to review this Agreement and the Plan and to discuss his or her options with an attorney of his or her own choosing.

3. Employee makes the following representations to the Company, each of which is necessary before the Company will pay severance benefits to Employee under the Plan:

- That the payments and other benefits which the Company has agreed to provide under the Plan are payments and benefits to which he or she would not be entitled were it not for this Agreement.

- That he or she was given sufficient time to consider whether or not to sign.

- That he or she is aware that federal and some state and local laws prohibit discrimination against employees because of their race, color, religion, sex, sexual preference, marital status, age, national origin and disability and that an employee who believes that he or she has been discharged or otherwise discriminated against for any of these reasons has a right to file a lawsuit or initiate other proceedings against the Company and to recover damages if it is proved that the Company violated any one of these laws.

- That he or she is aware that, by signing this Agreement, he or she is giving up any right to sue the Company, or to initiate any other legal proceedings against the Company, not only on the basis of the discrimination laws mentioned above, but for any other claims which he or she has or believes he or she has based upon any event which occurred before this Agreement is signed, except claims for vested pension benefits and claims which cannot legally be waived, such as for workers' compensation.

- That no promises or representations except those contained in this Agreement and the Plan have been made to the Employee in connection with the termination of his or her employment.

(J0534650.2)

- That he understands that this severance agreement and general release does not cancel or otherwise diminish his post-employment obligations under any employment agreement with the Company (or any predecessor or affiliate of the Company), including, but not limited to, obligations relating to confidentiality or the use of confidential information of the Company, disclose and ownership of inventions and intellectual property, non-competition and non-solicitation of customers.

- That he or she has read and understands each and every provision in this Agreement; that he or she has received and has had the opportunity to read the summary plan description of the Plan; and that he or she has had the opportunity to read the Plan, a copy of which will be given to Employee if he or she requests it.

- That he or she has not filed any complaints against the Company with a court or administrative agency before signing this Agreement, except: [identify pending claim, if any].

4.      Employee understands that the Company is not offering this Agreement because it believes that the Employee has any valid legal claim against the Company.  Instead, an agreement is offered to every terminating employee who qualifies for severance pay regardless of the specific facts relating to the particular Employee's termination.  Every Employee who is offered this Agreement has the right to reject it, and give up severance pay, or to sign it, accept the severance pay and give up whatever legal claims the Employee might believe he or she has against the Company.

5.      In exchange for the payments and benefits offered by the Company under the Plan, Employee hereby releases and discharges the Company, its benefit plans, officers, directors, employees, agents, shareholders, affiliates, successors and assigns from all liability upon claims of every nature whatsoever, including, without limitation, claims of negligence, breach of contract, wrongful discharge, violation of federal, state or local laws, among which are laws which prohibit discrimination on the basis of race, color, national origin, religion, sex, age and disability, such as the Age Discrimination in Employment Act of 1967.  This Release covers claims, known or unknown, which are based upon any act, event or failure to act which occurred before the date on which this Agreement is signed and becomes effective.  Employee further agrees that he or she will not file, or permit to be filed in his or her name or on his or her behalf, any lawsuit against any of the persons or entities released in this paragraph.

[Insert for California-based employees:  Employee expressly acknowledges that any and all rights granted to the Employee under Section 1542 of the California Civil Code or any analogous state or federal law or regulation are hereby expressly waived.  Section 1542

provides that a general release does not extend to claims which are not known or suspected to exist at the time of executing a general release.]

6.    In exchange for the benefits and payments offered by the Company under the Plan, Employee agrees that he will not make any statements now or in the future to any current or former Company employees, to any media or to any other person, which are disparaging of the business, reputation, competence, fairness or character of the Company or any officer, director, shareholder or employee of the Company. A disparaging statement is any comment, oral or written, which would, if publicized, cause humiliation or embarrassment or cause the recipient to question the business condition, integrity, competence or good character of any of these persons or entities.

7.    If, contrary to this Agreement, a lawsuit is filed by Employee, the Company will have the option, in its sole discretion, either to raise this Agreement as a defense to the lawsuit or to rescind this Agreement, in which case all amounts paid to Employee hereunder will be refunded to the Company and no further payments will be due to the Employee.

8.    Except as specifically mentioned otherwise herein or in the Plan, all prior agreements and understandings, written or oral, between Employee and the Company are replaced and superseded by the Plan and this Agreement, and are no longer of any force and effect.

9.    This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania.

10.    Unless a greater period of time is provided in an Addendum to accept this Agreement, Employer may not accept it after the expiration of twenty-one (21) days from Employee's receipt of this Agreement.

BY THE EMPLOYEE:

_____          _____

Witness (Name)

_____          BAYER CORPORATION:

Date of Signing

_____          By _____

Date of Receipt of Agreement

{J0534650.2}

<u>FOR USE WITH EMPLOYEES AGE 40 OR ABOVE</u>

**Addendum to Separation Agreement and General Release**

In compliance with the Age Discrimination in Employment Act of 1967, as as amended, this Agreement may be revoked by the Employee at any time within seven days after the date of signing.  To revoke this Agreement, the Employee should provide written notice of revocation to _____, Manager, Human Resources and should return any signed copies of the Agreement with the notice.

The Employee acknowledges that he or she was given at least 21/45 days [circle applicable number[1]] after receipt of this Agreement to consider whether or not to sign, and was not pressured or induced to make a decision in less time.

_____

Employee's signature          date

_____

[1] In individual termination situations, the employee must be given 21 days after receipt of the separation agreement to decide whether to sign.  Where the separation is part of a group termination, such as in a reduction in the workforce, 45 days must be allowed.

{J0534650.2)

AMENDMENT NO. 1
TO THE
BAYER CORPORATION SEVERANCE PAY PLAN

WHEREAS, Bayer Corporation ("Bayer") restated the Bayer Corporation Severance Pay Plan (the "Plan") effective as of January 1, 1995, and now desires to amend the Plan to permit certain former Technicon employees who became participants in the Plan to have their eligibility for post-retirement medical and life insurance benefits determined based on their years of vesting service.

NOW, THEREFORE, intending to be legally bound, the Plan is amended by adding the following at the end of Section 3.04(b).

"The eligibility for post-retirement medical and life insurance benefits of a Severed Employee who was an employee of Technicon Electronics Corporation or Technicon Instruments Corporation will be determined based on their years of vesting service which will include the number of weeks such employee is entitled to receive severance benefits hereunder, regardless of whether a lump sum payment of severance benefits is requested and approved."

IN WITNESS WHEREOF, Bayer has caused this Amendment to be adopted this _17_ day of ___March___, 1998, effective as of January 1, 1998.

BAYER CORPORATION

By: _____

PIT:308909.1