UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                              \*
Plaintiffs,                                          \*     **PLAINTIFFS' OPPOSITION**
v.                                                   \*     **MEMORANDUM TO**
BAYER CORPORATION and                                \*     **DEFENDANTS' SUMMARY**
BAYER CORPORATION SEVERANCE PAY PLAN,                \*     **JUDGMENT MOTION**
Defendants.                                          \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## I. STATEMENT OF CASE AND SUMMARY OF CERTAIN FACTS

Plaintiffs claim denial of severance benefits and breach of fiduciary duty  in violation of

ERISA (See §§502, et seq. of ERISA; 29 U.S.C. §§ 1132(a)(1)(B) & (3) et seq.) and bring three

alternative Massachusetts law based claims against Defendants Bayer Corporation "(Bayer") and

Bayer Corporation Severance Pay Plan ("Bayer Plan") .

Until September 1998, Bayer employed the 63 Plaintiffs (and about 25 others) in the

"Board Shop" of its Electronic Prepress Systems Operations under Bayer's Agfa Division. The

Plaintiffs had 10 to 30 years of service. They assembled printed circuit boards for Bayer's end-use

customers.  P St 2-3.[1] Plaintiffs were participants in the Bayer Plan which provided 2 weeks of pay

for each year of employment.  Severance benefits were to be paid from Bayer's assets. Bayer was

the plan administrator.  Bayer never provided to or disclosed to the Plaintiffs the  Bayer Plan but

did provide a Summary Plan Description ("SPD").  The SPD provided no clear  information as to

the existence of the Bayer Plan or an address, telephone number or contact person to obtain it.

Bayer's local main contact HR person for the Plaintiffs did not know the Bayer Plan even existed.

P St 12-18, 24, 33, 29.

Effective September 1, 1998, Bayer (1) involuntarily terminated each Plaintiff and (2) sold

the  "Board Shop" assets to Electronic Fabrication Technology Corporation ("EFTC") for $8.1

---

[1]"P St" refers to Plaintiffs' Local Rule 56.1 Statement of Facts.

Million.  In August 1998, Bayer advised Plaintiffs that Bayer was terminating them and a job with EFTC would be available at the same pay and location.  EFTC and Bayer needed the experienced Plaintiffs to go to EFTC which had no experienced employees. As part of the sale, EFTC and Bayer had a 3 year supply agreement and Board Shop area lease with EFTC.  Bayer did not sell the entire Agfa Division.[2]  To try to avoid severance Bayer required EFTC to offer jobs to all Board Shop employees. Bayer sold the Board Shop due to declining business conditions and to save on an expensive equipment upgrade. P St. 3, 19, 64, 66.

The Bayer Plan and SPD provided employees severance when their termination is involuntary and their positions are eliminated, or their operations are discontinued,  or due declining business conditions.  All such conditions were met. P St 3, 19. When Bayer orally advised Plaintiffs of their termination, the Plaintiffs verbally asked for severance.  Bayer repeatedly incorrectly verbally denied severance on the grounds that EFTC was offering them a job at the same salary and location.  Violating its internal policy, the Bayer Plan and the SPD, Bayer failed to advise the Plaintiffs in writing of their termination, did not provide the complete basis of the severance denial, did not give any information on how to internally appeal, did not reveal the existence of the Bayer Plan and admitted it did not know how an employee even makes a formal claim for severance. P St 16, 28-29, 73. Bayer gave the Plaintiffs two choices: (1) termination with a job or (2) termination without a job, but no severance. Bayer terminated their employment without severance. Bayer falsely said that EFTC's benefits were comparable. Relying on Bayer's statements, under a short deadline, the Plaintiffs accepted employment with EFTC.  EFTC's benefits were much worse.  P St 32-37, 54, 58, 66.  Bayer and EFTC agreed to try to work together to avoid the $2 Million severance and induce the Plaintiffs to accept an EFTC

---

[2]Bayer employed 24,000 people and had sales of $9.3 Billion.P St 2

job. P St 3, 10-11,29-30, 71, 74-75.[3]

Bayer had a voluntary severance layoff program; Bayer would spread word of a layoff and sought volunteers to accept severance and allow others to remain. Volunteers signed an agreement form for severance. Plaintiffs' continued employment with Bayer was based in part on available severance and the program. P St 51, 57.

## II THE STANDARD OF REVIEW IS DE NOVO

Bayer incorrectly orally told Plaintiffs a new job at the same pay and location disqualified them, ignored other applicable plan language, and did not disclose the Bayer Plan.  P St 16, 24, 27, 29, 3, 36, 49, 67. Where a plan administrator fails to offer an interpretation of the plan, or a written denial lacks specific reasons, de novo attaches. Glista v. UNUM Life Ins. Co. of Am., 378 F.3d 113, 131-132 (1st Cir. 2004); Gritzer v. CBS, Inc., 275 F.3d 291, 295 (3d Cir. 2002).  Also, "Courts have tussled with the question of what language constitutes a clear grant of discretionary authority where the plan does not specify who is given review power, `consistently [holding] that there are no `magic words' determining the scope of judicial review of decisions to deny benefits.'" Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 31 (1st Cir. 2003).  Bayer is inconsistent and confused as to what committee, person or entity within Bayer had the decision-making authority. P St 16, 23, 38. "[A] `sliding scale' standard of review is appropriate  when there is `material, probative evidence demonstrating that (1) a palpable conflict of interest or serious procedural irregularity existed which (2) caused a serious breach of the plan administrator's fiduciary duty to the claimant.'" Clapp v. Citibank NA, 262 F.3d 820, 827 (8th Cir. 2001). EFTC gave Bayer a written proposal suggesting the sale would save Bayer severance and internal Bayer documents show such was a Bayer goal. P St 71. Under Section 502(a)(1)(B), where the employer or plan fiduciary provides incorrect/misleading  information, they can be

