Westlaw.

Not Reported in N.E.2d                                                                                                Page 1

Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

C
Bain Capital, Inc. v. Wesley Jessen Corp.Mass.Super.,2003.
Superior Court of Massachusetts.
BAIN CAPITAL, INC.,
v.
WESLEY JESSEN CORPORATION.
No. 012171BLS.

April 16, 2003.

MEMORANDUM AND ORDER ON WESLEY JESSEN CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT
ALLAN VAN GESTEL, Justice.

*1 This matter is before the Court pursuant to Mass.R.Civ.P. Rule 56 on a motion by the defendant, Wesley-Jessen Corporation ("Wesley Jessen"), for partial summary judgment as to certain counts of the complaint, namely: (1) Count I (breach of contract), Count III (breach of contract), Count V (breach of implied covenant of good faith and fair dealing), Count VI (promissory estoppel) and Count VII (violation of G.L.c. 93A), each in their entirety; and (2) Count IV (breach of contract) as it relates to the payment of advisory fees through January 31, 2004.

BACKGROUND

At issue is a certain Amended and Restated Advisory Agreement (the "Agreement"), "made and entered into as of October 2, 1996, by and between Wesley Jessen Corporation ... and Bain Captial, Inc. " ("Bain").

The initial term of the Agreement runs from October 2, 1996 to January 31, 2004, with an automatic extension on a year to year basis unless either party gives notice of termination 90 days prior to the expiration of the term or any extension thereof.

Pursuant to the Agreement, Bain is to provide a variety of executive and management services, to identify and support acquisitions and dispositions by Wesley Jessen, to support financing alternatives, to perform finance functions, marketing functions, human resource functions and to provide other services "upon which [Wesley Jessen's] board of directors and Bain agree."

Section 3 of the Agreement provides for the payment to Bain of advisory fees. It reads, in material part, as follows:
Payment for services rendered by Bain ... incurred in connection with the performance of services pursuant to this Agreement shall not exceed $500,000 per fiscal quarter to Bain ... plus reasonable out-of-pocket expenses of Bain ... payable by [Wesley Jessen] to Bain on a quarterly basis commencing as of the date hereof, so long as Bain ... is providing services as requested by the [Wesley Jessen] board of directors.

Section 4 of the Agreement provides for the payment to Bain of transaction fees. It reads, in material part, as follows:(a) ...
(b) In addition, during the term of this Agreement, [Wesley Jessen] shall pay to Bain ... a transaction fee in connection with the consummation of each acquisition, divestiture or financing by [Wesley Jessen] or its subsidiaries or parent in an amount equal to 1% of the aggregate value of such transaction.

Section 12 of the Agreement contains both an integration clause and a choice of law provision. It reads, in material part, as follows:The terms and conditions hereof constitute the entire agreement between the parties hereto with respect to the subject matter of this Agreement and supersede all previous communications, either oral or written, representations or warranties of any kind whatsoever, except as expressly set forth herein ... All issues concerning this agreement shall be governed by and construed in accordance with the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.
Attachment 1
Plantiff's Memo - Civil No. 04-10728WYG

Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

laws of the State of Illinois, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Illinois or any other jurisdiction) that would cause the application of the law of any jurisdiction other than the State of Illinois.

*2 The Agreement was prepared by the Chicago law office of Kirkland & Ellis, a large and very sophisticated firm. At the time, Kirkland & Ellis appears to have been representing both Bain and Wesley Jessen. The Agreement was signed on behalf of Bain by Adam W. Kirsch ("Kirsch"), a managing director, and on behalf of Wesley Jessen, also by Kirsch, as its vice president. Kirsch was also a director of Wesley Jessen. And Kirsch was the principal contact between Kirkland & Ellis, Bain and Wesley Jessen.

At the time the Agreement was entered into in October 1996, Wesley Jessen was a wholly-owned subsidiary of Wesley Jessen Holding, Inc. Wesley Jessen Holding, Inc. was over 90% owned by Bain investment funds.[FN1] Wesley Jessen employees owned the remainder of the shares.

