## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                        )
**JOSEPH ATTARDI, et al.**              )
    **Plaintiffs,**               )
                                        )
**v.**                                  )  **Civil Action No.: 04-10728 WGY**
                                        )
**BAYER CORPORATION and**               )
**BAYER CORPORATION SEVERANCE**         )
**PAY PLAN,**                           )
    **Defendants.**               )
_____)

## JOINT PRE-TRIAL MEMORANDUM

Pursuant to the Court's Order of January 11, 2007, the attorneys for the Plaintiffs and for the Defendants hereby submit the following:

    1. <u>Concise Summary of Facts</u>

**<u>Plaintiffs:</u>** Plaintiffs claim wrongful denial of severance benefits and breach of fiduciary duty in violation of ERISA (<u>See</u> §§502, et seq. of ERISA; 29 U.S.C. §§ 1132(a)(1)(B) & (3) et seq.) and bring three alternative Massachusetts law based claims against Defendants Bayer Corporation "(Bayer") and Bayer Corporation Severance Pay Plan ("Bayer Plan") .

Until September 1998, Bayer employed the 63 Plaintiffs (and about 25 others) in the "Board Shop" of its Electronic Prepress Systems Operations under Bayer's Agfa Division. The Plaintiffs had 10 to 30 years of service. They assembled printed circuit boards for Bayer's end-use customers. Plaintiffs were participants in the Bayer Plan which provided 2 weeks of pay for each year of employment. Severance benefits were to be paid from Bayer's assets. Bayer was the plan administrator. Bayer never provided to

or disclosed to the Plaintiffs the  Bayer Plan but did provide a Summary Plan Description ("SPD").  The SPD provided no clear  information as to the existence of the Bayer Plan or an address, telephone number or contact person to obtain it. Bayer's local main contact HR person for the Plaintiffs did not know the Bayer Plan even existed.

Effective September 1, 1998, Bayer (1) involuntarily terminated each Plaintiff and (2) sold the  "Board Shop" assets to Electronic Fabrication Technology Corporation ("EFTC") for $8.1 Million.  In August 1998, Bayer advised Plaintiffs that Bayer was terminating them and a job with EFTC would be available at the same pay and location. EFTC and Bayer needed the experienced Plaintiffs to go to EFTC which had no experienced employees. As part of the sale, EFTC and Bayer had a 3 year supply agreement and Board Shop area lease with EFTC.  Bayer did not sell the entire Agfa Division.[1]  To try to avoid severance Bayer required EFTC to offer jobs to all Board Shop employees. Bayer sold the Board Shop due to declining business conditions and to save on an expensive equipment upgrade.

The Bayer Plan and SPD provided employees severance when their termination is involuntary and their positions are eliminated, or their operations are discontinued,  or due declining business conditions.  All such conditions were met. When Bayer orally advised Plaintiffs of their termination, the Plaintiffs verbally asked for severance.  Bayer repeatedly incorrectly verbally denied severance on the grounds that EFTC was offering them a job at the same salary and location.  Violating its internal policy, the Bayer Plan and the SPD, Bayer failed to advise the Plaintiffs in writing of their termination, did not provide the complete basis of the severance denial, did not give any information on how

---

[1]Bayer employed 24,000 people and had sales of $9.3 Billion.P St 2

to internally appeal, did not reveal the existence of the Bayer Plan and admitted it did not know how an employee even makes a formal claim for severance. Bayer gave the Plaintiffs two choices: (1) termination with a job or (2) termination without a job, but no severance. Bayer terminated their employment without severance. Bayer falsely said that EFTC's benefits were comparable**.**  Relying on Bayer's statements, under a short deadline, the Plaintiffs accepted employment with EFTC.  EFTC's benefits were much worse.   Bayer and EFTC agreed to try to work together to avoid the $2 Million severance and induce the Plaintiffs to accept an EFTC job. [2]

Bayer had a voluntary severance layoff program; Bayer would spread word of a layoff and sought volunteers to accept severance and allow others to remain. Volunteers signed an agreement form for severance. Plaintiffs' continued employment with Bayer was based in part on available severance and the program.

Due to the large number of Plaintiffs (63), the Plaintiffs selected among themselves for the purpose of this litigation, Plaintiffs Jeanne Skene, Bertrand Guilmette, and Vincent Fiorilla to speak for them all in all statements in Answers to Interrogatories, and Depositions in addition to any testimony by any of the other Plaintiffs.

**Defendants:** Bayer Corporation sold its printed circuit board operation in Wilmington, MA to EFTC effective September 1, 1998.  Each printed circuit board employee (including all Plaintiffs) were offered EFTC jobs at their Bayer salary rate and at the same location.  All Plaintiffs had been provided SPDs which set forth the terms of the severance pay plan. Pursuant of Section 3.06(8) of the severance pay plan, the Plaintiffs were not entitled to severance benefits

---

[2] The sum would be much higher with the 25 or more who did not join this action.

As to Plaintiffs' claims, Defendants deny that the EFTC transaction was a reduction in force, and thus any past practice concerning voluntary layoffs is inapplicable. Defendants deny stating to employees that EFTC benefits were equal to or better than Bayer benefits. Bayer submits that Plaintiffs' interpretation of the SPD as providing severance benefits in this circumstance is in error, and, based on the applicable standard of review, Bayer's contrary interpretation is reasonable and thus must be accepted.

2.   Stipulations of Fact

In 1998, Bayer Corporation was headquartered in Pittsburgh, Pennsylvania. Through its AGFA Division, Bayer operated various facilities in Wilmington, Massachusetts engaged in the manufacture of electronic pre-press systems.

In 1998, at a manufacturing facility located at 80 Industrial Way, Wilmington, Massachusetts, the AGFA Division of Bayer operated a printed circuit board manufacture and assembly unit (the "Board Shop) comprised of approximately 75-85 employees and managers.

In 1998, Bayer Corporation had in effect for its employees The Bayer Corporation Severance Pay Plan (the "Bayer Plan"), which provided severance benefits to the Plaintiffs provided certain conditions were met. Defendants did not distribute copies of the Bayer Plan to Plaintiffs.  In August 1995, Bayer Corporation mailed to each of its employees, including each of the Plaintiffs, a Summary Plan Description (hereinafter, the "SPD") of the Bayer Plan. No Plaintiff requested a copy of the Bayer Plan.

Defendant Bayer Corporation was the Plan Administrator of the Bayer Plan.

In early 1998, Bayer decided to discontinue its printed circuit board operation in Wilmington.

On July 15, 1998, Bayer signed a Letter of Intent with EFTC in which Bayer agreed to sell its printed circuit board operation to EFTC.

