UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ )<br>JOSEPH ATTARDI, et al.          )<br>    Plaintiffs,                )<br>                                )<br>v.                              )<br>                                )<br>BAYER CORPORATION and           )<br>BAYER CORPORATION               )<br>SEVERANCE PAY PLAN,             )<br>    Defendants.                )<br>_____) | Civil Action No.: 04-10728 WGY |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**FILED AS PER COURT ORDER DATED JULY 26, 2007**

Defendants Bayer Corporation and Bayer Corporate Severance Pay Plan submit this Supplemental Memorandum pursuant to the Court's Order dated July 26, 2007. As shown below, in light of the Bayer ERISA Review Committee's decision on remand rejecting Plaintiffs' severance pay claims, this Court should deny Plaintiffs' Cross-Motion for Summary Judgment, and should grant Defendants' Motion for Summary Judgment and dismiss Plaintiffs' claims in their entirety.

**I. STATEMENT OF THE CASE**

The initial complaint in this matter, filed on April 9, 2004, alleged that Defendants violated various provisions of ERISA and state law by failing to pay severance benefits to Plaintiffs upon the sale of the printed circuit board manufacturing operation by Bayer Corporation's AGFA Division to EFTC on September 1, 1998. On January 17, 2007, Defendants filed a Motion for Summary Judgment; Plaintiffs filed a

Cross-Motion for Summary Judgment on February 2, 2007.

On February 23, 2007, the parties filed a Joint Motion to Remand for Administrative Review with the Court retaining Jurisdiction; on February 26, 2007, the Court entered an Order remanding the case to Bayer's ERISA Review Committee ("Review Committee") for consideration of Plaintiffs' severance claims.

On May 1, 2007, Plaintiffs agreed to an administrative record to be presented to the Review Committee.

On June 25, 2007, the Review Committee issued its decision rejecting Plaintiffs' severance pay claims. A copy of the Review Committee decision is attached as Exhibit CC.

On July 24, 2007, Plaintiffs filed a Notice to Reopen this case and a request to proceed with the litigation. The Court, noting that previously-submitted motions were ripe for adjudication, ordered that supplemental briefs on the "changed posture of the case" be submitted by August 31, 2007.

## II. ARGUMENT

**A.    The Plan Administrator's Decision is Dispositive of Plaintiffs' Claims**

    **1.    The Plan Administrator's decision must be accepted as a reasonable interpretation and application of the Severance Pay Plan.**

Upon careful consideration of the facts and argument presented by Plaintiffs in support of their severance pay claims, the Review Committee reasonably found that the sale of the printed circuit board operation to EFTC was a "divestiture" ( i.e., sale or other disposition of assets) excluded from severance pay eligibility under the terms both of the Summary Plan Description and the Severance Pay Plan. As the Review Committee

observed, severance benefits were intended to protect employees from loss of income, and because EFTC made each of the Plaintiffs offers of employment at a salary level equal to or greater than their former Bayer salaries, the Plaintiffs did not suffer a loss of salary income. The EFTC transaction fell within specific and express plan exclusions from severance pay eligibility. Thus Plaintiffs' severance pay claims properly were denied.

The Review Committee rejected the Plaintiffs' proffered narrow definition of the word "divestiture" in favor of a more commonly-used definition that included a sale or other similar disposition of assets. The Review Committee found no ambiguity between the Summary Plan Description and the Severance Pay Plan.

The Review Committee's decision is a straight-forward, common sense application of the eligibility criteria of the Severance Pay Plan, based in part of the consistent application of the Plan's terms. As the Review Committee noted in its decision, in light of the Plan's intent to protect employees from sudden loss of income, Plaintiffs principal argument -- that severance should be paid in the context of the sale of a small business unit even if the employees were offered comparable salaries at the same location -- makes no sense. As the First Circuit observed in Adage v. Allen, 967 F.2d 695, 702 (1st Cir. 1992)(internal citations omitted):

> [T]he usual purpose of [a severance pay plan] is, first and foremost, to provide employees with a buffer against the privations which so often attend unforeseen layoffs. While unemployment resulting from a reduction in force is not always a necessary condition for receipt of severance benefits, it is probable, in the absence of language indicating otherwise, that a severance pay plan is geared to sheltering loyal workers from a precipitous loss of income…. It is surpassingly difficult to fathom why an employer would provide a trouvaille for employees who, when separated from

> its service, are simultaneously transferred en masse, by prearrangement, to another employer's payroll, without any temporal hiatus or significant diminution of earnings or benefits. We think it beggars credulity to impute such altruistic beneficence to an employer without some clear indication to that effect in the plan documents.

