UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                          *
Plaintiffs,                                      *
v.                                               *
BAYER CORPORATION and                            *
BAYER CORPORATION SEVERANCE PAY PLAN, *
Defendants.                                      *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DECLARATION OF CLIFTON F. LORD, III**

I, Clifton F. Lord, III, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on January 2, 1973, I was employed continuously by Defendant Bayer Corporation ("Bayer") and its predecessor companies (Compugraphic and others) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all or most of my time with Bayer, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area, mainly in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment. I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration. Because I am a deaf-mute, and have been so since my birth, I am making this Declaration with the assistance of my uncle, Wesley Lord, 61 Rattlesnake Road, Brownfield, Maine 04010 and my first cousin, Sharon Roberts, who resides with me at my address at 13 Pine Ridge Road, North Reading, MA 01864. No guardian or conservator or other personal representative has ever been

1

appointed by any court for me. My uncle, Wesley Lord, assisted me in understanding the process and proceedings of this lawsuit.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. I did so by and through the assistance of my uncle Wesley Lord. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives. I remained in contact with Skene, through my uncle, to provide her information needed to respond to the Defendants' discovery requests. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization,

        dated April 18, 2004, has been filed with the Court as Exhibit 6, Part B, of the Second Declaration of Attorney Roach. I remained available to Skene, through my uncle Wesley Lord, to provide her with any information needed to respond to the Defendants' discovery requests.

3.      With the assistance of my uncle Wesley Lord and cousin, Sharon Roberts, I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those Answers for myself. I am making a claim under the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4. I accepted my position at the Board Shop initially in part, due to the availability of severance benefits. I did not look for employment elsewhere, in part, through August 1998 because Bayer provided for severance benefits.

5. In the summer of 1998, in or about August, I learned through one of my fellow Board Shop co-workers and Plaintiff in this case, Jeanne Skene and my uncle, Wesley Lord, there had been some group employee-management meetings and that Bayer managers in the Electronic Pre-Press Systems Operations told the Board Shop that area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated. I did not attend the meetings because I am a deaf-mute, and Bayer did not provide an interpreter for me or others who may have been hearing impaired or deaf. During the meetings, the Bayer managers, including Richard Ramsden, stated that we would not be paid our severance and that it was not an option, that going to EFTC was a win-win for Bayer and the Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in Wilmington, MA. Therefore, in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, no one in Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

6. When Bayer denied our severance benefits in 1998 as described above, I accepted the word of Bayer that I was not entitled to severance. In 1998, I did not know that the Bayer

        Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. No person in Bayer's Human Resources area or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I do not have a high school education and I have never held a management or professional employment position. I do not read and write English very well.

7. After I began working at EFTC, I learned that many of its benefits were worse that those under Bayer or non-existent.

8. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, myself, and the other Plaintiffs, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. Skene and my uncle, Wesley Lord, explained to me that we would then make a claim for severance after the Machine Shop sale in 2000 or 2001. Skene then sought out an attorney, Attorney Roach, who represents us. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

9. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance.

Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 6th day of August 2007.

                                                  /s/ Clifton F. Lord, III
                                                  Clifton F. Lord, III