UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                         \*
Plaintiffs,                                     \*
v.                                              \*
BAYER CORPORATION and                           \*
BAYER CORPORATION SEVERANCE PAY PLAN, \*
Defendants.                                     \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DECLARATION OF CORRIE M. COTTRELL**

I, Corrie M. Cottrell, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on March 20, 1978, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all of my time with Bayer, other than a few months with the cable area, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Haverhill and later Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. While with Bayer, I was a group leader in the Board Shop. As such, I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for

1

      Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated April 5, 2004, has been filed with the Court as Exhibit 6, Part A, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3.     I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those

    Answers for myself. I further have reviewed the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. I believe I received the SPD sometime in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4.    I accepted my position at the Board Shop initially, in part, due to the availability of severance and other benefits. I did not look for employment elsewhere, in part, until I joined in EFTC in 1998 because Bayer had issued to me the SPD which provided for severance benefits. Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be laid off from their jobs. Once I volunteered, I believed that I would be paid severance. When the severance layoff was available from time to time, Bayer management would spread the

word of it by word of mouth, where I would be told by my supervisor that I could volunteer to be laid off and receive my severance.  This aspect of my employment with Bayer also caused me to remain with Bayer.  I knew of other employees who had volunteered to be laid off under this program and who received severance, including Jerry Landgerand and Roselle Terreault (both of whom supervised me), as well as Dawn Delgardo, Lenny Filliphone, Paul Crouteau, Joseph Ducharme, Maria Gallager, Lorraine Donahue, Carrie Emond, and Phyllis Beaudoin (another of my supervisors for a period of time).   All of these people had worked in the Board Shop.

5. At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated, and that EFTC had offered us the same job with the same pay. During the meetings, some the Board Shop employee-Plaintiffs who were present, whose names I don't recall, asked the Bayer managers, including Mr. Ramsden, Normand Fontaine, Michael Paige, Don Baribeau, Earle Christianson, Doug Ashworth, and Mary Leonard, if Bayer was going to pay our severance and the Bayer managers, especially Mr. Ramsden, stated to us that we would not be paid our severance and that it was not an option whether we choose to take the job with EFTC or not. In two of the meetings, Bayer manager Richard Ramsden, advised us that going to EFTC was a win-win for Bayer and the Board Shop-Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in

Wilmington, MA. Mr. Ramsden stated that it was good for Bayer because Bayer was getting out of the Board Shop business. A representative of EFTC was with Bayer supervisors such as Mr. Ramsden, Mr. Fontaine, Mr. Baribeau, Mr. Christianson, Ms. Leonard, Mr. Ashworth, and Mr. Paige at one or two meetings. As a result of these meetings, based on the statements of the Bayer managers, I believed that I had no choice other than unemployment or employment with EFTC, but in either case I would not be paid my severance under Bayer's benefits plan. I also believed that the benefits at EFTC would be the same.

6. In reliance on the statements from Bayer, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, I met with Staci Landress, who worked for Bayer's Human Resources area to fill out some forms. No one in Bayer or EFTC management or human resources, however, gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

7. When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer manager, Richard Ramsden, at the meetings that I was not entitled to severance. In 1998, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard, nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school

education. I have never held management or professional employment position. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same area where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues, but Ms. Leonard never explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

8. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent. Because Bayer also told me that I was not allowed to leave my 401K benefit plan with Bayer and that I had to move it to EFTC, I moved my 401K plan to EFTC. I have later learned that I was not required to do so.

9. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, the other Plaintiffs, and I later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

10.     On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 7th day of August 2007.

       /s/ Corrie M.. Cottrell
       Corrie M. Cottrell