UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

*********************************************
JOSEPH ATTARDI, ET ALS,              *
Plaintiffs,                          *
v.                                   *
BAYER CORPORATION and                *
BAYER CORPORATION SEVERANCE PAY PLAN, *
Defendants.                          *
*********************************************

# DECLARATION OF FARAHILDA BET-EIVAZI

I, Farahilda Bet-Eivazi, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on May 4, 1987, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all or most of my time with Bayer, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment. I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene

1

("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene and Guilmette, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 31, 2004, has been filed with the Court as Exhibit 6, Part A, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those Answers for myself. I further have reviewed the Bayer Corporation Severance Pay Plan

("Bayer Plan") dated 1995 and the part of the Bayer Summary Plan Description ("SPD") being disputed in this case. I do not recall specifically receiving the SPD in 1995 but I did receive many handbooks and information from Bayer on my benefits during my employment. Because Spanish is my main language, I relied on my co-workers, including Jeanne Skene and Bert Guilmette, as well as my attorney, to explain my rights and benefits to me and to read the documents to me. I do not read or understand English well but I can read English. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4. I accepted my position at the Board Shop initially in part, due to the availability of severance benefits. I did not look for employment elsewhere, in part, because Bayer provided for severance benefits. Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be off from their jobs. Once I volunteered, I believed that I would be paid severance. When the severance layoff was available from time to time, Bayer management would spread

the word of it by word of mouth, where I would be told by my supervisor that I could volunteer to be laid off and receive my severance. I know of others who received severance in this way but I don't recall their names. This aspect of my employment with Bayer also caused me to remain with Bayer.

5.  At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, Normand Fontaine, Michael Paige, and Mary Leonard told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated, and we being offered an job with EFTC. The Bayer managers stated to us that we would not be paid our severance and that it was not an option.  In at least one of the meetings, the Bayer managers, Mr. Ramsden, advised us that going to EFTC was a win-win for Bayer and the Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in Wilmington, MA.  In reliance on the statements from Bayer, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998.

6. When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer managers at the meetings that I was not entitled to severance.  In 1998, I did not understand the wording of the SPD's severance language and, as stated above, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard,

Rodney Willis, nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school education from the Dominican Republic and I have never held a professional employment position. Spanish if my first language.

7. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent.

8. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, myself, and the other Plaintiffs, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

9. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my

severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 31st day of July 2007.

                                                     /s/Farahilda Bet-Eivazi
                                                   Farahilda Bet-Eivazi