UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

**************************************
JOSEPH ATTARDI, ET ALS,              *
Plaintiffs,                          *
v.                                   *
BAYER CORPORATION and                *
BAYER CORPORATION SEVERANCE PAY PLAN, *
Defendants.                          *
**************************************

### DECLARATION OF JUDITH LAROSA

I, Judith LaRosa, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on August 22, 1977, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all of my time with Bayer, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including

1

me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 19, 2004, has been filed with the Court as Exhibit 6, Part B, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those Answers for myself. I did not ever receive before this suit the Bayer Corporation

       Severance Pay Plan ("Bayer Plan") issued in 1995. I have reviewed parts of severance language of the Bayer Summary Plan Description ("SPD") also issued in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4.    I accepted my position at the Board Shop initially in part, due to the availability of severance benefits. I did not look for employment through August 1998 because Bayer provided for severance benefits.

5.    At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated and that EFTC had offered us each a job. I did not attend all the meetings because I was out sick much of that time on medical

leave. In at least meeting I did attend, Bayer manager Richard Ramsden, advised us that going to EFTC was a win-win for Bayer and the Board Shop-Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in Wilmington, MA. Jack Calderon of EFTC was with Bayer supervisors such as Mr. Ramsden, Normand Fontaine, Mary Leonard, and Michael Paige at one of the meetings. Mr. Calderon also advised me and others at the meeting that EFTC would be offering the same job to me and the other Board Shop employees with the same benefits and pay. At some point before I was terminated by Bayer in August 1998, I had learned that Bayer had told us that we would not be paid severance.

6. In reliance on the statements from Bayer and EFTC, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, I met with Staci Landress, who worked for Bayer's Human Resources area. Ms Landress gave me forms to sign up for benefits, tax withholdings, and other documents in preparation for employment with EFTC before September 1998.I had just returned from medical leave from a broken foot. I did not read or know what I signing other than they were necessary papers for my EFTC job. No one in Bayer or EFTC management or human resources, including Ms. Landress, gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits. I had thought from Mr. Ramsdem's statements, described above, that they would be the same.

7. After I began working at EFTC, my pay was the same but I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for

every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent. Bayer told me that I could not leave my 401K plan with Bayer and that I had to move it to EFTC. When I did so, the EFTC 401K plan was not as profitable.

8. In about March 1998 Bayer sent to me a pamphlet with a summery of a "significant part" of my "total compensation" but with <u>no</u> mention of severance. It is entitled "Your Benefits - A significant part of your total compensation." The pamphlet described for me the various financial aspects of my Bayer benefits which I had accrued to that point except severance.

9. When Bayer terminated my employment its in 1998 as described above, I accepted the word of our Bayer manager, Richard Ramsden, at the meetings that the benefits were the same. I accepted Bayer's decision that I was not entitled to severance. In 1998, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school education. I have never held a management or professional employment position.

10. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, myself, and the other Plaintiffs, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop

sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

11. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed (through my husband as I am now blind) a copy of that letter. I have also received and reviewed (through my husband) Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 3rd day of August 2007.

    /s/ Judith LaRosa
    Judith LaRosa