UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                        \*
Plaintiffs,                                    \*
v.                                             \*
BAYER CORPORATION and                          \*
BAYER CORPORATION SEVERANCE PAY PLAN, \*
Defendants.                                    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DECLARATION OF MARY JO CORCORAN**

I, Mary Jo Corcoran, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on September 18, 1972, I was employed continuously by Defendant Bayer Corporation ("Bayer") or one of its predecessor companies (Compugraphic). I had earlier worked from one year for Compugraphic Corporation for 10 months in 1969 until I went out on maternity. Bayer involuntarily terminated my employment effective sometime in September 1998. During my employment with Bayer or one of its predecessor companies, from 1972 until my termination in 1998, I worked continuously in the Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Wilmington, MA. Upon Bayer's recommendation, I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration.

2.  I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 16, 2004, has been filed with the Court as Exhibit 6, Part A, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those Answers for myself. I further have reviewed the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. I received the SPD in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4. I accepted my position at Bayer's predecessor companies initially in part, due to the availability of severance benefits. I did not look for employment elsewhere, in part, from 1995 through 1998 because Bayer had issued to me the SPD which provided for severance benefits. Also, Bayer and the predecessor companies to Bayer which employed me in the Board Shop and other areas had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being

selected by management to be off from their jobs. Once I volunteered, Bayer told me I would be paid severance. When the severance layoff was available from time to time, Bayer management would spread the word of it by word of mouth, where I would be told by my supervisor that I could volunteer to be laid off and receive my severance. This aspect of my employment with Bayer also caused me to remain with Bayer. I knew of other employees who had volunteered to be laid off under this program and who received severance.

5. At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, Normand Fontaine, Michael Paige, Rodney Willis, and Mary Leonard told me and others of the 63 Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated. I recall Julie Haley of Human Resources was present as well for one of the meetings. During one of the meetings, at least one of the Board Shop employee-Plaintiffs, including Robert Brown and Joanne Sanzo, asked the Bayer managers, including at lease Richard Ramsden, Normand Fontaine, Rodney Willis, and Mary Leonard, if Bayer was going to pay our severance and one or more of the above Bayer managers, especially Mr. Ramsden, stated to us that we would not be paid our severance and that it was not an option whether we went to EFTC or not. Later in another larger meeting both Mr. Ramsden and Mr. Paige told us that we would not receive severance whether or not we choose to take the job with EFTC, and that we had been chosen to go along as part of the sales contract between Bayer and EFTC. Other

people at Bayer not within the Board Shop in 1998 who were in the Electronic Pre-Press Systems Operations area in Wilmington, MA were transferred to other areas within Bayer. In at least one of the meetings, the Bayer managers, particularly Mr. Ramsden advised us that going to EFTC was a win-win for Bayer and the Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in Wilmington, MA.  Jack Calderon of EFTC was with Bayer supervisors including Richard Ramsden, Norm Fontaine, Mary Leonard, Rodney Willis, Earle Christensen, Donald Baribeau, and Michael Paige at one or two meetings. Mr. Calderon also advised me and others at the meeting(s) that EFTC would be offering the same job to me and the other Board Shop employees, that EFTC benefits would be "comparable" to Bayer's benefits, that EFTC was secure and was investing in new equipment, and was bringing in new investors and vendors, such Kodak and MKS.  At one point in 1998, in the interim of the group meetings I asked Mr. Ramsden, when he was in his office, if I could take the voluntary layoff and take severance but Mr. Ramsden said that I would not receive severance and that I was "part of package" in the same to EFTC.  Also, I asked Julie Haley, when I saw her in the hallway, the same question and received the same answer as Mr. Ramsden at about the same time.  Mr. Willis and Ms. Leonard both gave the same answer as Mr. Ramsden to a group of Board Shop-Plaintiffs, including me, as they walked past us at our work stations within the time period of the meetings.    In reliance on those statements from Bayer and EFTC, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998 and received no severance payment from Bayer.  Before I joined EFTC as its employee in

      1998, I met with Staci Landress, who worked for Bayer's Human Resources area. Ms Landress gave me forms to sign up for benefits, tax withholdings, and other documents in preparation for employment with EFTC before September 1998. No one in Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits. Ms. Landress never explained to me or advised me about the difference in EFTC and Bayer benefits. I do not recall meeting with Julie Haley or any Bayer human resource person in 1998, other than in the large group meetings described above in this paragraph, regarding an explanation of Bayer's benefits.

6.    When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer managers, Richard Ramsden and others discussed above, that I was not entitled to severance. In 1998, I read the wording of the SPD's severance language but I did not understand it other than severance was a benefit. I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard, Rodney Willis, nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school education. I have never held a professional employment position. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same area, 80 Industrial Way in Wilmington, MA, where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues, but Ms.

Leonard never explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

7. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, sick, disability benefits, were worse that those under Bayer or non-existent.

8. In March 1998 Bayer sent to me a pamphlet with a summery of a "significant part" of my "total compensation" but with <u>no</u> mention of severance. It is entitled "Your Benefits - A significant part of your total compensation." The pamphlet described for me the various financial aspects of my Bayer benefits which I had accrued to that point except severance.

9. I accepted the offer of Jeanne Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, myself, and the other Plaintiffs, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

10. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I

7

have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 30th day of July 2007.

    /s/ Mary Jo Corcoran
Mary Jo Corcoran