UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

**********************************************
JOSEPH ATTARDI, ET ALS, *
Plaintiffs, *
v. *
BAYER CORPORATION and *
BAYER CORPORATION SEVERANCE PAY PLAN, *
Defendants. *
**********************************************

## DECLARATION OF OUDOMPHONE PHOMMAHAXAY

I, Oudomphone Phommahaxay, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on January 30, 1984, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until September 1998. Starting In 1984 I worked about one year in the Cable Area. After that, I worked continuously in the Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Wilmington, MA until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including

1

me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 19, 2004, has been filed with the Court as Exhibit 6, Part C, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and, to the extent I understand them, I agree with and adopt those Answers for myself. I further have reviewed the Bayer

Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. I do not recall specifically receiving the SPD in 1995 but I did receive many handbooks and information from Bayer on my benefits during my employment. Because Chinese is my main language, I relied on my co-workers, including Pauline Guilmette and Jeanne Skene, as well as my attorney, to explain my rights and benefits to me and to read the documents to me. I do not read or understand English well. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed or explained it to me. I have also received from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4. I accepted my position at Bayer (starting with Compugraphic) the Board Shop initially in part, due to the availability of severance benefits. I did not look for employment elsewhere, in part, because Bayer provided for severance benefits.

5. At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, Norm Fontaine, Michael Paige, and Mary Leonard, told me and others of the 63 Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, EFTC.

        Later, Bayer managers stated the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated. During the meetings, at least one of the Board Shop employee-Plaintiffs, Joanne Sanzo, asked the Bayer managers, including Richard Ramsden, Norm Fontaine, Michael Paige, and Mary Leonard, if Bayer was going to pay our severance. In response, the Bayer managers stated to us that we would not be paid our severance and that it was not an option whether or not we accepted the job with EFTC which Bayer told us EFTC was offering to us. In at least one of the meetings, the Bayer managers told us that the EFTC benefits and the Bayer benefits would be the same and we would still be working at the same facility in Wilmington, MA. A manager from EFTC was with Bayer supervisors at one of the last meetings and also advised me and others at the meeting that EFTC would be offering the same job with the same benefits to me and the other Board Shop employees. In reliance on those statements from Bayer and EFTC, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, I met with Staci Landress, who worked for Bayer's Human Resources area. Ms Landress gave me forms to sign up for benefits, tax withholdings, and other documents in preparation for employment with EFTC before September 1998. She only told me the amount of pay I would receive but nothing about my benefits beyond my pay. I don't recall whether anyone from Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

6.     In 1998, because I could not read English well, I did not understand the wording of the severance language the benefits documents, and no one from Bayer's Human Resources offered to help me understand it. Neither Mary Leonard nor any other Human Resources

or other manager at Bayer ever explained the SPD to me, did not offer to explain it to me, and did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school education from Laos. I have never held a professional employment position. As stated above, I relied on my Board Shop-Plaintiff co-workers Pauline Guilmette and Jeanne Skene to explain them to me.

7. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent.

8. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, myself, and the other Plaintiffs, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

9. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent.

10. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan.  I have received a copy of that letter.  I have also received Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct.  Executed this 27th day of  July 2007.

                                        /s/ Oudomphone Phommahaxay
                                        Oudomphone Phommahaxay