UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                          \*
Plaintiffs,                                      \*
v.                                               \*
BAYER CORPORATION and                            \*
BAYER CORPORATION SEVERANCE PAY PLAN, \*
Defendants.                                      \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DECLARATION OF RICHARD L. COTE**

I, Richard L. Cote, hereby declare as follows:

1.      I am a Plaintiff in this case.  Beginning on January 21, 1980, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For most of my time with Bayer, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Haverhill and then Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and  I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. I had also worked in such areas as returned goods, systems assembly, and engineering.  As such,  I have personal knowledge of the matters set forth in this Declaration.

2.      I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for

Summary Judgment.  Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually.   Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants.  At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 18, 2004, has been filed with the Court as Exhibit 6, Part B, of the Second Declaration of Attorney Roach.  I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3.    I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those

Answers for myself.  I am making a claim under the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the  Bayer Summary Plan Description ("SPD") also issued in 1995.  It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998.   No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD.   I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and  Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4.    I accepted my position at Compugrahic initially, starting in the Board Shop, in part, due to the availability of severance benefits.  I did not look for employment elsewhere, in part, from through 1998 until I joined EFTC because Bayer provided for severance benefits as part of its benefits package.  Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be laid off from their jobs. Once I volunteered, I believed that I would be paid severance.  When the severance layoff was available from time to time, Bayer management would spread the word of it by word of mouth, where I would be told by my

supervisor that I could volunteer to be laid off and receive my severance.  This aspect of my employment with Bayer also caused me, in part, to remain with Bayer.  I knew of other employees who had volunteered to be laid off under this program and who received severance, including people both in the Board Shop and outside the Board Shop. Some people I recall receiving voluntary severance under the program included Jerry Landgerand, Roselle Terrault, Ann Mclain, Phyllis Beaudoin, Carrie Emond, Suzanne Oulette, Terri DiMarbo, and Isabelle McGuinnis.  Because I worked in several other areas, I knew people in other areas, other than the Board Shop who took the voluntary severance, but I don't recall their names.

5.    At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated but that EFTC was offering us a job with the equal pay and equal benefits.  During the meetings, some the Board Shop employee-Plaintiffs who were present, but I don't recall their names, asked the Bayer managers, including Mr. Ramsden, Normand Fontaine, Michael Paige, Rodney Willis, and Mary Leonard, if Bayer was going to pay our severance. The Bayer managers, especially Mr. Ramsden, stated to us that we would not be paid our severance and that it was not an option because EFTC was offering us a job.  He added that if we don't take a job we are out of a job and we are on the street, and that in either event we get no severance. Mr. Ramsden told us that there were no other jobs for us in Bayer.  In the

meetings, Bayer manager Richard Ramsden, advised us that going to EFTC was a win-win for Bayer and the Board Shop-Plaintiffs because our pay and benefits would be equal to Bayer, we would still be working at the same facility in Wilmington, MA and that Bayer would be able to purchase circuit boards from EFTC. Jack Calderon of EFTC was with some of the Bayer managers at one or two meetings. Mr. Calderon also advised me and others at the meetings that EFTC would be offering the same job to me and the other Board Shop employees with equal benefits and equal pay. Mr. Calderon stated that EFTC would have a "captive" buyer/customer in Bayer in that EFTC had the equipment and contracts, that it would be continuing to produce the circuit boards for Bayer, and that the future looked bright for EFTC and for us. He told us that EFTC would streamline the process and that we would be employed by EFTC well into the future.

6.      In reliance on the statements from Bayer and EFTC, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. At the time, I had a family for whom I had to provide, including a nine year old son, a fourteen year old daughter and sixteen year old daughter. Before I joined EFTC as its employee in 1998, I met with Staci Landress, who worked for Bayer's Human Resources area. Ms Landress gave me  forms to sign up for benefits, tax withholdings, and other documents in preparation for employment with EFTC before September 1998. No one in Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

7.      After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment),

pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent.  As another example, if I had wanted to obtain it, I would have been forced to pay for long term disability insurance when I was with EFTC whereas with Bayer my then employer, Bayer, provided for it.

8.    In about March 1998 Bayer sent to me a pamphlet with a summery of a "significant part" of my "total compensation." The pamphlet summarized for me certain of my accrued benefits, such as pension and 401K, but I don't recall if it mentioned severance.  It was entitled "Your Benefits - A significant part of your total compensation."

9.    When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer manager, Richard Ramsden, at the meetings that I was not entitled to severance. In 1998, as stated above, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard, Rodney Willis, nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. I have a high school education, and two college courses completed but no college degree. I have never held a management or  professional employment position. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same area where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues, but Ms. Leonard never

explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

10.   I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, the other Plaintiffs, and I later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

11.   On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance.

Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 9th  day of August 2007.


 /s/ Richard L. Cote_____
Richard L. Cote

7

8