UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

```
************************************
JOSEPH ATTARDI, ET ALS,                       *
Plaintiffs,                                   *
v.                                            *
BAYER CORPORATION and                         *
BAYER CORPORATION SEVERANCE PAY PLAN, *
Defendants.                                   *
************************************
```

## DECLARATION OF ROBERT E. STIER

I, Robert E. Stier, hereby declare as follows:

1. I am a Plaintiff in this case. Beginning on July 16, 1990, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Agfa Corp., which succeeded from Compugraphic, then later Miles, Inc. and then Bayer Corporation) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all my time with Bayer, I worked in Bayer's Board Shop of Bayer's Electronic Pre-Press Systems Operations area in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. As such, I have personal knowledge of the matters set forth in this Declaration.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for

1

Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, Fiorilla and Guilmette speak for all of them as their authorized representatives. In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I provided information related to my individual claims in this case to Skene, in concert with Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 19, 2004, has been filed with the Court as Exhibit 6, Part D, of the Second Declaration of Attorney Roach. I remained in contact with Skene and provided her information needed to respond to the Defendants' discovery requests and advised them, along with Attorney Roach, of their need to be available for depositions if needed.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by the three Plaintiffs' Representatives, and I agree with and adopt those

       Answers for myself. I further have reviewed the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. I received the SPD in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan), Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). Until this lawsuit was filed, I have never seen Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings).

4.   I accepted my position at the Board Shop initially, in part, due to the availability of severance benefits. I did not look for employment elsewhere, in part, until I accepted a job from EFTC in 1998 because Bayer had issued to me the SPD which provided for severance benefits. Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be laid off from their jobs. Once I volunteered, I believed that I would be paid severance. When the severance layoff was available from time to time, Bayer management would spread the word of it by word of mouth, where I would be told by my supervisor that I could

volunteer to be laid off and receive my severance. This aspect of my employment with Bayer also caused me to remain with Bayer. I knew of other employees who had volunteered to be laid off under this program and who received severance, including Rose-Marie Larson who had worked in the Board Shop. Mainly older workers took the severance offer under the voluntary layoff program. Others I recall who took the severance under this program included Jerry Landgerand, Paul Crouteau, Maria Gallager, Lorraine Donahue, Joe Oliverio, Suzanne Oulette, Phyllis Beaudoin, Lorraine Levesque, Betty Murphy, and Mary Hartman, all of whom worked in the Board Shop.

5. At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that Bayer had looked for a partner, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated, and that EFTC would be offering us a job at the same pay, with the same benefits, in the same area in the Board Shop. The Bayer managers who were present for all or most of these meetings included Mr. Ramsden, Normand Fontaine, Michael Paige, Rodney Willis, Doug Ashworth, Don Baribeau, Earle Christianson and Mary Leonard. Mr. Ramsden stated that Bayer had decided to sell the Board Shop division and that Bayer had decided to get out of the Board Shop manufacturing business and was going to out-source the work to another company, which turned out to be EFTC. Mr. Ramsden stated that Bayer had shopped the Board Shop around. Mr. Ramsden told us that Bayer had turned down some other companies, other than EFTC, which were interested in purchasing the Board Shop

4

because the benefits they would offer to the Board Shop employees were not as comparable as the benefits EFTC would provide. Mr. Ramsden told us that Bayer chose EFTC to sell the Board Shop because EFTC's benefits would be the same as Bayer's benefits, perhaps a little worse in some instances but a little better in other instances, but generally comparable. During the meetings, some the Board Shop employee-Plaintiffs who were present, namely Robert Brown and Joanne Sanzo (and others whose names I don't recall who nodded their heads affirmatively in agreement with them), asked the Bayer managers, including Mr. Ramsden, Normand Fontaine, Michael Paige, Rodney Willis, Doug Ashworth, Don Baribeau, Earle Christianson and Mary Leonard, if Bayer was going to pay our severance. In response, the Bayer managers, especially Mr. Ramsden, stated to us that we would not be paid our severance and that it was not an option. He told us that we can either take the job at EFTC or leave and that in either instance we would not be paid severance. In some of the meetings, Bayer manager Richard Ramsden advised us that going to EFTC was a win-win for Bayer and the Board Shop-Plaintiffs because our pay and benefits would be the same and we would still be working at the same facility in Wilmington, MA and Bayer would have a ready supply of printed circuit boards it would out-source to EFTC with us as EFTC's employees. Jack Calderon of EFTC was with Bayer managers during some of the meetings and told us that we would all be fine if we came to EFTC and that it would be a good partnership if we joined EFTC. Mr. Calderon told us that our benefits and pay would be the same even if EFTC did not meet its performance targets and that EFTC would make adjustments in benefits to match Bayer's benefits. Mr. Calderon told us that the employees are more

      important that the machinery EFTC was buying from Bayer. Other Bayer managers, in addition to Mr. Ramsden, Normand Fontaine, Mary Leonard, Doug Ashworth, Don Baribeau, and Michael Paige also told us that going to EFTC was a good idea for us. Mr. Calderon also advised me and others at the meeting(s) that EFTC would be offering the same job to me and the other Board Shop employees with the same benefits and pay.

6.   In reliance on the statements from Bayer and EFTC, as describe above, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, I met with Staci Landress, who worked for Bayer's Human Resources area. Ms Landress gave me forms to sign up for benefits, tax withholdings, and other documents in preparation for employment with EFTC before September 1998. No one in Bayer or EFTC management or human resources, however, gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

7.   When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer manager, Richard Ramsden, at the meetings that I was not entitled to severance. In 1998, after the meetings described in paragraph 5 above, I briefly read the wording of the SPD's severance language but could not determine from the wording whether I was due severance. I found it confusing and I was not sure which parts applied to me. As stated, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard, Rodney Willis, nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or

    seek an administrative review of severance in 1998 or at any other time. I have a high school education as of 1981. I have never held a management or professional employment position. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same area where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues, but Ms. Leonard never explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

8. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), vacation, and other benefits, were worse that those under Bayer or non-existent. Because Bayer told us that we had to move our 401K to EFTC, I did so but the match by EFTC into the 401K plan was not as good as under Bayer.

9. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, the other Plaintiffs and I, later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who

would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance.

10. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 7th day of August 2007.

                                          /s/ Robert E. Stier
                                          Robert E. Stier