UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                              \*
Plaintiffs,                                          \*
v.                                                   \*
BAYER CORPORATION and                                \*
BAYER CORPORATION SEVERANCE PAY PLAN, \*
Defendants.                                          \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DECLARATION OF VINCENT S. FIORILLA**

I, Vincent S. Fiorilla, hereby declare as follows:

1. I am a Plaintiff in this case, and I have personal knowledge of the matters set forth in this Declaration. My deposition was taken in this case on April 21, 2006 ("Deposition"). Beginning on December 1, 1969, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer. For all of my time with Bayer, I worked in Bayer's printed circuit board shop, commonly call the "Board Shop", of Bayer's Electronic Pre-Press Systems Operations area, with the last location being in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998. At the time of my termination from Bayer, I was a manager of the Board Shop and had 100 people under my supervision at that time (See my Deposition at 7).

2.  I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for Summary Judgment. Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, Jeanne Skene ("Skene"), myself Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually. Skene originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants. At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Skene, myself and Guilmette speak for all of them as their authorized representatives. (See my Deposition at 69). In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I collected and provided information related to my individual claims in this case to Skene and to Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories, Document Production, and deposition testimony. Before the case was filed I signed and returned to Skene to give our counsel my authorization for the committee of the Plaintiffs' Representatives, and my authorization, dated March 17, 2004, has been filed with the Court as Exhibit 6, Part B, of the Second Declaration of Attorney Roach. I remained in contact with Skene, Attorney Roach and other Plaintiffs and provided Attorney Roach information needed to respond to the Defendants' discovery requests and advised Plaintiffs, along with Attorney Roach, of their need to be available for

        depositions if needed, and I was deposed on April 21, 2006, upon the notice of the Defendants, at the office of their attorney, John Welsh.

3.    I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by myself and the other two Plaintiffs' Representatives, Skene and Guilmette, and I agree with and re-adopt those Answers for myself. I further am making a claim under reviewed the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. The other Plaintiffs and I received the SPD in 1995 or 1996. (See my Deposition at 48). It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. (See my Deposition at 118). No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan) from my Deposition, Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). I have also reviewed all filings in Court by the Plaintiffs in this case up to this date through Attorney Roach as well as the deposition transcripts and deposition exhibit of those deposed in this case.

4.  As part of my job as a manager at Bayer, I was given the Bayer Human Resources Department Employee Practices manual to use to guide the Board Shop employees under me and to answer questions they may pose to me from time to time.  Exhibit 63 from the Deposition of David Marr (Plaintiffs' Exhibit 9 of the Plaintiffs' Summary Judgment filings) was a part of the Bayer Human Resources Department Employee Practices manual as Section 8-3 of the manual.

5.  I accepted my position at the Board Shop when I was about 20 years old in 1969. Within a few years, especially as the economy changed in the 1970s, with economic uncertainty in manufacturing and outsourcing, I learned that severance was a very important benefit that I possessed with Bayer's predecessor. Accordingly, I stayed with my job in the Board Shop due, in part, to the availability of severance benefits.  I did not look for employment elsewhere, in part, from 1995 through August 1998 because Bayer had issued to me the SPD which provided for severance benefits.  Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be off from their jobs. Once I volunteered, I believed that I would be paid severance. (See my Deposition at 79-86).  When the severance layoff was available from time to time, Bayer management would spread the word of it by word of mouth, where I would be told by my supervisor that I could volunteer to be laid off and receive my severance.  This aspect of my employment with Bayer also caused me to remain with Bayer.  I knew of other employees who had volunteered to be laid off under this program and who received severance, and many of them who I recall (about one-half

      of them) are listed on Ramsden Deposition Exhibit 26, Plaintiffs' Exhibit 33 in the Summary Judgment filings.

6.   At group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, including Richard Ramsden, told me and others, including the Board Shop-Plaintiffs who were present, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated (See my Deposition at 24, 88-89). During the meetings, some the Board Shop employee-Plaintiffs who were present asked the Bayer managers, including Mr. Ramsden, Normand Fontaine, Michael Paige, Rodney Willis, and Mary Leonard, if Bayer was going to pay our severance. In response the Bayer managers, including Mr. Willis, stated to us that we would not be paid our severance whether we accepted the job with EFTC or were simply terminated. (See my Deposition at 24, 89,100-102, 111, 119-120). In at least one of the meetings, Bayer manager Richard Ramsden, advised us that going to EFTC was a "win-win" situation for Bayer and the Board Shop-Plaintiffs. (See my Deposition at 27-29, 98, 133). In a private meeting with Mr. Fontaine, my superior, Mr. Fontaine told me that it was a win-win situation and a good deal for the Plaintiffs. (See my Deposition at 14). Mr. Ramsden told us that our our pay and benefits would be comparable and in many cases better with EFTC and that EFTC wanted the people from the Board Shop with their skills. (See my Deposition at 109-110, 133). Bayer managers also told us at the meetings that we would not be entitled to unemployment benefits. Jack Calderon of EFTC was with Bayer managers during at least one of the meetings. (See

      my Deposition at 24, 33). During my employment with Bayer, the Board Shop was always considered a department of Bayer within the Afga Division of Bayer.

7.   In reliance on the statements from the Bayer managers, as described above, that our benefits would be comparable or better, that I was not entitled to severance, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. The other Plaintiffs also did so for the same reasons, i.e. relying on the statements of Bayer managers and in need of a continuing job. Before I joined EFTC as its employee in 1998, I completed some forms but no one in Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits. (See my Deposition at 96).

8.   When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer managers, especially Richard Ramsden and Rodney Willis, at the meetings that I was not entitled to severance. I trusted Mr. Ramsden and always had trusted him and the other Bayer managers when I was with Bayer. With each prior transaction when a new company took us over after the other Plaintiffs and I started with Compugraphic (Miles Inc., Agfa Corp, Bayer, etc.) we always improved as to our benefits. (See my Deposition at 5, 6, 57, 58, 93-97). In 1998, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. Neither Mary Leonard nor any other Human Resources or other manager at Bayer ever explained the SPD to me, did not advise me that how to claim, appeal or seek an administrative review of severance in

1998 or at any other time. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same area where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues (See my Deposition at 54), but Ms. Leonard never explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

9. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), and other benefits, were worse that those under Bayer or non-existent. A comparison is set forth in Attachment A to the Answers to Interrogatories I signed dated December 7, 2005, as Plaintiffs' Exhibit 2 in the Summary Judgment filings. Bayer told us that we were required to move our 401K plans to EFTC and I did so but the EFTC plan was not as profitable and had fewer investment options. If I had known in August 1998 that the EFTC benefits were at a level that I later discovered were to be true (i.e. considerably worse that Bayer) and Bayer had offered to pay my severance, I would have accepted the Bayer severance and not accepted the EFTC position.

10. I accepted the offer of Skene, who reviewed the SPD for me and the other Plaintiffs, to seek out an attorney, Attorney Roach, to review the SPD after Skene, the other Plaintiffs and I later learned that the Machine Shop employees, who worked in the same building at the time, were terminated and received severance. After the Machine Shop sale in 2000

or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs and to Skene, and we all agreed to get together and seek a legal opinion, through Skene, who would seek out an attorney, Attorney Roach. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance. I have a business studies college degree from New Hampshire College.

11. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 18th day of August 2007.

       /s/ Vincent S. Fiorilla
       Vincent S. Fiorilla