UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10728-WGY

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
JOSEPH ATTARDI, ET ALS,                        \*
Plaintiffs,                                    \*
v.                                             \*
BAYER CORPORATION and                          \*
BAYER CORPORATION SEVERANCE PAY PLAN, \*
Defendants.                                    \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## SECOND DECLARATION OF JEANNE M. SKENE

I, Jeanne M. Skene, hereby declare as follows:

1. I am a Plaintiff in this case, and I have personal knowledge of the matters set forth in this Declaration. My deposition was taken in this case on June 19, 2006 ("Deposition"). Beginning on June 26, 1972, I was employed continuously by Defendant Bayer Corporation ("Bayer") and/or its predecessor companies (starting with Compugraphic) until Bayer advised me in 1998 that it was involuntarily terminating my employment with Bayer (See my Deposition at 23). For all of my year with Bayer, I mostly worked in Bayer's printed circuit board shop, commonly call the "Board Shop", of Bayer's Electronic Pre-Press Systems Operations area, with the last location being in Wilmington, MA, and I was in the Board Shop when in 1998 Bayer terminated my employment and I then accepted a job with Electronic Fabrication Technology Corporation ("EFTC") starting sometime in September 1998.

2. I submit this Declaration in support of Plaintiffs' Opposition to Defendants' Summary Judgment Motion and as partial support for Plaintiffs' Sur-Reply and Cross-Motion for

Summary Judgment.  Before this lawsuit was filed, the 63 original Plaintiffs, including me, unanimously chose three of our group of original 63 Plaintiffs, myself Jeanne Skene ("Skene"), Vincent Fiorilla ("Fiorilla") and Bert Guilmette ("Guilmette") (the "Plaintiffs' Representatives") to make binding representations, statements and decisions on our behalf as a group and individually.  I originally organized all the Plaintiffs to retain an attorney, eventually Attorney Stephen A. Roach, to review the matter for the 63 Plaintiffs and, if needed, to potentially represent us in a claim against the Defendants.  At a pre-lawsuit meeting, all the Plaintiffs unanimously voted to agree to have Fiorilla, myself and Guilmette speak for all of them as their authorized representatives.  In that meeting and a subsequent meeting, as well as through follow-up questionnaires, e-mails and individual telephone contact, I collected from the other Plaintiffs and provided information related to my individual claims in this case to Attorney Roach, to respond to the Defendants' discovery requests, including Answers to Interrogatories, Document Production, and deposition testimony.  Before the case was filed I signed and returned to Attorney Roach my authorization dated April 10, 2004 for the committee of the Plaintiffs' Representatives, which has been filed with the Court as Exhibit 6, Part D, of the Second Declaration of Attorney Roach. I collected from the other Plaintiffs their authorizations and I gave them to Attorney Roach.  I remained in contact with the other Plaintiffs and provided Attorney Roach information needed to respond to the Defendants' discovery requests and advised Plaintiffs, along with Attorney Roach, of their need to be available for depositions if needed, and I was deposed on June 19, 2006, upon the notice of the Defendants, at the office of their attorney, John Welsh.

3. I have reviewed the Plaintiffs' Answers to Interrogatories dated December 7, 2005 and the Plaintiffs' Supplemental Answers to Interrogatories dated January 6, 2007 in this case both signed by myself and the other two Plaintiffs' Representatives, Guilmette and Fiorilla, and I agree with and re-adopt those Answers for myself. I further am making a claim under reviewed the Bayer Corporation Severance Pay Plan ("Bayer Plan") issued in 1995 and the Bayer Summary Plan Description ("SPD") also issued in 1995. I received the SPD in 1995. It was not until after this case was filed, however, that I ever saw the Bayer Plan. Until this case was filed, I did not even know that the Bayer Plan existed, including in 1998. (See my Deposition at 221). No human resources representative from Bayer, and no Bayer manager, supervisor or employee ever told me that the Bayer Plan existed. The only document about which I was aware that contained any provisions about my severance was the SPD. I have also reviewed from this case Exhibits 9 of Vincent Fiorilia (the Bayer Plan) from my Deposition, Exhibits 4 and 5 from the Deposition of Richard Ramsden and Exhibit 63 from the Deposition of David Marr (shown or contained as part of Plaintiffs' Exhibits 9, 10, 11 and 18 of the Plaintiffs' Summary Judgment filings). I have also reviewed all filings in Court by the Plaintiffs in this case up to this date through Attorney Roach as well as the deposition transcripts and deposition exhibit of those deposed in this case.

4. I accepted my job in the Board Shop, in part, due to the benefits, including severance. After I accepted my position at the Board Shop, I stayed with my job in the Board Shop due, in part, to the availability of severance benefits. I did not look for employment elsewhere, in part, from 1995 through August 1998 because Bayer had issued to me the

       SPD which provided for severance benefits. Also, Bayer and the prior companies which employed me in the Board Shop had a voluntary layoff program where I knew I could choose to volunteer to be laid off in place of others who were being selected by management to be off from their jobs. Once I volunteered, I believed that I would be paid severance. (See my Deposition at 129, 155-156, 214-216). When the severance layoff was available from time to time, Bayer management would spread the word of it by word of mouth, where I would be told by my supervisor that I could volunteer to be laid off and receive my severance. This aspect of my employment with Bayer also caused me to remain with Bayer. I knew of other employees who had volunteered to be laid off under this program and who received severance, and some who I recall include Linda Kawa and others who are listed on Ramsden Deposition Exhibit 26, Plaintiffs' Exhibit 33 in the Summary Judgment filings. (See my Deposition at 217).