---

[3] The sum would be much higher with the 25 or more who did not join this action.  P St 2

estopped.  For most courts inaction is not a valid exercise of discretion; it gives the court no

decision or application of expertise to which to defer.  <u>Kieft v. American Express Co.</u>, 451

F.Supp.2d 289, 295 (D. Mass. 2006).  A written denial must be clear and provide sufficient

information to comply with 29 U.S.C. §1133.  <u>McLean Hosp. Corp. v. Lasher</u>, 819 F.Supp. 110,

119 (D.Mass. 1993); <u>see</u> <u>Lopes v. Metropolitan Life Ins. Co.</u>, 332 F.3d 1, 5 (1st Cir. 2003) (court's

review is not a "rubber stamp"); <u>Dabertin v. HCR Manor Care, Inc.</u>, 373 F.3d 822, 828 (7th Cir.

2004)(administrator "must articulate a rational connection between the facts found ... and the

choice made)."

Previously, in <u>Krodel v. Bayer Corporation</u>, 345 F.Supp.2d 110, 114-116 (D. Mass. 2004),

the Court found that Bayer committed multiple violations of ERISA in failing to provide access to

documents and a considered fact-based reason for its denial of benefits. Similar to its actions in

<u>Krodel</u>, Bayer verbally summarily dismissed the Plaintiffs' oral claims for severance benefits,

gave no detailed reasons, and never told the Plaintiffs about the Bayer Plan or claims/review

procedures. P St 16, 23, 33, 37, 38. [4] Even assuming an arbitrary and capricious review,  the

Plaintiffs still prevail. <u>See</u> <u>DePina v. General Dynamics Corp.</u>, 674 F. Supp. 46, 51-52 (D. Mass.

1987) (interpretation arbitrary and capricious);  <u>Boardman v. Prudential Ins. Co.</u>, 337 F.3d 9, 15

(1st Cir. 2003)(must be  "supported by substantial evidence in the record"); <u>Giroux v. Fortis

Benefits Ins. Co.</u>, 353 F.Supp.2d 45, 52 (D. Me. 2005) (denial not supported by record); <u>Myers v.

Hercules, Inc.</u>, 253 F.3d 761, 767-768 (4th Cir. 2001) (misinterpretation of record).

---

[4]Citing <u>Terry v. Bayer Corp.</u>, 145 F.3d 28, 37 (1st Cir. 1998), Bayer incorrectly states that the
First Circuit has ruled on the Bayer Plan and the SPD at issue in this case. (**D Memo 6**).  There
was no decision on the SPD, it was a different plan, and there was no considered, reasoned,
verbal or written decision by the Plan Administrator. <u>Id.</u>. <u>Krodel v. Bayer</u> is closer to this case.
345 F. Supp.2d at 110.

# III. ARGUMENT

## A.    EXHAUSTION OF ADMINISTRATIVE REMEDIES DOES NOT BAR PLAINTIFFS

CFR Title 29,  §2560.503-1(b) requires employee benefit plans to establish and maintain reasonable claims procedures.  Section (d) states "If a reasonable procedure for *filing claims* has not been established by the plan, a claim shall be deemed filed when a written *or oral* communication is made by the claimant…" (emphasis added). Bayer's SPD does <u>not</u> set forth how, or the manner in which, to make, submit or file a claim for severance benefits.  Bayer's SPD only states how to have a <u>denial</u> of a claim "reconsidered."   Bayer did not have a procedure on how to make or "file" an <u>initial</u> claim. Bayer had no claim form and said an initial claim can be made verbally. P St 16 [5] Leonard, Bayer's primary on-site human resources contact, did not mention any initial claims procedures and  never advised the Plaintiffs about making a claim and even avoided the Plaintiffs.  Neither Leonard nor the Plaintiffs even knew about the existence of the Bayer Plan. P St 16, 29, 34. Bayer is estopped as to this defense. <u>Krodel v. Bayer Corporation</u>, 345 F.Supp.2d at 115; <u>see</u> <u>Bourgeois v. Pension Plan</u>, 215 F.3d 475, 482 (5th Cir. 2000)(failure to provide SPD estops the defendants as to exhaustion defense).

> "In accordance with regulations of the Secretary, every employee benefit plan shall (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."

29 U.S.C. § 1133.  Bayer provided no written denial or explanation.  P St 36-37.

Pursuant to the "content of notice" requirements of a denial,

---

[5]    The only hint that an employee must make an initial claim in writing comes buried within a vague reference to Bayer's obligation to provide "a written notification of the denial with 90 days after <u>filing</u>." (emphasis added). But nowhere in the SPD does it explain what a "filing" is, where or how it is to be made, to whom it must be made, on what forms, if any it must be made on, or when it must be made.   It also is under the generic "Administrative Information"of the SPD, on the last page.   P St 23.

"A plan administrator . . . shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) the specific reason or reasons for the denial; (2) specific reference to pertinent plan provisions on which the denial is based; (3) a description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review, including a statement of the claimant's right to bring a civil action following an adverse benefit determination on review.