> FN1. In 1995, Bain acquired from Schering Plough Corporation the Wesley Jessen contact lens business by acquiring 90.9% of the common stock. This transaction resulted in the formation of Wesley Jessen Holding, Inc., which in 1997 became known as Wesley Jessen VisionCare, Inc.

In 1997 Wesley Jessen Holding, Inc. went public, with an initial offering at $15.00 per share and a smaller follow-on offering. At this time Wesley Jessen Holding, Inc. was renamed Wesley Jessen VisionCare, Inc.

In March of 2000, Wesley Jessen VisionCare, Inc. discussed merger possibilities with Ocular Sciences, Inc. This merger, however, was never consummated.

Shortly thereafter, on March 23, 2000, Bausch & Lomb Incorporated made a hostile tender offer for Wesley Jessen VisionCare, Inc. This transaction, also, was never consummated.

With some assistance from Bain, a friendly, and higher, bidder for Wesley Jessen VisionCare, Inc. was found in Novartis, A.G. ("Novartis"). The transaction with Novartis closed on October 3, 2000.

The transaction with Novartis was structured as a tender offer and a second step merger. WJ Acquisition Corp. was created by Novartis. WJ Acquisition Corp. purchased the shares of Wesley Jessen VisionCare, Inc. Next, there was a merger between WJ Acquisition Corp. and Wesley Jessen VisionCare, Inc. in which Wesley Jessen VisionCare, Inc. emerged as the surviving corporation.[FN2]

> FN2. There is a footnote numbered 2 in Bain's opposition to the present motion. It reads: "Upon consummation of the Novartis Transaction, Wesley Jessen VisionCare, Inc. (the parent of Wesley Jessen Corporation) became a subsidiary of CIBA Vision, Inc., which is a subsidiary of Novartis A.G. At present, Wesley Jessen Corporation and Wesley Jessen VisionCare, Inc., have ceased to exist as they have been merged into CIBA Vision, Inc. Thus, Novartis' subsidiary, CIBA Vision, Inc., is the successor-in-interest to the defendant Wesley Jessen Corporation." How and when all of this happened is not explained to the Court. Wesley Jessen, however, in para. 60 of its statement of material facts, suggests that this came about "by agreement between Novartis and CIBA Vision. Bain does not dispute this statement. In any event, it does not seem relevant to the present motion."

Whatever entity now controls what was once Wesley Jessen has refused to pay Bain a transaction fee for the Novartis transaction.

Further, taking the position that the Wesley Jessen board of directors, since before the Novartis transaction, has not asked Bain to perform any services for Wesley Jessen, and Bain has not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                         Page 3

Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)
**(Cite as: Not Reported in N.E.2d)**

performed any, Wesley Jessen contends no money is due to Bain as an advisory fee.

## DISCUSSION

Although Illinois law applies to all issues concerning the Agreement, the law of Massachusetts applies to the procedural aspects of the motion in issue.

Summary judgment is granted where there are no issues of genuine material fact, and the moving party is entitled to judgment as a matter of law. *Hakim v. Massachusetts Insurers' Insolvency Fund,* 424 Mass. 275, 281 (1997); *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 716 (1991); *Cassesso v. Commissioner of Correction,* 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of fact. *Pederson v. Time, Inc.,* 404 Mass. 14, 17 (1989).

*3 To suggest that the parties involved in drafting and executing the Agreement are other than extremely sophisticated would be a blunder of major proportion by this Court. Both Bain and Wesley Jessen acted simultaneously through the same man-Kirsch, as a managing director of Bain, and as Wesley Jessen's vice president-and both Bain and Wesley Jessen received the legal advice from the same venerable law firm, Kirkland & Ellis.