Bayer and EFTC agreed that each Bayer employee in the Board Shop operation would be offered employment by EFTC at a salary/wage rate that was equal to or greater than the base salary/wage rate each employee had with Bayer at the same location that the employee was performing work for Bayer.

On August 13, 1998 Bayer and EFTC signed an Asset Purchase Agreement providing for the sale of the Board Shop's board shop assets. Prior to September 1, 1998, each Bayer employee of the Board Shop, including each of the Plaintiffs, accepted employment with EFTC. Specifically, each Bayer employee of the printed circuit board operation, including each of the Plaintiffs, accepted employment with EFTC. at the same location where they were working for Bayer.

On August 31, 1998, Bayer involuntarily terminated the employment of the Plaintiffs and made no severance payments to the Plaintiffs under the Bayer Plan. On September 1, 1998, the Plaintiffs became EFTC employees.

Not including interest, costs or attorney's fees, the principal sum the Plaintiffs claim in severance or in restitution is about $1.7 Million according to the Defendants and about $1.9 Million according to the Plaintiffs.

3.   Contested Issues of Fact.

**Plaintiffs:**

1.  Plaintiffs state that Defendants did not make the Plaintiffs aware, or reasonably aware, of the existence of the Bayer Corporation Severance Pay Plan ("Bayer Plan").   Rather, the Defendants only provided the Plaintiffs in 1995 with a copy of the Summary Plan Description ("SPD").

2. Plaintiffs dispute the Defendants' position that the SPD clearly indicated the existence of the Bayer Plan and where and how to obtain it is erroneous.

3.  Plaintiffs state that the Defendants' position that the SPD explained to the Plaintiffs that the Plaintiffs had to first "file" a claim for benefits and then "appeal" the denial before filing suit to exhaust administrative remedies is erroneous.

4.   Plaintiffs state that the Defendants' position that the Plaintiffs were not involuntarily terminated from Bayer but, rather, were "transferred" to EFTC from is incorrect.

Employees cannot be transferred. They can be terminated or they can resign. Here, Bayer terminated the Plaintiffs.

5.   Plaintiffs contest the Defendants' assertions that the Defendants did not work in concert with EFTC to persuade the Plaintiffs, with false statements and half-truths, to accept a job with EFTC with the intention, in part, to avoid about $2 Million in severance payments.

6.   Plaintiffs contest the Defendants' position that the Defendants clearly advised the Plaintiffs of their rights and obligations as to severance with regard to both entitlement to benefits and to the appeal procedure.

7.    Plaintiffs dispute the Defendants' contention that the Plaintiffs are not entitled to severance payments.

8.  Plaintiffs dispute the Defendants' contention that the Defendants did not violate their fiduciary obligations to the Plaintiffs.

9.    Plaintiffs dispute the Defendants' position that Bayer's voluntary layoff severance did not induce the Plaintiffs to remain with Bayer and the denial of benefits was inconsistent with Bayer's established practices with its other employees.

10. The Plaintiffs dispute the Defendants' contention that they are barred from pursuing their claims under any statute of limitations or exhaustion of remedies theory.

11.  Plaintiffs contest Defendants' position that not all Board Shop employees accepted jobs with EFTC.

**<u>Defendants:</u>**

1.   Whether Defendants' agents made material misrepresentations to Plaintiffs to induce them to accept employment with EFTC.

2.   Whether Plaintiffs each detrimentially relied on misrepresentations by Defendants in accepting EFTC job offers.

3.   Whether Plaintiffs each detrimentally relied on SPD language that conflicted with severance pay plan eligibility language.

4.   Whether Defendants violated ERISA by failing to give one or more Plaintiffs written denials of severance benefits.

5.   Whether Plaintiffs had sufficient information on which to file a claim for severance pay on or before September 1, 2002.

6.   Wether one or more Plaintiffs are barred from pursuing their claims based on statutes of limitation.

7.   Whether one or more Plaintiffs are banned from pursuing claims based on failure to exhaust administrative remedies.

8.   Whether the term "divestiture" should be interpreted by Bayer, and in any event, for the reasons stated in footnote 12 of Defendants' Summary Judgment Memorandum, can be fairly interpreted as applying to the sale of portions of a business."

4.   <u>Jurisdictional Issues.</u>

None.

5.   <u>Questions in Pending Motions.</u>

1.   Defendants have filed a motion for summary judgment and Plaintiffs have filed a cross-motion for summary judgment.

2.   Defendants have assented to Plaintiffs' filing a potential motion for a Second Amended Complaint to comport with the facts developed in discovery.

3. Plaintiffs have filed an Assented to Motion to Substitute a Corrected Page 16 in the Plaintiffs' Opposition Memorandum to Defendants' Motion for Summary Judgment.

4.   Defendants have filed a Motion to Strike Certain of Plaintiffs' Rule 56.1 Statement of Facts to which the Plaintiffs will file an Opposition and a potential Motion to Strike as well.

6.  <u>Issues of Law.</u>

**<u>Plaintiffs:</u>**

1.   Plaintiffs claim wrongful denial of severance benefits in violation of ERISA (<u>See</u> §§502, et seq. of ERISA; 29 U.S.C. §§ 1132(a)(1)(B).

2.    Plaintiffs claim breach of fiduciary duty  in violation of ERISA (<u>See</u> §§502, et seq. of ERISA; 29 U.S.C. §§ 1132(a)(3).

3.   Defendants are estopped from relying on the Bayer Plan language to exclude benefits as the Bayer Plan was not provided to the Plaintiffs and notice of its existence was not given to the Plaintiffs. <u>Krodel v. Bayer Corporation</u>, 345 F.Supp.2d 110, 114-116 (D. Mass. 2004); <u>Colarusso v. Transcaptial Fiscal Systems, Inc.</u>, 227 F. Supp.2d 243, 259-259 (D.N.J. 2002); 29 U.S.C. §1132(c); see <u>Bourgeois v. Pension Plan</u>, 215 F.3d 475, 482 (5th Cir. 2000).

4.   Even if the Defendants can rely on the exclusions in the Bayer Plan, the sale of the Board Shop to EFTC was <u>not</u> a divestiture.  <u>See</u> Black's Law Dictionary (8th ed.) (divestiture is a "1. The loss or surrender of an asset or interest; 2. A court order to a party to dispossess of assets or property; 3. Antitrust. A court order to a defendant to rid itself of property, securities, or other assets to prevent a monopoly or restraint of trade.") <u>California v. American Stores Co.</u>,   495 U.S. 271, 295 (1990); <u>Bain Capital, Inc. v. Wesley Jessen Corp.</u>,  16 Mass.L.Rptr. 257 (2003) (<u>see</u> **Attachment 1 to Plaintiffs Summary Judgment Opposition Memo**); <u>Webster's New Universal Unabridged Dictionary</u>, (2d ed.) (<u>see</u> **Attachment 2 to Plaintiffs' Summary Judgment Opposition Memorandum**).