**2. This Court must uphold the Review Committee's determination under the established "arbitrary and capricious" standard of review; The recent Denmark decision is inapposite.**

When, as here, an ERISA plan grants the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the Court's review is limited to whether the administrator's determination is "arbitrary or capricious. Campbell v. Bank Boston, 327 F.3d 1, 5-6 (1st Cir. 2003). See also Kansky v. Coca-Cola Bottling Co, 2007 U. S. App. LEXIS 15514 ( June 29, 2007)(post-Denmark opinion); Madera v. Marsh USA, Inc., 426 F.3d 56, 64 (1st Cir. 2005)(administrator's decision must be upheld "if there is any reasonable basis for it."); Bachelder v. Comm. Satellite Corp., 837 F.2d 519, 521-522 (1st Cir. 1980)(unless the trustees' decision is arbitrary or capricious, or without rational basis, it must not be disregarded.); Terry v. Bayer Corp., 145 F.3d 28, 37 (1st Cir. 1998)(First Circuit found same Bayer's SPD subject to "arbitrary and capricious" standard).[1]

There is no merit to the Plaintiffs' anticipated claim that the recommendation for en banc review in the recent First Circuit decision Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16 (1st Cir. 2007) should dictate the use of a new

---

[1] The delegation of authority to the Plan Administrator is set forth in the Plan and the SPD. See paragraphs 16-18 and 26-28 of Defendants' Local Rule 56.1 Statement of Material Facts Not in Dispute.

4

standard of review here. [2]

First, as the Denmark Court noted, absent en banc revision, the "arbitrary and capricious" standard of review remains controlling First Circuit law. See 481 F.3d at 31. See also Kansky v. Coca-Cola Bottling Co., 2007 U.S. App. LEXIS 15514 (1st Cir. June 29, 2007). Second, unlike Denmark, this case does not present a "structural conflict of interest." On January 1, 1999, after the EFTC transaction, Bayer divested (" spun out") its AGFA Division into Agfa Corporation, a separate, independent corporation. (See D. State. at para. 39).[3] As part of this transaction, through the indemnification obligation set forth in applicable transaction documents, Agfa Corporation assumed full financial responsibility for all claims arising from its predecessor business unit, Bayer Corporation AGFA Division.[4]

Accordingly, there is no "structural conflict of interest" presented here. The Bayer ERISA Review Committee reviewed the claim, but Bayer Corporation had no financial obligation to make payments if the employees' position was sustained. To the contrary, Agfa Corporation bears sole responsibility for any payments required. Any alleged structural "conflict of interest" of the Bayer Severance Pay Plan was cured by the spinout, and attendant indemnification obligations, of Agfa Corporation. Accordingly, any discussion of "structural conflict of interest" in Denmark is factually inapposite here.

---

[2] In Denmark, two judges expressed their opinion that the First Circuit should consider en banc whether a standard of review less deferential than "arbitrary or capricious" should be used when a "structural conflict of interest" exists (i.e., the same entity both review and pays claims.) However, both judges confirmed that the law of the Circuit is that the "arbitrary and capricious" standard applies even in the case of a structural conflict of interest unless and until en banc reversal of established law.

[3] Hereinafter, "D. State" and "P. State." shall refer to the Local Rule 56.1 Statements of Defendants and Plaintiffs, respectively. "D. Exh. And "P. Exh." references are to Defendants' and Plaintiffs' exhibits submitted in support of the cross motions for summary judgment.

[4] See P. State. at 17; D Exhs. D at 26, K at 36, and W at 163-172.