5.   I was not present at group employee-management meetings in the summer of 1998, July or August, Bayer managers in the Electronic Pre-Press Systems Operations area, where Richard Ramsden and other Bayer managers present told other Board Shop-Plaintiffs who were present, that the Board Shop had been sold to EFTC, and that our jobs at the Board Shop were going to be terminated. I had been out on sick leave and was ready to return at about the time of those meetings but my Bayer superiors told me to not return at that time. I returned to work after the meetings and asked Mr. Ramsden whether I would be paid severance and he told me that I was not eligible for it and the other Board Shop employees also were not entitled to it. He also told me that neither I nor the others were entitled to unemployment. (See my Deposition at 175-176, 182, 207-208). Bayer

manager Normand Fontaine and Senior Human Resources representative Mary Leonard also told me I was not entitled to severance. (See my Deposition at 36-37). In a private with meeting with Mr. Ramsden, my superior, told me that it was a win-win situation and the benefits would be the same at EFTC as they were at Bayer. (See my Deposition at 151-152). During my employment with Bayer, I always heard the Board Shop referred to as a department of Bayer within the Afga Division of Bayer.

6. In reliance on the statements from the Bayer managers, especially Ramsden (See my Deposition at 40), that our benefits would be comparable or better, that I was not entitled to severance, and in need of a steady paycheck with such short notice, I accepted a job with EFTC starting sometime in September 1998. Before I joined EFTC as its employee in 1998, I completed some forms but no one in Bayer or EFTC management or human resources gave me a detailed pre-September 1, 1998 explanation of benefits comparison between Bayer's benefits and EFTC's benefits.

7. When Bayer denied our severance benefits in 1998 as described above, I accepted the word of our Bayer managers, especially Richard Ramsden, that I was not entitled to severance. I believed Mr. Ramsden. (See my Deposition at 40). With each prior transaction when a new company took us over after the other Plaintiffs and I started with Compugraphic (Miles Inc., Agfa Corp, Bayer, etc.) we always had improvements to our benefits. In 1998, I did not know that the Bayer Plan existed, I did not have a copy of it, and no one at Bayer ever told me one existed until I obtained a copy in this lawsuit. In 1998, I read the SPD sections about when severance is not paid but I could not understand it. Neither Mary Leonard nor any other Human Resources or other manager

at Bayer ever explained the SPD to me, they did not advise me on how to claim, appeal or seek an administrative review of severance in 1998 or at any other time. Mary Leonard, a manager in Bayer's Human Relations area in Wilmington, MA, worked in an office in the same building where I was employed in the Board Shop, both before and after I was terminated by Bayer and was employed by EFTC. Ms. Leonard was the main contact for me and the other Plaintiffs for Bayer personnel and benefit issues, but Ms. Leonard never explained to me the terms of the SPD and never advised me whether there existed another document containing language about severance, the Bayer Plan.

8. After I began working at EFTC, I learned that many of its benefits, such as severance (only four weeks total as opposed to Bayer's two weeks for every year of employment), pension (no EFTC pension plan), and other benefits, were worse that those under Bayer or non-existent. A comparison is set forth in Attachment A to the Answers to Interrogatories I signed dated December 7, 2005, as Plaintiffs' Exhibit 2 in the Summary Judgment filings. Bayer told us that we were required to move our 401K plans to EFTC and I did so but the EFTC plan was not as profitable and had fewer investment options. If I had known in August 1998 that the EFTC benefits were at a level that I later discovered were to be true (i.e. considerably worse that Bayer) and Bayer had offered to pay my severance, I would have accepted the Bayer severance and not accepted the EFTC position.

9. In 2000 or 2001, after the sale of the Machine Shop which was within the same building where the other Plaintiffs and I worked, I began to question about whether Ramsden and the other Bayer managers were correct or truthful about our denial of severance. After the

    Machine Shop was sold, some of the employees of the Machine Shop advised me that the company, Olympic, which purchased the Machine Shop equipment employed the Machine Shop workers who also had been paid severance. At the time, I assumed, but did not know, that the Machine Shop people were Bayer employees when they were terminated and paid severance. I then reviewed the SPD for myself and organized the other Plaintiffs to together seek out an attorney, Attorney Roach, for us. After the Machine Shop sale in 2000 or 2001, I spoke about it to many of the other Board Shop employees-Plaintiffs, and we all agreed to get together and seek a legal opinion, through me. At that time, I first began to question whether Bayer had been correct or truthful about the denial of my severance. I have a high school education and have never held a management level or professional job.

10. On my behalf, my attorney, Attorney Roach, sent to Bayer, a letter dated April 2, 2007 letter seeking severance and an administrative review-appeal of my claim for severance under the SPD and the Bayer Plan. I have received and reviewed a copy of that letter. I have also received and reviewed Bayer's written denial dated June 25, 2007 of my severance and request for an administrative review of the denial of my severance. Previously, I had never received anything in writing from Bayer regarding denial of my severance benefits.

    Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing is true and correct. Executed this 28th day of August 2007.

                                                        /s/ Jeanne M. Skene
                                                        Jeanne M. Skene