29 C.F.R. § 2560.503-1(g) (2003). (Emphasis added).[6]  In violation of these regulations and the SPD, Bayer never put the denial in writing, as was its admitted practice,  and gave no details other than verbal assertions of comparable new jobs with a different employer. P St 23-23.These facts are similar to the events in DePina where "[t]he letter also fails to comport with [defendant's] appeal procedure as set forth in its Plan booklet at 54 ('If a benefit is denied in whole or in part, you . . . will receive a written notice which explains the reason for denial and refers to the part of the Plan on which the denial is based.')." 674 F.Supp. at 48-50; see Halpin, 962 F.2d at 690-691 (denial letter inadequate).  "Inadequate notice, in and of itself, may constitute arbitrary and capricious denial...." McLean, 819 F.Supp. at 119.

Furthermore, Bayer failed to adhere to its own  "Human Resources Department Employees Practices" manual which states that Bayer must "Explain the status of the employee's benefits" when an employee is involuntarily terminated.  Bayer admits it did not meet with Plaintiffs to explain severance benefits.[7]  P St 56, 67. The Plaintiffs repeatedly orally asked for severance, initially believed Bayer's incorrect statements that severance was not due under the SPD, then later hired counsel in to press their claim when they began to suspect Bayer misled them. Consequently, Bayer's assertion that the Plaintiffs made no claim for severance (**D Memo 8**) is

---

[6]"These requirements insure that when a claimant appeals a denial to the plan administrator, he will be able to address the determinative issues and have a fair chance to present his case." Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689 (7th Cir. 1992).

[7]A Bayer representative explained their benefit rights except for severance. P St. 56

incorrect.  P St. 36-37.

Execptions. Plaintiffs also are excused under the futility and wrongful denial of meaningful access to procedures exceptions.   Depina, 674 F.Supp. at 49; McLean, 819 F.Supp. at 123. Administrative procedures would be futile because, since inception of the sale, Bayer and EFTC worked to avoid severance payments.  P St 30, 56, 59, 63-65, 71. High ranking Bayer officials who verbally denied severance were not those Bayer designated or authorized for this purpose and Bayer did not direct the Plaintiffs to the appeals people. P St 16, 24-29, 31, 33-34, 58, 63. See Bourgeois, 215 F.3d at 481 (same).   Accordingly, Bayer is estopped from raising this defense. Id. Even in Bayer's Interrogatory Answers Bayer still failed to set down the detailed reasons in writing for the denial other than the following cursory, vague single sentence: "EFTC Corporation transaction was the type of even expressly excluded from eligibility under the terms of the Severance Pay Plan." P St 29.

Remand. The Plaintiffs should, at a minimum, be entitled to a remand.  See  Depina, 674 F.Supp. at 50.  In 1998, the Plaintiffs had no counsel representing them, Bayer misdirected them with ulterior motives, and at the time of the letter from Plaintiffs' counsel in 2002 to which the Defendants' refer **(D Memo at 7)** neither the Plaintiffs nor their counsel had the Bayer Plan or the documents and evidence which has now been obtained after considerable discovery.  P St 16, 45, 48. See Spanos v. TJX Companies, Inc., 220 F. Supp.2d 67, 74 & n.11 (D. Mass. 2002).  Bayer's verbal denial of benefits which gave no specifics of the SPD language is grounds for remand.  See Kieft, 451 F. Supp.2d at 295.[8]   EFTC promised to work with Bayer to avoid severance payments. P St 63-65, 71. See Buffonge v. Prudential Ins. Co., 426 F.3d. 20, 31-32 (1st Cir. 2005)(remand due to tainted process); Spanos, 220 F.Supp.2d at 74-75 n.11(failure of employer to abide by terms of SPD and procedural errors calls for remand with court retaining jurisdiction).

_____

[8]Bayer's only explanation was that they had new jobs at the same pay and locale. P St 16, 34

**B.    NO STATUTE OF LIMITATIONS BARS PLAINTIFFS' CLAIMS**

1.  <u>Severance Time Limits</u>.  The time limits to which Bayer cites, and the cases on which it

relies, relate to exhaustion of administrative remedies time limits, <u>not</u> to a contractual statute of

limitations to file suit in court.  <u>See</u> <u>Kodes v. Warren Corp.</u>, 24  F.Supp.2d 93, 101-102 (D. Mass.

1998). Bayer confuses the two concepts.  There was no contractual statute of limitations in either

the Bayer Plan or the SPD.  In any event,  "[i]f a participant does not receive adequate notice, he

cannot be barred by the statute of limitations established by a plan." <u>Id.</u> at.102. Such applies even

where the company provides written, but defective, notice in form or service.  <u>Id.</u>  Here, the SPD

provides that Bayer will provide <u>written</u> notification if a claim is denied within 90 or 180 days.

Plaintiffs never received a written notification of a denial.  Bayer admits the SPD does not even

clearly refer to the Bayer Plan existence or where or how to obtain one. P St 16, 23-24, 27-29.

2.  <u>ERISA's Statute of Limitations - Claim for Severance</u>. It is well established that the

contract six year statute of limitations applies for a claim for benefits under an ERISA plan. <u>See</u>

<u>Watson v. Deaconess Waltham Hosp.</u>, 298 F.3d 102, 118 (1st Cir. 2002); <u>Skipper v. Claim</u>

<u>Services International</u>, 213 F.Supp.2d 4, 6 (D. Mass. 2002); <u>Alcorn v. Raytheon Co.</u>, 175 F.