In this posture, the integration clause in the Agreement looms very large. The words chosen by Kirkland & Ellis for the Agreement between its two clients, and signed by Kirsch for both companies, are crystal clear. "The terms and conditions hereof constitute the entire agreement between the parties hereto with respect to the subject matter of this Agreement and supersede all previous communications, either oral or written, representations or warranties of any kind whatsoever, except as expressly set forth herein." In short, nothing outside of the four corners of the Agreement, in the absence of ambiguity, may properly be considered in the Agreement's interpretation. See *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462, 465 (1999). The law in Massachusetts is no different. See this Court's own opinion in *Cabot Corp. v. Kemet Elecs. Corp.,* Suffolk Superior Court, No. 02-1585 BLS (Sept. 25, 2002), and cases cited therein.

The parties, on both sides, spent a great amount of time in their briefing, and did so at oral argument, discussing their respective intentions and understandings of the Agreement and the meaning of the words used therein. The effort seemed intended to divert the Court's attention from a study of the plain meaning of the words used. But in so doing the parties seem wholly to overlook, indeed emasculate, the very words they chose in the integration clause of their Agreement. Their arguments raise "previous communications, oral and written, representations [and, perhaps, even] warranties," which are different from "[t]he terms and conditions [which] constitute the entire agreement between the parties hereto with respect to the subject matter of [the] Agreement" and which by express language of the Agreement "*supersede* all previous communications, either oral or written, representations or warranties of any kind whatsoever, except as expressly set forth herein." (Emphasis added.) In the face of that contractual language, so carefully crafted by Kirkland & Ellis, and appearing in the Agreement signed for both parties thereto by the multi-hatted Kirsch, this Court cannot pay any serious attention to a great portion of the arguments presented; nor should it attempt to rewrite the contract. *Academy Chicago Publishers v. Cheever,* 144 Ill.2d 24, 31 (1991).

A contract free from ambiguity must be interpreted according to the plain and usual meaning of the words selected. *Air Safety, supra,* 185 Ill.2d at 464. And it is the Court, not a jury, that must interpret the Agreement. *Id.* at 462. "When parties sign a memorandum expressing all the terms essential to a complete agreement they are to be protected against the doubtful veracity of the interested witness and the uncertain memory of disinterested witnesses concerning the terms of their agreement, and the only way in which they can be so protected is by holding each of them conclusively bound by the terms of the agreement as expressed in the writing." *Id.* at 465.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d	Page 4

Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

*4 A contract is only ambiguous if its language is capable of being used in more than one sense. The language in issue must be susceptible to more than one meaning or be obscure in meaning through indefiniteness of expression. *Bank of Ravenswood v. Polan,* 256 Ill.App.3d 470, 474 (1993).

Also, if there are ambiguities in the contract, as a last resort, those ambiguities are resolved against the drafter. *Baker v. America's Mortgage Servicing, Inc.,* 58 F.3d 321, 327 (7th Cir.1995); *Bunge Corp. v. Northern Trust Co.,* 252 Ill.App.3d 485, 493 (1993). The drafter here, of course, is Kirkland & Ellis acting for both contracting parties, on an agreement signed for both parties by the same man. Thus, this aid to contract construction should only be resorted to if there truly is an undeterminable ambiguity.

The Court turns now to the two clauses in issue, taking them in the order in which they appear in the Agreement.

### Section 3, Advisory Fees

The language of Section 3 is not ambiguous. It reads: "Payment for services *rendered* by Bain ... shall not exceed $500,000 per fiscal quarter to Bain . .. so long as Bain ... is providing services *as requested by the* [Wesley Jessen] *board of directors.* " (Emphasis added.)

Wesley Jessen says that its board of directors has not *requested* any services from Bain under the Agreement since July 1, 2000, well before the closing on October 3, 2000, of the Novartis transaction, and Bain has not *rendered* any such services. See para. 66 of Wesley Jessen's Rule 9A statement of material facts to which there is no genuine issue to be tried. Bain responds to this para. 66 with a single word, "undisputed."

Bain, therefore, is not entitled to any advisory fees for any times since the October 3, 2002 closing of the Novartis transaction. Nor will Bain become entitled to any such advisory fees hereafter unless and until the Wesley Jessen board of directors request such services.