5.  By the express terms of either the Bayer Plan, the SPD, read separately or together, the Plaintiffs are entitled to severance benefits.  Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 31-32 (1st Cir. 1991); see Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 828-829, 831 (7th Cir. 2004) Dabertin, 373 F.3d at 829; see Blau v. Del Monte Corp., 748 F.2d 1348, 1355 (9th Cir. 1984).

6.  There need not be a term of unemployment for the Plaintiffs to be entitled to severance benefits.  Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 31-32 (1st Cir. 1991); Anstett v. Eagle-Picher Industries, Inc., 203 F.3d. 501,504 (1999); Grun v. Pneumo Abex Corp., 163 F.3d 411, 420-421 (7th Cir. 1998); Thorpe v. Retirement Plan of Pillsbury Co., 80 F.3d 439, 433-434 (10th Cir. 1996);  Ulmer v. Haresco Corp., 884 F.2d 98, 102-103 (3d Cir. 1989); Blau, 748 F.2d at 1354-1355; Bedinghaus v. Modern Graphic Arts, 15 F.3d 1027, 1029-1030(11th Cir. 1994); Harris v. Pullman Standard, Inc., 809 F.2d 1495, 1498-1499(11th Cir. 1987).

7.  SPD's must be written "in a manner calculated to be understood by the average plan participant, and [be] sufficiently accurate and comprehensive to reasonably appraise such participants .... of their rights and obligations under the plan."  29 U.S.C. §1022(a).  8. 8. 8. In the event the Court finds any ambiguity or discrepancy within either or both of of the Bayer Plan or SPD  the Plaintiffs also prevail. Bergt v. Retirement Plan for Pilots Employed by Markair, Inc. 293 F.3d 1139,1145 (9th Cir. 2002); Spanos v. TJX Companies, Inc., 220 F. Supp.2d 67, 72 & n.8 (D. Mass. 2002); Hansen, 940 F.2d at 982; Barnes v. Independent Auto, 64 F.3d 1389, 1393 (9th Cir. 1995).

9.  When there are discrepancies between the two plans, the SPD controls.

Mauser v. Raytheon Co. Pension Plan, 31 F.Supp.2d 168, 173-174 (D.Mass

1998); Davis v. First Union Corp. Long Term Disability Plan, 213 F.Supp.2d 29,

35 (D.Mass. 2002); Gentile v. John Hancock Mut. Life Ins. Co., 951 F.Supp. 284,

290 (D.Mass. 1997); Spanos, 220 F. Supp.2d at 74  n.8.  Where the Plaintiffs had

no knowledge, reasonable notice about or access to the Bayer Plan any disclaimer

in the Bayer Plan is invalid and the Plaintiffs relied only on the SPD's language.

See Mauser, 31 F.Supp.2d at 174 (invalid disclaimer in SPD).

10.  Bayer's voluntary layoff program and severance induced the Plaintiffs, in

part, to remain with Bayer. P St 51. See Mauser, 31 F. Supp.2d at 55-56.

11. Plaintiffs are entitled to payment of severance under ERISA's equitable

provisions, including restitution, for Bayer's breach of its fiduciary obligations.

See 29 U.S.C.§1132(a)(3); ERISA § 502(a)(3);  Varity Corp. v. Howe, 516 U.S.

489, 501, 506 (1996);  Laurenzano v. Blue Cross, 134 F.Supp.2d 189, 194-196

(D.Mass. 2001);  Bowerman v. Wal-Mart Stores, 226 F.3d 574, 586-592 (2000);

Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 214-215

(2002)(restitution can be available to prevent unjust enrichment in given cases).

12.   Under the facts of this case, the standard of review is de novo, not arbitrary

and capricious.  29 U.S.C. §1133;  Glista v. UNUM Life Ins. Co. of Am., 378

F.3d 113, 131-132 (1st Cir. 2004); Gritzer v. CBS, Inc., 275 F.3d 291, 295 (3d Cir.

2002); Twomey v. Delta Airlines Pilots Pension Plan, 328 F.3d 27, 31 (1st Cir.

2003); Kieft v. American Express Co., 451 F.Supp.2d 289, 295 (D. Mass. 2006);

McLean Hosp. Corp. v. Lasher, 819 F.Supp. 110, 119 (D.Mass. 1993); Lopes v.

Metropolitan Life Ins. Co., 332 F.3d 1, 5 (1st Cir. 2003); Dabertin v. HCR Manor Care, Inc., 373 F.3d 822, 828 (7th Cir. 2004)..

13. At a minimum, the Plaintiffs are entitled to "a `sliding scale' standard of review." Clapp v. Citibank NA, 262 F.3d 820, 827 (8th Cir. 2001).

13.    Even assuming a Previously, in Krodel v. Bayer Corporation, 345 F.Supp.2d 110, 114-116 (D. Mass. 2004), the Court found that Bayer committed multiple violations of ERISA in failing to provide access to documents and a considered fact-based reason for its denial of benefits.  Even assuming an arbitrary and capricious review,  the Plaintiffs still prevail DePina v. General Dynamics Corp., 674 F. Supp. 46, 51-52 (D. Mass. 1987) (interpretation arbitrary and capricious);  Boardman v. Prudential Ins. Co., 337 F.3d 9, 15 (1st Cir. 2003)(must be "supported by substantial evidence in the record"); Giroux v. Fortis Benefits Ins. Co., 353 F.Supp.2d 45, 52 (D. Me. 2005) (denial not supported by record); Myers v. Hercules, Inc., 253 F.3d 761, 767-768 (4th Cir. 2001) (misinterpretation of record).

14.    Exhaustion of Administrative remedies does not bar the Plaintiffs' claims. 29 U.S.C. § 1133; CFR Title 29,  §2560.503-1(b). Bayer is estopped as to this defense. Krodel v. Bayer Corporation, 345 F.Supp.2d at 115; Bourgeois v. Pension Plan, 215 F.3d 475, 482 (5th Cir. 2000)(failure to provide SPD estops the defendants as to exhaustion defense); Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 689-691 (7th Cir. 1992)(denial letter inadequate).  "Inadequate notice, in and of itself, may constitute arbitrary and capricious denial...."  McLean, 819 F.Supp. at 119.

15.    Plaintiffs also are excused from the exhaustion of administrative remedies defense under the futility and wrongful denial of meaningful access to procedures exceptions.   Depina, 674 F.Supp. at 49; McLean, 819 F.Supp. at 123; Bourgeois, 215 F.3d at 481 (same).