**B.     The Decision on Remand Renders Various Claims Moot**.

The remand to, and resulting decision by, the Review Committee has rendered moot several claims raised by Defendants and Plaintiffs in the previously-filed cross-motions for summary judgment.

Thus, Defendants' contention that Plaintiffs' claims should be dismissed based on Plaintiffs' failure to exhaust administrative remedies has become moot .

Similarly, several of Plaintiffs' claims now are moot.  More specifically, in support of their claims for application of a more stringent standard of review or for breach of fiduciary duties, Plaintiffs relied upon the following contentions: (i) that the Administrator failed to offer an interpretation of the plan;  (ii) that  Bayer did not issue written denials of  claims in 1998; (iii) that Plaintiffs were not afforded copies of the severance pay plan and sufficient information concerning the Severance Pay Plan;  (iv) that Plaintiffs were unaware of the existence of the formal Severance Pay Plan; (v) that some Plaintiffs were unable to understand their rights due to limited education; (vi) that Bayer failed to reveal Section 306(8) of the Severance Pay Plan to Plaintiffs in 1998, and; (vi) that Plaintiffs were not provided sufficient information apprising them of appeal procedures.  Defendants submit that these contentions are now moot.

Plaintiffs have been fully apprised of their appeal rights, and have been able to submit their appeal with the assistance of counsel and with the benefit of extensive discovery.[5] Plaintiffs were afforded the chance to submit to the Review Committee any information they believed relevant to their severance pay claims. The Review Committee has furnished a written opinion demonstrating that it carefully considered Plaintiffs claims under the terms of the Severance Pay Plan. The Review Committee's decision

---

[5] Plaintiff deposed 11 former Bayer officials as well as  the former President of EFTC.

should be affirmed as a reasonable interpretation of the Severance Pay Plan and the Summary Plan Description.

Lastly, Plaintiffs have withdrawn the allegations in their Complaint that Agfa Corporation's severance payment to its machine shop employees required Bayer to pay severance to Bayer printed circuit board employees pursuant to ERISA. (See Plaintiffs' Opposition Memorandum to Defendants' Summary Judgment Motion at 19 and n. 25.)

### C. A Recent First Circuit Decision Confirms That Dismissal of State Law Claims is Appropriate.

On July 12, 2007, First Circuit decided Zipperer v. Raytheon Co., Inc., No. 06-2493, 2007 U.S. App. Lexis 16616, in which the Court dismissed state law claims for negligence, equitable estoppel and negligent misrepresentation based on ERISA pre-emption. Defendants submit that Zipperer controls Plaintiffs' state law claims, requiring their dismissal on ERISA pre-emption grounds.

### D. Plaintiffs' Claimed Entitlement to Oppose Summary Judgment by Proxy Declaration Lacks Merit.

On February 22, 2007, the day prior to the parties' Remand Agreement, Plaintiffs filed a Sur–Reply together with a "Second Declaration of Steven Roach," a "Declaration of Bertrand Guilmette," and a "Declaration of Jean Skene." As shown in the Second Affidavit of John F. Welsh, Esq., attached hereto as Exhibit DD, Plaintiffs have made several false representations in the Sur-Reply as to the parties' alleged agreements during discovery.

As set forth in the Second Welsh Affidavit, the parties never agreed to allow the Plaintiffs' settlement committee to testify instead of other Plaintiffs, or to submit factual statements in opposition of summary judgment on behalf of other Plaintiffs. In fact,

7

Plaintiffs attempted to use the "committee" during discovery to evade a full and complete disclosure of the unique factual circumstances surrounding each of Plaintiffs' individual severance pay claims. Now, they seek to use the same artifice to avoid the Rule 56 mandate that oppositions be based on affidavits (or sworn depositions or answers to interrogatories) based on personal knowledge, set forth such facts as would be admissible in evidence, and show affirmatively that the affiant is competent to testify to the matters stated therein.