Supp.2d 117, 121 (D. Mass. 2001); <u>Laurenzano v. Blue Cross and Blue Shield of Massachusetts,</u>

<u>Inc. Retirement Income Trust</u>, 134 F.Supp.2d 189, 205 (D. Mass. 2001). Plaintiffs filed this suit on

April 9, 2004, well within the six year statute of limitations from the September 1, 1998 date on

which Bayer relies.[9]

With the Bayer's prior assent, the Plaintiffs filed a Joint Motion with Bayer's present (and

then Agfa's) counsel on August 23, 2004 under Rule 15 and Local Rule 15.1, to substitute the

---

[9]In fact, the statute of limitations did not <u>start</u> to run until 2000 at the earliest when the Plaintiffs, as discussed below in the next section, first began to question whether Bayer had misled them on severance and then hired undersigned counsel.

Bayer Defendants for the originally named Defendants Agfa Corporation and Agfa Plan. The Plaintiffs' undersigned counsel mistakenly believed that Agfa, not Bayer, was the employer when this matter was initially filed. After conversation with in-house counsel for Bayer and Afga's attorney (now representing Bayer), the mistake was revealed and the Joint Motion was filed. The Amended Complaint relates back under Fed.R.Civ.P. 15 to the April 2004 filing.  The Amended Complaint is based on the same basic underlying facts and claims. Bayer's attorneys agreed to not raise the statute of limitations defense for any time after April 9, 2004, the filing date.[10]  The Defendants' undersigned counsel and the Plaintiffs' counsel also signed an Agreement whereby the Plaintiffs would amend the original Complaint to substitute the current Bayer Defendants for Agfa. P St 39-40, 48-49.  On January 1, 1999, soon after the Plaintiffs' termination by Bayer, Afga spun out of Bayer and became the owner of the Agfa Division where the Plaintiffs had worked. Afga Division employees became employees of Afga Corporation.   The two corporations were intertwined. P St 39-40, 41-45.   See Sigros v. Walt Disney World Co., 190 F. Supp.2d 165, 167-168 (D. Mass. 2002)(relation back provisions of Rule 15 precludes statute of limitations defense against new defendant as to same occurrence).  Even now witnesses on both sides refer mistakenly to Bayer as "Afga."[11]  P St 48.

Bayer's citation to Watson is distinguishable and supports the Plaintiffs. The Court allowed the Plaintiff to amend the complaint and add two new defendants after discovery had closed. Later the Plaintiff sought to amend the complaint a second time to add two more defendants under different legal theories, but the court denied the motion. Watson, 298 F.3d at 118-119.[12] Here, no

---

[10]Such an agreement made sense, as Plaintiffs' counsel agreed with Defendants' counsel in August 2004, because otherwise the Plaintiffs would simply have filed another lawsuit against Bayer in August 2004. P St 48.

[11] This confusion led Plaintiffs' attorney to write to Agfa, not  Bayer, in 2002 as to the Plaintiffs' severance claim.  Agfa's response, about which Bayer knew, said nothing of the error.  P St 49.
[12]The new theories also were vulnerable to a motion to dismiss. Watson, 298 F.3d at 118-119.

discovery had yet ensued, Bayer agreed to the substitution before September 2004, Bayer's present counsel raised the issue to the Court at  the July 2004 Scheduling Conference, and the parties jointly moved to substitute Bayer for Agfa. P St 48-49. As discussed below, the statute of limitations did not start running, in any event, until the spring or summer of 2000.  P St 58.

3. Breach of Fiduciary Duty.  Where there is fraud or concealment, fiduciary breach or violation claims must be brought within six years from the discovery of the breach or violation. 29 U.S.C. §1113 (last sentence); see Radford v. General Dynamics Corp., 151 F.3d 396, 399 (5th Cir. 1998)(six year statute of limitations applied to breach of fiduciary duty for employer's misleading statements).  Plaintiffs' breach of fiduciary obligations claim is not solely grounded on Bayer's misrepresentations about EFTC's fringe benefits, as Bayer suggests (**D Memo 9-10**).  Those misstatements were simply part of Bayer's ruse. Plaintiffs' fiduciary breach claims are also grounded on, among other facts, not providing the Bayer Plan, not setting forth in writing (or even verbally) the plan language basis for the denial, explaining in detail the application of the plan to the facts, telling a half-lie that the SPD precludes severance when one has a comparable job offer (only part of the equation), not disclosing where to appeal, falsely suggesting to those at the group meetings that  a "division" was being sold,  and not telling them to put a claim in writing. Bayer engaged in many other deceptive acts.[13]  P St 3,16, 19, 23-24, 27-29, 34, 36, 54, 56, 58,64, 71, 74-75.  The Plaintiffs are seeking severance, not the difference in EFTC- Bayer benefits.

It was not until about 2000 or 2001, when the terminated Machine Shop employees received severance under similar circumstances, that the Plaintiffs began to question whether

---

[13] In early 1998, Bayer sent to the Plaintiffs a pamphlet with a summery of a "significant part" of their "total compensation" but with no mention of severance. P St 74.  Notes of Bayer's internal discussions reveal Bayer was concerned about avoiding the $2 Million severance.  It timed the announcement  late to pressure the Plaintiffs to accept; one note states that this "gives us two weeks to work on the employees." In February 1998, contemplating their termination,   Bayer asked each Plaintiff to sign a non-disclosure of confidential information agreement. P St 75.