### Section 4, Transaction Fees

Again, the Court finds no ambiguity in the relevant subsection dealing with the payment to Bain of transaction fees. Sec. 4(b) bears repeating here:
In addition, during the term of this Agreement, [Wesley Jessen] shall pay to Bain a transaction fee in connection with the consummation of each acquisition, divestiture or financing by [Wesley Jessen] or its subsidiaries or parent in an amount equal to 1% of the aggregate value of such transaction.

A transaction fee is owed in connection with the consummation of each *acquisition, divestiture* or *financing by* Wesley Jessen or its subsidiaries or parent. It is Wesley Jessen Corporation that is the " Wesley Jessen" that is a party to the Agreement. The transaction upon which Bain seeks a transaction fee is the Novartis transaction with Wesley Jessen VisionCare, Inc., the parent of Wesley Jessen Corporation.

What occurred in the Novartis transaction was, without question, not a "financing" by Wesley Jessen or its parent under any recognized definition of that word. It was not, as Black's Law Dictionary says, "the act or process of raising or providing funds."

*5 Nor was the Novartis transaction an "acquisition" by Wesley Jessen or its parent under any recognized definition of that word. Again looking to Black's Law Dictionary, this transaction was not " the gaining of possession or control over something" by Wesley Jessen or its parent. See, e.g., *Comet Cas. Co. v. Hollowman,* 113 Ill.App.3d 271, 275 (1983).

Staying with its Black's Law Dictionary source, the Court finds "divestiture" to be defined as follows: " The loss or surrender of an asset or interest." Here, what occurred was that the shareholders of Wesley Jessen VisionCare, Inc. sold their shares, for a handsome price, to an entity formed by Novartis, A.G. Both the words "loss" and "surrender" appearing in Black's definition of "divestiture" contain within their meaning an act of yielding to another's power or control; the giving up of a right.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d                                                                                                           Page 5
Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)
(Cite as: Not Reported in N.E.2d)

Most commonly the act of yielding to another's power or control or the giving up of a right, in the context of the words "loss" and "surrender," is an involuntary and coerced process. It is not a voluntary transfer of property for value resulting in a gain.

Simply stated, Wesley Jessen VisionCare, Inc. neither acquired anything nor divested itself of anything in the Novartis transaction. Neither did it receive anything of value therefor. Its stockholders, however, sold their stock for a very handsome return on their investment.

This Court does not interpret the Novartis transaction to be a "divestiture" by Wesley Jessen or its parent.

Given that this Court has determined that there is no breach of contract by Wesley Jessen as to the transaction fee regarding the Novartis transaction and as to the payment of advisory fees through January 31, 2004, to that extent, at least, there can be no breach of the implied covenant of good faith and fair dealing raised in Count V,[FN3] the promissory estoppel claim in Count VI or the G.L.c. 93A claim in Count VII.

> FN3. Indeed, this Count may fail totally under the applicable Illinois law. See *Solon v. Kaplan,* 2001 WL 123769, at *5 (N.D.Ill. Feb 13, 2001).

The issues raised in Count II relating to possible transaction fees in connection with the Wesley Jessen public offerings were not presented to the Court on this motion. Consequently, the Court cannot rule out, in their entirety, Counts V, VI or VII.

With regard to Count VII, the G.L.c. 93A count, it seems peculiarly tenuous given the Agreement's choice of law clause and the fact that the transaction may not have occurred primarily and substantially within the Commonwealth. See, e.g., *Kuwaiti Danish Computer Co. v. Digital Equipment Corporation,* 438 Mass. 459, 472-73 (2003).

ORDER

For the foregoing reasons, this Court *ALLOWS* the motion for summary judgment of the defendant, Wesley Jessen Corporation, as to Counts I and III in their entirety; as to Count IV as it relates to the payment of advisory fees through January 31, 2004; and as to Counts V, VI and VII as they relate to a transaction fee for the Novartis transaction and the payment of advisory fees through January 31, 2004.

Mass.Super.,2003.
Bain Capital, Inc. v. Wesley Jessen Corp.
Not Reported in N.E.2d, 16 Mass.L.Rptr. 257, 2003 WL 21129854 (Mass.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.