16.  The Plaintiffs should, at a minimum, be entitled to a remand if the Court is inclined to determine that exhaustion of administrative remedies is require.  See Depina, 674 F.Supp. at 50;  Spanos v. TJX Companies, Inc., 220 F. Supp.2d 67, 74 & n.11, 75  (D. Mass. 2002); Kieft, 451 F. Supp.2d at 295; see Buffonge v. Prudential Ins. Co., 426 F.3d. 20, 31-32 (1st Cir. 2005)(remand due to tainted process).

17. No statute of limitations bars the Plaintiffs' claims within any plan documents or under any applicable statute.   29 U.S.C. §1113;  Radford v. General Dynamics Corp., 151 F.3d 396, 399 (5th Cir. 1998) Kodes v. Warren Corp., 24  F.Supp.2d 93, 101-102 (D. Mass. 1998);   Watson v. Deaconess Waltham Hosp., 298 F.3d 102, 118 (1st Cir. 2002); Skipper v. Claim Services International, 213 F.Supp.2d 4, 6 (D. Mass. 2002); Alcorn v. Raytheon Co., 175 F. Supp.2d 117, 121 (D. Mass. 2001); Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc. Retirement Income Trust, 134 F.Supp.2d 189, 205 (D. Mass. 2001).  The addition of the Defendants related back to the original filing date. Fed. R.Civ. P.15; see Sigros v. Walt Disney World Co., 190 F. Supp.2d 165, 167-168 (D. Mass. 2002).

18.   As to pre-emption, Plaintiffs alternative state law based claims likely are pre-empted but in the event that the Court finds no pre-emption and/or the law changes as to their claims by the time of trial, the Plaintiffs reserve the right to

assert the state based claims. See Rodowicz v. Mass. Mut. Life Ins. Co., 915 F.

Supp. 486, 488-490 (D. Mass. 1996);  Belanger v. Wyman-Gordon Co., 71 F.3d

451, 455 (1st Cir. 1995); see Fort Halifax v. Coyne, 482 U.S. 1, 11(1987).

**Defendants:**

1.      Are Plaintiffs claims time-barred.  Watson v. Deaconess Hospital, 298

F.3d 102, 118 (1st Cir. 2002); Muldoon CJ Muldoon & Sons, 278 F.3d 31, 32 (1st

Cir. 2002); Miara v. First All America Financial Life Insurance Co., 379 F.Supp.

2d 20 (D. Mass. 2005); J. Geils Band Emp. Benefit Plan v. Smith Barrey

Shearson, 76 F.3d 1245, 1255 (1st Cir. 1996).

2.      Are Plaintiffs claims barred due to their failure to exhaust administrative

remedies.  Terry v. Bayer, 145 F.3d, 28, 37-40 (1st Cir. 1998); Drinkwater v.

Metropolitan Life, 846 F.2d 821, 825 (1st Cir.); cert. dew., 488 U.S. 909 (1988).

3.      Whether Plaintiffs misrepresentation claims are cognizable under ERISA.

Mauser v. Raytheon Com. Pension Plan, 239 F.3d, 51, 55 (1st Cir. 2001); Joyce v.

John Hancock Fin. Serv., 2006 U.S. Dist. LEXIS 84799 at *38 (D.Mass 2006);

Fenton v. John Hancock Mutual Life Ins. Co., 400 F.3d 83, 88 (1st Cir. 2005).

4. Whether an "arbitrary and capricious" standard of review applies to Plaintiffs'

claims for severance benefits.  Terry v. Bayer, 145 F.3d 28, 37 (1st Cir. 1998);

Campbell v. Bank Boston, 327 F.3d (1st Cir. 2003); Bachelder v. Comm. Satellite

Corp., 837 F.2d 519, 521-22 (1st Cir. 1998).

5.  Whether Plaintiffs common law claims are pre-empted by ERISA.  Ingersoll-

Rand v. McClenedon, 498 U.S. 133 (1990); Hampers v. WR Grace Co., Inc., 202

F.3d 44, 51 (1st Cir. 2000).

6.    Whether voluntary layoff practices are relevant to plaintiffs' ERISA claims for benefits.  Balestracc v. NSTAR Electric & Gas Co., 449 F.3d 224, 230 (1st Cir. 2006); Adage v. Allen, 967 F.2id 695, 700 (1st Cir. 1992).

7.     Whether Agfa Corporation's payment of severance pay to machine shop employees is relevant to the instant claim.  McGath Auto Body v. North Shore, Inc. 7 F.3d 665, 670 (7th Cir. 1993); Kourinos v. Interstate Brands Corp., 324 F.Supp. 2d 105, 108-109 (D.Me 2004)

8.     Whether Bayer lawfully could structure the EFTC transaction to avoid severance pay obligations. Campbell v. Bank Boston, 327 F.3d 1, 6-7; Vartanian v. Monsanto Co., 131 F.3d 264, 268 and 5 (1st Cir. 1997).

9.     Whether ERISA required Bayer to distribute copies of the Severance Pay Plan in addition to the SPD even in the absence of any employee request.   29 USC §1024(b)(1) and (4).  See also Glassner v. Int'l Bus. Machines, Corp., 2004 U.S. Dist.  LEXIS 18069 at *30-31 (N.D. I11 2004)

10.     Whether the Severance Pay Plan and SPD should be strictly construed against Bayer.  Mauser v. Raytheon, 46 F.Supp. 2d 98, 100 (D.Mass. 1999), Aff'd 239 F.3d 51 (1st Cir. 2001).

11.     If the Court finds that the SPD and/or Severance Pay Plan is ambiguous, whether deferral of decision pending submission to Bayer's ERISA review committee is required.  Madera v. Marsh USA, 426 F.3d 56, 63-64 (1st Cir. 2005); Rivera-Diaz v. Amercian Airlines, Inc., 2000 U.S. App. LEXIS (18008) (1st Cir. 2000)(unpublished).

7. <u>Requested Amendment to the Pleadings.</u>

The Parties have agreed to an amendment of the First Amended Complaint, a Second Amended Complaint, to assert and clarify some allegations in accordance with the evidence produced in discovery.

8. <u>Additional Matters to Aid in the Disposition of the Action.</u>

Due to the large number of Plaintiffs (63), the Plaintiffs wish to call only a certain limited number of them to testify. The  Plaintiffs selected among themselves for the purpose of this litigation, Plaintiffs Jeanne Skene, Bertrand Guilmette, and Vincent Fiorilla to speak for them all in all statements in Answers to Interrogatories, and Depositions in addition to any testimony by any of the other Plaintiffs.   Those three Plaintiffs have been deposed. Accordingly, the Plaintiffs have requested the Defendants to accept their testimony as representative of all. Approximately eight to ten other Plaintiffs also will testify as to certain additional specific facts, including four whom the Defendants have already deposed.  The Plaintiffs contend that it would be too burdensome on the Court and duplicative in many cases for all Plaintiffs to testify.  If the Defendants wish to depose any other Plaintiffs which they have not already deposed and who the Plaintiffs intend to identify as those they will call to testify, the Plaintiffs have no objection in this regard.