During discovery Plaintiffs' counsel was asked numerous times to supplement Interrogatory Answers by giving the precise "who, what and when" of every occasion Bayer allegedly made misrepresentations to Plaintiffs. (See Second Welsh Affidavit Exh. DD at Attachment 1 for some of the email and letter correspondence on this issue). Defendants pushed for specific details as to when each Plaintiff became aware that EFTC benefits were less than those offered by Bayer. (Such information was directly relevant to the "detrimental reliance" and statute of limitations issues.) Plaintiffs avoided such supplementation initially, telling Defendants that the three "employee representatives" were aware of all facts unique to each Plaintiff, and would provide such facts at their depositions to allow for more focused discovery.[6] At their depositions, the representatives had no knowledge of many facts pertaining to other employees, or refused to answer questions concerning communications with other employees (or the existence of any joint defense agreement) based on the assertions of privilege or work product protection. (See D. Exhs. S at 62-79, U at 66-70, T at 25-26, 60-78,101-102, 112, 116-120).

---

[6] The express understanding between counsel was that, once such details were shared, Defendants could make an informed decision whether to depose any specific Plaintiff.

8

When the Supplemental Answers to Interrogatories finally were provided by Plaintiffs (after discovery ended), the requested and promised supplementation with specific factual information was not provided. Rather, Plaintiffs' three representatives merely provided a conclusory, argumentative rehash of their legal claims coupled with incorporation references to non-responsive depositions and prior problematic interrogatory answers.

Faced with such discovery tactics, Defendants had to choose whether to continue seeking supplementation of evasive and incomplete interrogatory answers, to seek to depose the remaining 57 Plaintiffs without any indication of which of the Plaintiffs had responsive information, or to file for summary judgment to smoke out each Plaintiff's individual claims. Now, when forced by the mandate of Rule 56 to state the basis of each Plaintiffs' claims with competent, sworn affidavit or deposition testimony, Plaintiffs again seek to evade compliance.[7]

Plaintiffs now claim for the first time that each of the Plaintiffs authorized the three co-workers to represent them to the extent they were authorized to make sworn factual representations on behalf of each Plaintiff.[8]  Significantly, Plaintiffs have produced no writing whatsoever of such authorization, or even of a joint defense agreement. The signed authorizations now cited by Plaintiffs[9] as the basis for bypassing Rule 56 requirements (which were withheld from Defendants during discovery based on

---

[7] As shown in D. State. at para.54, 59,-62, the few plaintiffs who were deposed directly contradicted the "representatives" statements on several material facts.

[8] Defendant is puzzled by Plaintiffs' objection that Defendants did not challenge Plaintiffs' failure to conform with Rule 56 requirements until Defendants' Reply Memorandum. Prior to obtaining Plaintiffs' Opposition to Summary Judgment, Defendant had no basis to anticipate that Plaintiffs would simply ignore the express requirements of Rule 56.

[9] See Plaintiffs' Sur-Reply Exhibit 6

assertions of privilege[10]) are only authorizations to accept settlement offers. Even if Plaintiffs had an oral understanding between themselves along such lines, it would be of no legal significance since Plaintiffs cannot agree among themselves to waive the requirements of Rule 56.[11] Plaintiffs had no agreement with Defendants excusing compliance with Rule 56.

## Conclusion

For the foregoing reasons, Defendants request that the Court grant its Motion for Summary Judgment and dismiss Plaintiffs' claims in their entirety.

>                             Respectfully submitted,
>
>                             BAYER CORPORATION and
>                             BAYER CORPORATION
>                             SEVERANCE PAY PLAN,
>
>                             By Their Counsel,
>
>                             /s/ John F. Welsh
>                             John F. Welsh, BBO # 522640
>                             Bello Black & Welsh LLP
>                             One Exeter Plaza
>                             699 Boylston Street, 10th Floor
>                             Boston, MA 02116
>                             (617) 247-4100

Dated: August 31, 2007

---

[10] See D. Exh. U at 65-69.

[11] Plaintiffs' scheme in this regard is readily apparent; they cherry-pick facts and homogenate them into a single story, claiming without investigation or factual support, that every favorable fact applies to all Plaintiffs, and denying adverse facts that do not pertain to all Plaintiffs. Differences among Plaintiffs are simply ignored. See D. State. at paragraphs 54, 59-62. See also Defendants' pending Motion to Strike (Document No.54) at paragraphs 3, 6 and 12.