Bayer had misled them; they then had their main organizing representative, Plaintiff Jeanne Skene,

meet with their undersigned counsel to look into it.[14] P St 58. Even if the period is three years,

Bayer is barred from asserting the defense.  Edes v. Verizon Communications, Inc.  holds that the

limitations period is either three or six years depending on the plaintiff's knowledge of the breach,

or six years if there is fraud or concealment.  417 F.3d 133, 140 n.12 (1st Cir. 2005.  Edes is

distinguishable as it bears only on the definition of the plaintiff's knowledge without fraud or

concealment. Analysis of actual knowledge is very fact-specific.  Id. at 142.  Similarly, Edes

mentions but did not decide whether the statute of limitations was equitably tolled based on

employer assurances as the argument was not, unlike here, properly raised.  Id. at 140 n.9.

**C.    BAYER'S PLAN AND THE SPD ENTITLE PLAINTIFFS TO SEVERANCE**

Bayer does not dispute that but for the exclusions the Plaintiffs otherwise are entitled to

severance in that they were involuntarily terminated because (1) there was a declining business

condition affecting their area, or (2) their positions were eliminated, or (3) there was a

"discontinuation ... of operations." P St 19 Plaintiffs are entitled to severance under 29

U.S.C.§1132(a)(1)(B).

1.   Bayer is barred from relying on Article 3, Section 3.06(8) of the Bayer Plan.

Bayer cannot rely on an exclusion in a plan it never revealed.  The Plaintiffs did not know

the Bayer Plan existed, Bayer's local HR person did not know it existed nor did she have a copy,

and nowhere in the SPD did it reasonably state that one existed or where to obtain one.[15]  P St 28-

29.The SPD referred the Plaintiffs to the local HR person for any questions. The Plaintiffs'

inquiries triggered a duty on Bayer to provide the Bayer Plan, or explicit knowledge of its

---

[14]The Machine Shop employees worked for Agfa in the same location as the Plaintiffs. P St 56.
[15]At best, the SPD vaguely states that "the plan documents will govern" in the event of any
"discrepancies" with the SPD.  Bayer admits that the address or telephone number of the service
Bayer used to communicate and provide any "official written plan documents" to employees is
not in the SPD.  The Bayer Plan is not even listed by its name.  P St 16, 23-24, 29.

existence.  Accordingly, Bayer is estopped from relying on the Bayer Plan. <u>Krodel</u>, 345 F.Supp.2d

at 115; <u>Colarusso v. Transcaptial Fiscal Systems, Inc.</u>, 227 F. Supp.2d 243, 259-259 (D.N.J. 2002);

29 U.S.C. §1132(c);  <u>see</u> <u>Bourgeois v. Pension Plan</u>, 215 F.3d 475, 482 (5th Cir. 2000)(failure to

provide SPD estops the defendants).  Similarly, Pennsylvania law which the Bayer Plan states

controls cannot apply. The SPD makes no reference to Pennsylvania law.

     2.  <u>The Board Shop sale was not a divestiture.</u>

    Even if the Bayer Plan applies, the Plaintiffs still prevail because by its express terms the

exclusion on which Bayer relies does not preclude severance. <u>First</u>, Section 3.06(8) states that

severed employees are not eligible for severance "In connection with a <u>divestiture</u> of all or part of

the assets of an Employer or the sale of all or part of the stock of an Employer…" (emphasis

added). P St. 13-15, 19, 50. Bayer <u>sold</u> Board Shop assets.[16] P St 19, 34. There was no divestiture.

P St 13-19.[17]

    Black's Law Dictionary (8th ed.) defines 'divestiture' as "1. The loss or surrender of an

asset or interest; 2. A court order to a party to dispossess of assets or property; 3. Antitrust. A court

order to a defendant to rid itself of property, securities, or other assets to prevent a monopoly or

restraint of trade."  In anti-trust cases a divestiture is a form of injunctive relief, like a rescission.

<u>See</u> <u>California v. American Stores Co.</u>,  495 U.S. 271, 295 (1990). In a **non**-antitrust case, <u>Bain</u>

<u>Capital, Inc. v. Wesley Jessen Corp.</u>,  Justice Van Gestel of the Massachusetts Superior Court

ruled on the meaning of divestiture because the case turned on its meaning.  16 Mass.L.Rptr. 257

(2003) (<u>see</u> **Attachment 1**).   The defendant agreed to pay the plaintiff a transaction fee in

connection with the consummation of each "divestiture" by defendant.  <u>Id.</u> at 1-2. In denying the

fee for a subsidiary "sale" when the plaintiff claimed "divestiture" meant the same thing as a sale,

---

[16]The parties agree that the sale of stock exclusion does not apply.

[17]The Bayer Plan language under discussion is on page 7 of P Ex 16 & Defense Ex A.

Justice Van Gestel disagreed with the plaintiff. <u>Id.</u> at 4-5. He stated "Both the words 'loss' and 'surrender' appearing in Black's definition of 'divestiture' contain within their meaning an act of yielding to another's power or control; the giving up of a right. Most commonly the act of yielding to another's power or control or the giving up of a right, in the context of the words `loss' or `surrender,' is an involuntary and coerced process. It is not a voluntary transfer of property for value resulting in a gain." <u>Id.</u> Bayer voluntarily sold the Board Shop assets for $8.1 million, signed  favorable supply and lease agreements and saved money on new equipment. An exclusion for a true "divestiture"  makes sense in that Bayer should not be required to pay severance for a <u>forced</u> stripping away of its assets for no gain. Thus, a sale and a divestiture are not synonymous.