Defendants object to Plaintiffs' proposals.  Plaintiffs' claims of detrimental reliance requires individualized testimony.  Testimony by "representatives' as to one on one meetings between other employees and managers is pure heresay.

9.  <u>Probable Length of Trial</u>

A.  Non-Jury - whether ERISA or state based claims

B.  Length of Trial: Estimated Two Weeks

10.  <u>Witnesses</u>

**Plaintiffs:**

1.  Plaintiff  Joseph Attardi,  11 Pinedale  Avenue, Methuen, Massachusetts

01844.  2.  Plaintiff Micheline Augusta, 13 Burns Road, Pelham, New Hampshire

03076.

3.  Plaintiff Farahilda Bet-Eivazi,  99 Amherst Street, Lawrence, Massachusetts

01843.

4.  Plaintiff Mary B. Bogdan, 17R Euclid Avenue, Methuen, Massachusetts

01844.

5.  Plaintiff Mark Bowdidge,  2 Barrett Avenue, Stoneham, Massachusetts 02180.

6.  Plaintiff Karen Brown, 157 Loon Point Lane, P.O. Box No. 9, West Poland,

Maine 04291-0009.

7.  Plaintiff Marie Brown, 17 Primrose Road, Billerica, Massachusetts 01821.

8.  Plaintiff Robert Brown, 80 Brown Street, Methuen, Massachusetts 01844.

9.  Plaintiff Larry Cellamare,  8 Cherry Street, Nashua, New Hampshire 03060.

10. Plaintiff Wai Ngan Chan, 8A Blueberry Road, Derry, New Hampshire 03038.

11.  Plaintiff Carol Christianson, 19 Stonehedge Road, Windham, New

Hampshire 03087.

12.  Plaintiff Mary Jo Corcoran, 30 Jackson Street, Dracut, Massachusetts 01826.

13.  Plaintiff  Richard Cote, 109 Phillips Street, Lawrence, Massachusetts 01843.

14.   Plaintiff Corrie Cottrell, 7527 Brackenwood Circle, Indianapolis, Indiana

42260.  15.   Plaintiff Clarence Coupe, 15 Brown Road, Raymond, New

Hampshire 03077.

16.   Plaintiff Aroussiak Dakessain, 1 Stonehill Drive, Apt. 2J, Stoneham,

Massachusetts 02180.

17.  Plaintiff Richard DeFrancesco, 15 Kensington Avenue, Methuen,

Massachusetts 01844.

18.  Plaintiff Maria DeFrancesco, 15 Kensington Avenue, Methuen,

Massachusetts 01844.

19.   Plaintiff David J. Dolan, 29 Garden Street, Salisbury, Massachusetts 01952

20.  Plaintiff Lise Dupuis,  8 Arcadia Lane, Salem, New Hampshire 03079.

21.  Plaintiff Sandra Comeau Dutcher, 406 Main Street, Apt. 3, P.O. Box 17,

Grande Isle, Maine 04746-3139.

21.  Plaintiff Kathy Ely, 30 Walton Road, Plaistow, New Hampshire 03865.

22.  Plaintiff Vincent Fiorilla,  13 Maple Avenue, Atkinson, New Hampshire

03811.  23.  23. Plaintiff Steve Fournier, 1851 S.E. Erwin Road, Port St. Lucie,

Florida 34952.

24.  Plaintiff Jean Fraser, 101 Buttrick Road, Hampstead, New Hampshire 03826.

25.  Plaintiff Gary Frizzell,  46 Lincolnshire Drive, Bradford, Massachusetts

01835.

26.  Plaintiff Diana Glassett, 16 Bixby Avenue, North Andover, Massachusetts

01845.  27.  Plaintiff Fred Glassett, 16 Bixby Avenue, North Andover,

Massachusetts 01845.

28.  Plaintiff Boonchoo Grasso, 57 Oregon Avenue, Lawrence, Massachusetts 01841.

29.  Plaintiff Phillip Greene, 22 Brookwood Drive, Salem, New Hampshire 03079-3024.  30.  Plaintiff Bertrand Guilmette, 26 Sandra Lane, Methuen, Massachusetts 01844.

31.  Plaintiff Pauline Guilmette, 153 Margin Street, Lawrence, Massachusetts 01840.  32.  Plaintiff Alberta Healey, 73 East Broadway, Apt. #1, Derry, New Hampshire 03038.  33.  Plaintiff Jeanne Huff, formerly of 4 Kelly Road, Kingston, New Hampshire 03848, is now deceased.  Requests have been made to her husband to have her estate substituted for her as a party.

34.  Plaintiff Rick Jakle, 20 Neal Road, Danvers, Massachusetts 01923.

35.  Plaintiff Anita Kopacz, 20 Leroy Lane, Tewksbury, Massachusetts 01876.

36.  Plaintiff Alfred Languirand, 2 Sleeper Lane, Sandown, New Hampshire 03873.

37.  Plaintiff Janet E. Lanoue,  22 Dexter Avenue, Dracut, Massachusetts 01826.

38. Plaintiff Judith La Rosa, 24 Lexington Street, North Andover, Massachusetts 01845.  39.  Plaintiff Edmund J. Lascelles, Jr., 1 Arnold Road, Tewksbury, Massachusetts 01876.  40.  Plaintiff Cliff Lord, III, 13 Pine Ridge Road, North Reading, Massachusetts 01864.  41.  Plaintiff Pat Mabey, 1 Water Street, Apt. #713, Haverhill, Massachusetts 01830.

42.  Plaintiff Teresa C. Ornelas,  7 Omega Circle, Dracut, Massachusetts 01826-3145.  43.  Plaintiff Janice Paradis, 56 Railroad Street, Lawrence, Massachusetts 01841.