Similar to the Court's comments  about Bain Capital, as a huge, sophisticated, multi-national corporation, Bayer well knew how to clearly address such a situation.  If it had meant anything different, it could have easily made the Bayer Plan clear.   <u>Bain Capital, Inc.</u>  is even more compelling in that it involved an entire subsidiary, not just a comparatively small shop.

<u>Second</u>, Bayer rests on inapplicable case law, which does not discuss its meaning,  and secondary and non-legal dictionary meanings which do not support Bayer. [18]  Non-legal dictionary definitions of divestiture and its derivatives, like divest and the legal term for divest "devest" ("in law, to be lost or taken away, as a title or an estate"), favor the Plaintiffs. <u>See</u> <u>Webster's New Universal Unabridged Dictionary</u>, (2d ed.) (<u>see</u> **Attachment 2**).  Moreover, even if divestiture were to be termed at times as "a sale" at best it would contemplate a compelled "sale" without a negotiated or planned gain.  <u>Third</u>, in Section 3.06(8) the divestiture and stock sale clauses are separated by an "or" in that the Plaintiffs are not entitled to severance "In connection with a

---

[18] The cases to which the Defendants cite do not specifically turn on or discuss the meaning of the term "divestiture." (**D Memo at 11, n. 12).**  In the American Heritage or Oxford  Dictionary definitions on which Bayer relies, sale is used in the second meaning and/or only in the context of a "corporate division" or  "subsidiary" neither of which took place here.

divestiture of all or part of the assets of an Employer or the sale of all or part of the stock of an

Employer..." (emphasis added). Bayer well knew the difference between them.

Fourth, "divestiture," or its derivatives, does not appear anywhere in the SPD with regard

to the exclusionary provision under the SPD on which Bayer relies, discussed below. It does

appear in the SPD under an inapplicable exclusion, i.e. bullet point [8] which excludes severance

when "The division of the company you work for or the company itself is sold or divested."

(Emphasis added). Bayer agrees that it did not sell a division and that bullet [8] is inapplicable.

    3.  Bayer's Summary Plan Description entitles Plaintiffs to severance.

  Three SPD bullet point provisions Bayer discusses **(D Memo 15)** say that benefits will
not be paid to employees when:

[7] " • The company offers you a comparable position (even if you choose not to accept it);
[8]  • The division of the company you work for itself is sold or divested and you either:
    — become an employee of the new owner, or
    — the new owner offers you continuing employment in a comparable position
      (even if you choose not to accept it);
[9] • The premises, products, processes, or other activities of the division you work for are
    relocated, assigned, sold, leased, licensed, or subcontracted, and you are offered a
    comparable position (even if you choose not to accept it)." (Emphasis on "new
    owner" supplied) P St.22[19]

  Bayer admits that bullet point [8] does not apply because a "division" was not sold or

divested. Bullet point [8] partially supports the Plaintiffs' reading in that it specifically stipulates

that when a division is sold or divested, an employee is not eligible for severance if the "new

owner" offers the employee a comparable position (i.e. same pay and within 35 miles). The next

provision, however, bullet point [9], on which Bayer principally relies, makes no mention about

becoming an employee with a "new owner" or different employer. By clear implication, therefore,

it can only mean a new job within Bayer. P St. 22.

  Bayer argues that provision [9] applies to both situations **(D Memo 16)**, i.e. where either a

---

[19]This language is at P Ex 14.

new owner or Bayer offers the employee a comparable position, even though neither the SPD nor the Bayer Plan so say but suggest the opposite. Bayer fails to show where provision [9] is expressly covered in the Bayer Plan to include both instances. Section 3.06(8) of the Bayer Plan expressly specifies only a new employer, i.e. the "Acquiring Entity" which is defined as a company other than Bayer. Section 3.06(8) is not synonymous, therefore, with bullet [9]. Bayer admits that Sections 3.06(9) and 3.06(10) of the Bayer Plan relate to new comparable jobs within Bayer. An entity other than Bayer, called an "Acquiring Entity", appears only under Section 3.06(8). Sections 3.06(9) and 3.06(10) of the Bayer Plan expressly cover only new comparable jobs within Bayer, as opposed to an Acquiring Entity of 3.06(8) which is defined in Article I of the Bayer Plan as an entity other than Bayer.

Bayer's interpretation also is a stretch because if it intended the meaning it now purports Bayer could easily have added a "new owner or Bayer" or an "Acquiring Entity or company", or the like, in [9] of the SPD. Bayer did not do so. Rather, Bayer structured the language in provision [9] so that it would assume a different meaning: that employees would be ineligible to receive benefits only if Bayer – not a "new owner" or "Acquiring Entity" – offered the employees comparable positions. Such interpretation is consistent with the Bayer Plan where a "new owner" under the SPD is the same as the "Acquiring Entity" under Section 3.06(8) of the Bayer Plan. An "Acquiring Entity" under the Bayer Plan is a company other than Bayer, as is shown under Article 1 of the Bayer Plan where Bayer is defined as the "Employer."

Bayer at least tacitly conceded Plaintiffs' interpretation when it admitted that Section 8.3, bullet point [5] (top right hand side of page), of its "Human Resources Department Employees Practices" manual, was modeled on the same SPD section on which Bayer relies, provision [9]. P St 67. Section 8.3 of the manual applies only when an employee is terminated and reassigned a new position within Bayer. Under Section 8.3, if an employee is not reassigned within Bayer the

15

employee does not receive severance.  Otherwise, the employee does receive severance. There is no mention of a "new owner" or "Acquiring Entity" or the like in the manual.[20]  P St 67.