44. Plaintiff Linda Paradis, 2 Stephan Avenue, Harverhill, Massachusetts 01832.

45. Plaintiff Norman Parent, 110 London Street, Lowell, Massachusetts 01852-4525.

46. Plaintiff Long T. Peck, 20 Ridgevale Road, Harwich, Massachusetts 02645.

47. Plaintiff Diana Perreault, 33366 Westwood Drive, Ridge Manor, Florida 33523.

48. Plaintiff Oudomphone Phommahaxay, 435 South Main Street, Andover, Massachusetts 01810.

49. Plaintiff Richard Picard, 5 Gumpus Hill Road, Pelham, New Hampshire 03076.

51. Plaintiff Norman Poulin, 38 Howard Street, Haverhill, Massachusetts 01830.

52. Plaintiff Maria Reis, 10 Chase Street, Lowell, Massachusetts 01852

53. Plaintiff Mark Robert, 10 Mount Auburn Street, Lawrence, Massachusetts 01843.

54. Plaintiff John Sablock, 26 Curve Road, Stoneham, Massachusetts 02180.

55. Plaintiff Barbara Sanborn, P.O. Box 411, North Main Street, Middleton, Massachusetts 01949.

56. Plaintiff Joanne Sanzo, 31 Coles Way, Atkinson, New Hampshire 03811.

57. Plaintiff Linda Saulnier, 2 Kilby Street, Wilmington, Massachusetts 01887.

58. Plaintiff Jeanne Skene ("Skene"), 6 Faith Road, Windham, New Hampshire 03087.

59. Plaintiff Robert Stier, 11 Millville Street, Salem, New Hampshire 03079.

60.  Plaintiff Catherine Sweeney, 30 Kendall Pond Road, #8, Derry, New Hampshire 03038.

61.  Plaintiff Pham Van, 38 Arthur Street, Haverhill, Massachusetts 01832.

62.  Plaintiff Diane Willette, 79 Harrison Street, Haverhill, Massachusetts 01830.

63.  Plaintiff Edward R. Wright, 6 Mill Road, Londonderry, New Hampshire 03053.

Consistent with the Amended Complaint, the submissions relative to the parties' summary judgment motions, and the Plaintiffs' Concise Statement of Facts above, Plaintiffs will testify that there were former Bayer employees who are entitled to severance under the terms of the Bayer Corporation Severance Pay Plan and/or the Summary Plan Description after Bayer involuntarily terminated their employment. They will testify that Bayer and EFTC agreed to offer them a new position with EFTC to avoid severance payments and, as an inducement, to falsely represent that EFTC's benefits were comparable or the same as Bayer's benefits, that it was win-win situation for all, that Bayer orally denied their claims for severance, that Bayer failed to disclose the Bayer Plan's existence to them and failed to advise the Plaintiffs how to internally appeal the severance denial.  The Plaintiffs will testify that they remained with Bayer for 10-30 years in part because of the severance and Bayer's voluntary layoff severance policy for all its Agfa Division employees.  The Plaintiffs will testify that  Bayer gave the Plaintiffs two choices: (1) termination with a job or (2) termination without a job, but no severance. Bayer terminated their employment without severance.  The Plaintiffs will testify that sometime in 2000 or 2001 after they learned that their former Bayer colleagues, then working for Agfa Corporation at the same facility, obtained severance under similar circumstances after a layoff, they

questioned Bayer's statement in 1998 that no severance benefits were due them. The Plaintiffs will testify that about $2 Million, not including interest, costs or attorneys fees, is due them. The Plaintiffs will testify that their 3 Plaintiff representatives for them in this case, Jeanne Skene, Bertrand Guilmette, and Vincent Fiorilla, made discovery statements in this case on their behalf.

64. Staci Landress, 6 Jerridge Lane, Chelmsford, MA.  She will testify as to her employment with Bayer and EFTC and as to the Plaintiffs' lack of knowledge of the nature and extent of the comparison Bayer-EFTC benefits and as to the close physical working proximity of Bayer HR representatives and supervisors after the Plaintiffs left Bayer and were employed with EFTC in the same facility at Wilmington, MA'

65.  Jack Calderon, 500 West Madison St., Chicago, IL (By Deposition if not live). He will testify as a hostile witness as to the sale negotiations, as EFTC Chief Executive Officer, with Bayer as to the Board Shop sale and the representations he and others made to Bayer and to the Plaintiffs.

66.  Julie B. Haley, 35 Chandler St., Haverhill, MA. She will testify as a former HR Bayer employee about the representations made as to benefits and the Bayer voluntary layoff severance program-policy.

67.  Bayer's Keeper of the Records.  Bayer may be subpoenaed as to its records of severance payments for other employees before Sept. 1, 1998, its severance calculations as to the Plaintiffs and their dates of employment service, its prior drafts of its Bayer Plan and Summary Plan Description, its records on its voluntary layoff program, its employee HR codes, and as to any notes or records pertaining to its sale of the Board Shop and contemplation of same.

68.  Robert Sarafian, 16 Greystone Road, Dover, MA.  A former Bayer in-house counsel, he will testify, as a hostile witness, as to Bayer's negotiations with EFTC for the asset sale, the discussions as to denying Plaintiffs their severance, and as to the corporate changes of Bayer and its predecessors/successors.

69.  Mary Leonard, 5 Bartlett St., Malden, MA. As a former Bayer HR representative, she will testify as a hostile witness as to Bayer's denial of severance, its voluntary layoff severance policy/program and as to representations made to Plaintiffs as to the Bayer Plan and SPD.

70.  Rodney Willis, 26 Country Club Circle, Marlboro, MA. As a former Bayer HR representative, he will testify as a hostile witness as to Bayer's denial of severance, its voluntary layoff severance policy/program and as to representations made to Plaintiffs as to the Bayer Plan and SPD.

71.  Kim Collins, 6 Azalea Road, Sharon, MA.  She will testify as a hostile witness as to her thoughts and advice to Bayer as its outside counsel on the severance issue.

72.  Records Keeper, Afga Corporation. Afga  may be subpoenaed as to its severance and sale for its machine shop and the machine shop employees, who formerly worked for Bayer in the same capacity.

73.  Bayer Corporation and Bayer Corporation Severance Pay Plan, Pittsburgh, PA. Plaintiffs will read into evidence selected portions of the Defendants' Rule 30(b)(6) Deposition Testimony and certain Answers to Interrogatories as to selected issues in this case.

74. Linda Kawa, New Hampshire

75.  Dawn Delgardo, Nashua, NH

76. Lenny Filliphone, Salem, NH

77. Paul Croteau, 28 Border Rd, Lawrence, MA

78. Margette Krekorin, 3 Old Farm Rd, Methuen, MA

79. Joseph Ducharme, 26 Arthur Ave., Dracut, MA

80.  Maria Gallager,

81. Lorraine Donahue

82. Isabelle McGuinnis

83. Connie Mercier, Florida

84. Shelia Gitschier, 50 Albion St, Lawrence, MA

85. Terri DiMabro, Lawrence, MA

86.  Joe Oliverio, 10 Ingialss Ct, Methuen, MA

87. Suzanne Oulettte, Haverhill, MA

88. Rose-Marie Larson, 53 Richardson St, Apt. 2, Woburn, MA

89. Carrie Emond, 1565 Broadway Rd., Dracut, MA

90. Peggie Chabot, Haverhill, MA

91. Phillis Beaudoin, Sandown, NH and Florida

92. Lorraine Levesque, Dracut, MA

93. Rose Sweeney, Dracut, MA

94. Betty Murphy, Tewksbury, MA

95. Ann Mclain, Baystate Road, Tewksbury or Wilmington, MA

96. Mary Hartman, Salem St, Bradfor, MA

97. Jerry Landgerand

98. Roselle Terreault, Windham, NH

99.  May Ann Carouso

Those numbered 74 to 99 will testify as to their receipt of severance under Bayer's voluntary layoff severance policy/program prior to Sept. 1, 1998. The Defendants are in possession of their complete addresses.