Furthermore, applying [9] to a company other than Bayer does not make sense. If an employee who is about to be or is terminated under one of the many qualifying provisions of the SPD is fortunate enough to find a job with any different company which just happens to be within 35 miles of the Bayer location and at the same pay (making it a "comparable job" under the SPD), this would make the employee ineligible.  It would then provide an incentive for people not to look for work so they could collect severance.

As for [7], there is no redundancy with [9], as Bayer alleges (**D Memo 15**), in defining it to mean a job within Bayer as well. It simply covers all other situations other than [9] (i.e a sale, relocation, etc. of their premises, products, etc.). As the SPD states, employees qualify for severance due to such reasons, among others, as:

> "• Declining business conditions;
>  • Elimination of your position with the company;
>  • Unavailability of a position upon your return from an approved medical leave..."[21]

But under bullet [7] such otherwise qualifying employees, quite logically, are not entitled to severance where Bayer offers them a "comparable job"within Bayer which means within 35 miles of their present job at the same salary.  Bullet [7] of the SPD matches directly with Section 3.06(10) of the Bayer Plan, where one loses their job for reasons other than a sale of assets, a relocation, etc., but is offered another position within Bayer. Again, no new or other company is mentioned in Section 3.06(10).

Construing the SPD and the Bayer Plan together, the Plaintiffs' interpretation prevails.

---

[20]Bayer's Human Resources Department Employee Practices manual (not produced by Bayer) is distributed to supervisors and managers to guide them in answering questions from employees and otherwise managing the company.
[21]This language is on page SEV3 of Defendants' Exhibit B.

"We will give preeminence to the natural meaning of ERISA plan terms, and we may not supplant such meaning with rigid definitions or contrary interpretations offered by the parties." Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 31-32 (1st Cir. 1991).[22]  A court will reverse a plan administrator's severance denial if the decision does not comport with common sense application of the plan to the facts.  Dabertin, 373 F.3d  at 829. The plan administrator "cannot be a moving target...." Id. at 831; see Blau v. Del Monte Corp., 748 F.2d 1348, 1355 (9th Cir. 1984)(employer can't resort to secret intentions in severance). Finally, Bayer witnesses contradict each other on the Bayer Plan and SPD language, and Bayer contradicts its attorney's argument now. P St 68-69.

    4.   The new EFTC jobs do not preclude severance

The facts in this case are close to Bellino. "Federal courts have established no hard and fast rule that an individual must suffer a period of unemployment to qualify for severance benefits under ERISA." 944 F2d at 31.  Severance  turns on the "particular terms of the ERISA plan at issue and its application to the specific facts before them." Id. The employees there were purportedly "transferred"(as Bayer and EFTC  say here about the Plaintiffs, P St 71) to another company for economically beneficial reasons for the employer and the employer told the plaintiffs to accept the new job or be terminated.  Id. at 28. There need not be a term of unemployment, and plan participants are entitled to severance benefits even if re-employed in the same job and/or at the very same location, and even with the acquiring or same employer. Anstett v. Eagle-Picher Industries, Inc., 203 F.3d. 501,504 (1999); Grun v. Pneumo Abex Corp., 163 F.3d 411, 420-421 (7th Cir. 1998); Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 433-434 (10th Cir. 1996); Ulmer v. Haresco Corp., 884 F.2d 98, 102-103 (3d Cir. 1989); Blau, 748 F.2d at 1354-1355; Bedinghaus v. Modern Graphic Arts, 15 F.3d 1027, 1029-1030(11th Cir. 1994); Harris v. Pullman

---

[22]Bayer misstates an immaterial fact where it states that "some employees" of the Board Shop remained with Bayer. **(D Memo 16 n. 19).** In fact, all were terminated.  P St 66.

Standard, Inc., 809 F.2d 1495, 1498-1499(11th Cir. 1987). Courts recognize that "a corporate sale or takeover is a time of great uncertainty for the employees." Anstett, 203 F.3d at 504. Moreover, "grant of separation benefits to employees undergoing a change in ownership can be seen as an incentive to stay on in uncertain times, in order to help the seller maintain the value of the business as a going concern." Id. This was a time of great stress for the Plaintiffs who Bayer and EFTC intentionally forced to make a quick decision in a short time. P St 59, 75.

5.  Any ambiguities or discrepancies must be construed in the Plaintiffs' favor.

SPD's must be written "in a manner calculated to be understood by the average plan participant, and [be] sufficiently accurate and comprehensive to reasonably appraise such participants .... of their rights and obligations under the plan."  29 U.S.C. §1022(a).  While the Plaintiffs contend that under the reading of either the SPD or the Bayer Plan, the Plaintiffs prevail, in the event the Court finds any ambiguity or discrepancy within either or both of them together, the Plaintiffs also prevail.  It is unfair to for employees bear the burden of a conflicting SPD and plan; the reading favoring the employees controls. Bergt v. Retirement Plan for Pilots Employed by Markair, Inc. 293 F.3d 1139,1145 (9th Cir. 2002); Spanos, 220 F. Supp.2d at 72 & n. 8. "Any burden of uncertainty created by careless or inaccurate drafting ... must be placed on those who do the drafting ... and not on the individual employee, who is powerless to affect the drafting ... and ill equipped to bear the financial hardship that might result from a misleading or confusing document. Hansen, 940 F.2d at 982; see, Bergt, 293 F.3d at 1145; Barnes v. Independent Auto, 64 F.3d 1389, 1393 (9th Cir. 1995). When there are discrepancies between the two plans, the SPD controls. Mauser v. Raytheon Co. Pension Plan, 31 F.Supp.2d 168, 173-174 (D.Mass 1998); Davis v. First Union Corp. Long Term Disability Plan, 213 F.Supp.2d 29, 35 (D.Mass. 2002); Gentile v. John Hancock Mut. Life Ins. Co., 951 F.Supp. 284, 290 (D.Mass. 1997); Spanos, 220 F. Supp.2d at 74 n.8.  Although Bayer's SPD says that "if there are any discrepancies between this book and the