100.  Dan MacDonald

101. Bruce Seppi

102.  Gillis Bouher

103. Gerry Gendron

104. Geoff Dupont

105. Mike Geschwind

106. Bill Fratus

107.  Frank Cronin

108. Vinnie Champa

Those numbered 100 to 108, former Bayer employees, will testify as to their receipt of severance as Machine Shop employees after they were terminated by Agfa Corporation in 2000 or 2001 and their discussions of same with the Plaintiffs with whom they worked beside in the same location in Wilmington, MA.. fter under Bayer's voluntary layoff severance policy/program prior to Sept. 1, 1998. The Defendants are in possession of their complete addresses.

109.  Donald Baribeau, 2 Regis Drive, Pelham, NH 03076. He will testify as a hostile witness as to calculations of severance and issues related to the EFTC sale, the Plaintiffs' termination and the Board Shop sale.

**Defendants:**

25

1.  Michael Paige, 4 Lobster Lane, Gloucester, MA. The head of the Wilmington business unit, Mr. Paige will testify concerning the decision to sell the circuit printed board operation, the negotiations with EFTC, his understanding concerning severance eligibility, and communications with employees about the transaction. He will deny any conspiracy and will deny making any misrepresentations to employees.

2.  Rodney Willis, 26 Country Club Circle, Marlboro, MA. The top human resource official at Wilmington, Mr. Willis will testify concerning his involvement in the EFTC transaction, his determination that no severance was owed to Plaintiffs, and his attendance at meetings during the transaction was described to employees. He will also testify concerning responses to employee inquiries about severance eligibility. He may testify concerning Bayer's voluntary lay off practices. He will deny any conspiracy and will deny that any misrepresentations were made to employees

3.  Mary Leonard, 5 Bartlett Street, Malden MA. Mr. Leonard will testify to her understanding of severance pay eligibility, her one on one communications with employees, her attendance at group meetings with employees, EFTC benefit orientation arrangements and providing SPD's to employees. She will deny and misrepresentations, and will provide evidence that employees were aware of EFTC's benefits before transferring to EFTC. She may testify concerning Bayer's voluntary lay off policies and AGFA's payment of severance to machine shop employees.

4.  David Marr, 10 Deer Path Way, Monroe, NY. Mr. Marr will testify concerning Bayer's application of its severance pay policy, the distribution of SPD's to employees, Bayer's voluntary lay off practice, and AGFA's payment of severance to machine shop employees.

5.  Norman Fontaine, 21 Philbrick Road, Groveland, MA.  Mr. Fontaine will testify concerning the sale of the printed circuit board business, negotiations with EFTC, communications with employees about the sale, and AGFA's closure of its machine shop.  He will deny any misrepresentation or conspiracy.

6.  Jack Calderone (by deposition), 500 West Madison Street, Chicago, IL.  President of EFTC, he will testify about the transaction, his communication to employees about EFTC (benefits) and will deny any misrepresentation or conspiracy.

7.  Richard Ramsden, 235 Hampshire Road, Methuen, MA.  Mr. Ramsden will testify about the decision to sell the printed circuit board operation, the negotiations with EFTC, communications with employees about the sale and EFTC, and his understanding of severance pay eligibility.  He will deny any misrepresentation or conspiracy.

8.  Kim Collins, Esq., 6 Azalea Road, Sharon MA.  She will testify to her interpretation of the SPD as providing that employees were not eligible for severance if offered EFTC jobs at the same salary.  She will also testify concerning ERISA obligations concerning distribution of ERISA plans to employees.

9.  Robert Sarafian, Esq., 16 Greystone Road, Dover, MA.  He will testify concerning his interpretation of severance pay eligibility under the severance plan, and his involvement in the EFTC transaction.

10. Norman Beesley, 1909 Leona Road, Corapolis, PA.  A former Bayer benefits manager in Pittsburgh, he will testify to the terms of the severance plan, the ERISA review committee, and Bayer's application of such terms in other circumstances.

11.   Susan Murphy, Challenger Road, Pittsburgh, PA.  A Bayer benefits manger, she will testify to the terms of the severance plan, the ERISA review committee, and Bayer's application of the plan in other circumstances.

12. Dana Gormley, (address presently unknown).  An EFTC benefits representative, she will testify concerning the benefits orientations she conducted with employees prior to September 1, 1998.

13. Paul Yenerall, Eckert Seamans, 600 Grant Street, Pittsburgh, PA.  The attorney who helped draft the Severance Pay Plan and SPD, Mr. Yenerall will testify concerning the intended meaning of plan terms and Bayer's application of those terms in similar circumstances for over 20 years.

14. Donald Baribeau, 2 Regis Drive, Pelham, MA.  He will testify concerning his involvement in EFTC transaction, and his communications concerning EFTC benefits.