18

official written plan documents, the plan documents will govern," it does not apply.  The Plaintiffs

had no knowledge, reasonable notice about or access to the Bayer Plan.  See Mauser, 31 F.Supp.2d

at 174 (invalid disclaimer in SPD).    As for reliance upon "faulty language" **(D Memo 16-17),** the

Plaintiffs' organizing representative, Skene, reviewed bullet [8] of the SPD in 1998 and initially

believed that because a "division" was not being sold the Plaintiffs' were entitled to severance.[23]

She did not know whether bullets [7] and [9] applied (she termed it "cross talk") but relied on

Bayer's statement that no severance was due.  P St 58. Bayer agrees that bullet [8] does not apply

but relies on bullet [9] even though, as discussed above, Bayer's reading is flawed.[24] Bayer

misdirected Plaintiffs to [8] as the applicable language and Bayer incorrectly referred to the

transaction as the sale of a "division."[25]   P St  34, 40, 58

**D.     BAYER MUST PAY SEVERANCE FOR BREACH OF ITS FIDUCIARY DUTIES.**

        Alternatively, Plaintiffs are entitled to payment of severance under ERISA's equitable

provisions for Bayer's breach of its fiduciary obligations.  See 29 U.S.C.§1132(a)(3). This case is

similar to Varity Corp. v. Howe, 516 U.S. 489 (1996) where the Court said an employer-fiduciary

breaches a fiduciary duty if it  provides false or misleading information to induce employees to

voluntarily transfer their employment to a newly created subsidiary. Id. at 501, 506. Under ERISA

§ 502(a)(3) the Plaintiffs are entitled to equitable relief to "redress such violations" if no relief is

available under a contract remedy.  Id. at 515; 29 U.S.C. § 1132(a)(3)(B)(I). In Laurenzano v. Blue

Cross, 134 F.Supp.2d 189 (D.Mass. 2001) a plaintiff stated a claim for restitution to prevent unjust

---

[23]After she learned Machine Shop employees were paid severance afer its closure, Skene
questioned whether Bayer had misled them or was incorrect and organized the Plaintiffs to seek
a legal opinion.   Others were confused as well.  P St 34, 58. Bayer knew the Plaintiffs were not
highly educated. P St 16.

[24] A Bayer witness admits that bullet [9] could be read in different ways. P St 68.

[25]Bayer's voluntary layoff program and severance induced the Plaintiffs, in part, to remain with
Bayer. P St 51. See Mauser, 31 F. Supp.2d at 55-56. After discovery, Plaintiffs now accept that
the Machine Shop employees were with Afga, not Bayer, but this does not address the numerous
other similarly situated employees to whom Bayer paid severance. P St 51.

enrichment to the defendant for a violation of §502(a)(3). Id. at 194-196; see Bowerman v. Wal-Mart Stores, 226 F.3d 574, 586-592 (2000)(failure to provide clear SPD and plan information creates equitable estoppel, breach of fiduciary duty, and entitles plaintiff to restitution); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214-215 (2002)(restitution can be available to prevent unjust enrichment in given cases).

**E.       PLAINTIFFS' STATE LAW CLAIMS MAY NOT BE PRE-EMPTED**

Plaintiffs' alternative state law based claims entitle them to benefits.  While ERISA generally governs severance plans, a one-time payment can avoid pre-emption.  See Rodowicz v. Mass. Mut. Life Ins. Co., 915 F. Supp. 486, 488-490 (D. Mass. 1996). Whether an employer is committed to provide long-term or periodic benefits "will often be telling." Belanger v. Wyman-Gordon Co., 71 F.3d 451, 455 (1st Cir. 1995). Bayer was obligated to make a one-time  payment. See Fort Halifax v. Coyne, 482 U.S. 1, 11(1987). Bayer could terminate the plan at will.  In discovery, Bayer gave little information on its severance payment procedures and refused to produce records of its voluntary layoff severance program. P St 51.

WHEREFORE, Plaintiffs request denial of the Defendants' Rule 56 Motion.

PLAINTIFFS,
By their attorney,

/s/Stephen A. Roach
Stephen A. Roach, BBO No. 542138
ROACH & WISE, LLP
50 Congress Street, Suite 400
Dated: Feb. 2, 2007            Boston, MA 02109-4061
(617) 723-2800

CERTIFICATE OF SERVICE

I, Stephen A. Roach, Attorney for the Plaintiffs, hereby certify that on Feb. 2, 2007 I served the Defendants with this document and the Plaintiffs' Exhibits by causing copies of same to be hand delivered to their counsel of record and/or by e-filing.

/s/Stephen A. Roach
Stephen A. Roach