   11.  List of Exhibits

   Agreed Exhibits

1.  Bayer Corporation Severance Pay Plan

2.  Bayer Summary Plan Description

3.  Bayer/EFTC Letter of Intent - July 15, 1998

4.  Bayer/EFTC Asset Purchase Agreement - August 13, 1998

5.  EFTC Offer Letter - August 15, 1998

6.  Bayer Corporation Agreement dated Feb. 24, 1998 (Sarafian Dep. Ex. 83)

7.  Comparison of EFTC-Bayer benefits Chart (Leonard Dep. Ex. 48)

8.  Change forms dated 8/31/98 for Lanoue and Ornelas (Ramsden Dep. Ex. 24; Haley Dep. 76).

9.  Letter from Bayer to employee regarding severance. (Ramsden Dep. Ex. 28)

10. Bates Stamped number B00770 notes of Mr. Marr dated 7/22/98. (Ramsden Dep. Ex. 17)

11. Benefits Chart - Bayer (Ramsden Dep. Ex. 21)

12.  Benefits Chart Highlights- Bayer (Fiorilla Dep. Ex. 2)

13. Summary of Material Modifications of SPD - 1996. (Fiorilla Dep Ex. 6)

14.  Summary of Material Modifications of SPD - 1999. (Fiorilla Dep Ex. 7)

15.   Press Release on EFTC Acquisition dated Sept. 1, 1998 (Fiorilla Dep. Ex 8; Calderon Dep. Ex. 11).

16.  Memo from Buxbaum to Sarafian - June 18, 1998 (Ramsden Dep. Ex. 20)

17. Fax Coversheet of June 30, 1998 and memo of June 29, 1998 (Ramsden Dep. Ex. 23)

18.   Asset Purchase Agreement - Summary of Terms and Conditions. (Calderon Dep. Ex. 7).

19. Fax Sheet dated 6/19/98 and attached pages (Ramsden Dep. Ex. 19)

20. April 1998 Chart of Electronic PrePress Systems of Bayer's Wilmington Agfa Division. (Ramsden Dep. Ex. 3).

21. Brochure - B ayer Corporation at a Glance. (Ramsden Dep. Ex. 2).

22. Purchase Price of EFTC Sale - Draft - Ex. 2.1 of Agreeement. (Paige Dep. Ex. 38).

23.  Page Sev  4 of SPD marked as Dep. Exs. 51 (Willis) and 59 (Marr).

24.  Page 4 of SPD marked upon from Dep. Ex. 52 of Willis (Showing Plaintiff Jeanne Skene's bracketing of certain language).

25.   E-Mail from Erhard Rittinghaus dated 3/23/98 (Ramsden Dep. Ex. 9)

26.  Supply Agreement between EFTC and Bayer -Bates Stamped B00676 to B00685 (Sarafian Dep. Ex. 90).

27.  Comparison of EFTC-Bayer benefits Chart- with handwriting -Bates Stamped B01702 (Sarafian Dep. Ex. 91).

28.   Asset Acquisition By and Between Bayer and EFTC dated Sept. 1, 1998 (Sarafian Dep. Ex. 84)

29. Bill of Sale to Asset Acquisition (Sarafian Dep. Ex. 84 - Bates Stamped Page B01010)

30.  Purchase Price to Asset Acquisition (Sarafian Dep. Ex. 84 - Bates Stamped Page to Asset Acquisition (Sarafian Dep. Ex. 84 - Bates Stamped Page B01004) Ex. 2.1 of Asset Acquisition.

31.  Pages 6 and 7 as marked upon of Bayer Plan.

32. Page SEV 3 of the SPD.

    B. Exhibits with Reservation of Objection.

A.  Letter dated April 20, 1998 to Ramsden from Griffen (Ramsden Dep. Ex. 4)

B.  EFTC partial proposal to Bayer (Bates Stamped B01356) (Ramsden Dep. Ex. 5; Calderon Dep. Ex. 2)

C.  EFTC Proposal to Bayer dated April 1998 (Calderon Dep. Ex. 5).

D.   Bayer's calculation of Plaintiffs' severance benefits (Baribeau Dep. Ex. 56)

E.  Plaintiff's calculation of Plaintiffs severance benefits (Attachment 6 to Fiorilla Dep. Ex 10)

F.   Bayer Human Resources Department Employee Practices Manual. (Paige Dep. Ex. 32).

G.  Page 8-5, Section 8.3 of the Bayer Human Resources Department Employee Practices Manual. (Marr Dep. Ex. 63)

H. Bayer Handbook (Paige Dep. Ex. 31).

I.  Bayer-Agfa Division Information (Beesley Dep. Ex. 67)

J. Bayer pamplet to Plaintiffs - "Your benefits. A significant part of your total compensation." March 1998 (Ramsden Dep. Ex. 10)

K.  Question and Answer form about the EFTC-Bayer sale. (Haley Dep. Ex. 70)

L.  Page 8-1, Section 8.1 of the Bayer Human Resources Department Employee Practices Manual. (Haley Dep. Ex. 74)

M.  Handwritten notes of meeting (Ramsden Dep. Ex. 11)

N. Handwritten notes of "7/7 TC w/ M. Paige" (Ramsden Dep. Ex. 12).

O. Handwritten notes of "7/8 TC w/ M. Paige/R. Sarafian (Ramsden Dep. Ex. 13).

P. Handwritten notes dated 6/26/98 "TF D. Buxbaum - Project Bear" (Ramsden Dep. Ex. 14)

Q. Handwritten notes of "7/7 Conference Call" (Ramsden Ex. 15).

R. Handwritten notes of "7/10 Benefits Call" (Ramsden Ex. 16).

S. Handwritten notes with categories "Tax", "Benefits" and "Environmental" (Ramsden Ex. 18).

T. Handwritten notes of "8/10 TC w/ R. Ramsden" (Ramsden Dep. Ex. 29).

U. Handwritten notes Bates Stamped B00728( Fontaine Dep. Ex. 44)

V. Employee's Voluntary Expression of Interest in Voluntary Termination. (Haley Ex. 73).

W. Fax dated August 10, 1998 with 9 page attachment (Paige Dep. Ex. 42).

X. Fax dated 8/5/98 and attached documents - Bates Stamped B00808 to B00811 (Sarafian Dep. Ex. 87)

Y.  Draft of Asset Purchase Agreement Bates Stamped B00741-Boo742 (Paige Dep. Ex. 33).

Z. Handwritten Chart of 80 Industrial Way, Wilmington, MA (Landress Dep. Ex. 78).

AA. List of Bayer Severance Employee-Payees (Ramsden Dep. Ex. 26).

BB.  Letter dated April 5, 2002 from Stephen A. Roach to Heikke Kosimies (Marr Dep. Ex. 61)

CC. Letter dated June 3, 2002 from Frederick J. Salek to Stephen A. Roach (Willis Dep. Ex. 54).

DD. Memo dated August 6, 1998 from Robert Sarafian (Sarafian Dep. Ex. 89).

EE.  Letter dated March 25, 1998 to Robert Brown from Bayer (Ramsden Dep. Ex. 8).

FF.  Fax dated Mary 28, 1998 from Michael Paige (Page Dep. Ex. 36)

GG.  Flow Chart by Mary Leonard (Leonard Dep. Ex. 46)

HH.  Flow Chart by Julie Haley (Haley Dep. Ex. 72)

II.   Flow Chart by David Marr (Marr Dep. Ex. 60)

JJ.  Flow Chart by Don Baribeau (Baribeau Dep. Ex. 57).

The Parties reserve the right to amend and supplement the contents of this document.

/s/Stephen A. Roach                         /s/ John F. Welsh
_____          _____
Stephen A. Roach, BBO#542138          John F. Welsh, BBO # 522640
Roach & Wise LLP                               Bello Black & Welsh LLP
50 Congress Street, Suite 400               One Exeter Plaza
Boston, MA 02109                              699 Boylston Street, 10th Floor
(617)-723-2800                                  Boston, MA 02116
Plaintiffs' Counsel                              (617) 247-4100
                                                       Defendants' Counsel

Dated:  February 21, 2007

.