UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO: 04-10728 WGY

*********************************************
*
JOSEPH ATTARDI, et al.                        *
    Plaintiffs,                            *
                                            *
    v.                                     *
                                            *
BAYER CORPORATION and                         *
BAYER CORPORATION SEVERANCE PAY PLAN, *
    Defendants.                            *
*********************************************

**PLAINTIFFS' OPPOSITION MEMORANDUM TO DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS' OPPOSITION MEMORANDUM AND TO STRIKE PORTIONS OF PLAINTIFFS' CONCISE STATEMENT OF DISPUTED AND UNDISPUTED MATERIAL FACTS**

    The Plaintiffs now come before the Court with the following Opposition Memorandum to the Defendants' Motion to Strike dated February 13, 2007. The Plaintiffs did not previously file an Opposition Memorandum to the Defendants' Motion because the Court remanded this case to exhaust administrative remedies. The Bayer Corporate and Business Services ERISA Review Committee ("Bayer Review Committee") reviewed, and subsequently denied, the Plaintiffs' individual claims for severance benefits. Now that the Bayer Review Committee denied the Plaintiffs' claims, the Plaintiffs oppose the Defendants' Motion as follows:

    1. The Plaintiffs oppose the Defendants' motion to strike the Plaintiffs' assertion that the Bayer Severance Pay Plan ("Bayer Plan") was a vested benefit. The Plaintiffs believed that they would receive severance benefits when Bayer terminated them because of Bayer's voluntary layoff program already address in the Plaintiffs' Memorandum and filings. Many previous employees who volunteered for termination and received severance pay from Bayer under this

1

program.  **D Ex P at 27 (Paradis Dep.); D Ex S at 18 (Skene Dep.)**

The Plaintiffs agree that, on the surface, severance benefits themselves are not vested. What is meant by the statement is that the Defendants utilized the voluntary termination procedures in such a manner that led the Plaintiffs to believe that eventually they would also have the option and ability to volunteer for termination from Bayer and collect severance benefits at that time. **D Ex P at 27 (Paradis Dep.); D Ex S at 213-215 (Skene Dep.).**  The Plaintiffs worked for the Defendants between 10 and 30 years, and the Defendants considered the Plaintiffs a "tenured workforce."  **P Ex 4 at 219.**  The material idea is not whether the procedures were vested in the legal sense, but rather the Plaintiffs believed they were entrusted and entitled to the right to receive severance pay if they were voluntarily terminated.

2.  The Plaintiffs oppose the Defendants' assertion that the Summary Plan Description ("SPD") "specifically and expressly" provided the name of the Bayer Plan and information on how to obtain of a copy of it.  The SPD did not provide the name of the Bayer Corporation Severance Pay Plan, or state the address and/or telephone number of where to obtain a copy. The SPD only gives the main Bayer company number in Pittsburgh.  **P Ex 1 at 106-120 (Marr Dep.); D Ex B at Adm. 1.**  The SPD states that a Bayer Plan exists and provides a plan reference number, but does not clearly indicate that there is a separate document detailing the Bayer Plan, or that the Bayer Plan is separate from the SPD.  **P Ex 1 at 106-120.**  The Defendants admit that a lay person who is not trained in Human Resource matters would likely not distinguish between the Defendants' use of "plan" and "Plan" in finding that a separate document exists apart from the SPD.  **Id. at 119-120.**  Mary Leonard of Bayer's Human Resources department did not know the Bayer Plan even existed.  **P Ex 4 at 58.**

3. The Defendants' argument that not all the Plaintiffs made claims for severance benefits in 1998 to the present is now moot because on remand, all the Plaintiffs made claims for severance benefits to the Bayer Review Committee, and the Bayer Review Committee has reviewed and denied each Plaintiff's claim for severance benefits. All the Plaintiffs have now filed Declarations stating that they previously made a claim for severance benefits.

4. Plaintiffs oppose the Defendants' motion to strike. Even if the Court allows the motion to strike, the fact that the Defendants' agreed to pay EFTC for circuit boards at an above-market rate shows that the Defendants avoided severance by inducing EFTC to hire the Plaintiffs at the same rate of pay as they had while working for Bayer. Bayer admitted that had the Defendants simply shut the Board Shop down instead of selling it to EFTC, the Plaintiffs would be owed severance pay. **P Ex 7 at 115-116.**

5. The Plaintiffs oppose the Defendants' motion to strike as it is not appropriate for a motion to strike because the Defendants have not cited any evidentiary grounds to base their motion on. Rather, at best this is an issue of fact and credibility. Attorney Collins indicated that the notes did not refresh her memory. **D Ex Q at 10, 13, 26, 28-29, 49, 51.** If Attorney Collins's notes did not refresh her memory as to her thoughts in 1998, she may not testify as to what the notes mean. Alternatively, the Defendants did not introduce Attorney Collins's notes as a past recollection.

6. The Defendants' motion is now moot because Bayer, through the Bayer Review Committee, has denied each of the Plaintiff's individual claims for severance benefits. In any event, each Plaintiff has also now stated in a Declaration, all of which were filed with the Court on August 31, 2007, that he or she verbally requested severance benefits from Bayer and were

told by Bayer representatives, namely Richard Ramsden, Michael Paige and other managers, that Bayer would not pay severance benefits to the Plaintiffs.

    7. Mary Leonard, during her Bayer 30(b)(6) testimony, mentioned that she spoke with individuals who were affected by the sale of Board Shop to EFTC regarding their severance benefits. **P Ex 4 at 54-57.** The record clearly shows that Leonard spoke with some of the Plaintiffs about their benefits. For example, the record reads, "Q: Did any of them ask you anything about whether they would be paid severance if they went to EFTC once they were terminated? A: At some point individuals did inquire about their severance."

    As to the extent that the Defendants' argue the Plaintiffs failed to make a claim for severance benefits, the issue is now moot because the Plaintiffs all made a claim for severance benefits from the Defendants, which the Defendants denied through the Bayer Review Committee.

    The Plaintiffs also oppose the Defendants' motion to strike the Plaintiffs' assertion that Leonard never showed the Plaintiffs the SPD language because the Defendants' motion is not grounded on an evidentiary basis. Rather, this is an issue of fact. The Defendants seek to strike the Plaintiffs' assertion by referencing Leonard's testimony during her Bayer 30(b)(6) deposition that she showed the SPD language to the Plaintiffs. The Plaintiffs have all now stated in a Declaration, all of which were filed with the Court on August 31, 2007, that Mary Leonard did not show this information to them.

    8. Plaintiffs oppose Defendants' motion. Mary Leonard spoke of a process where employees could complete an "Expression of Interest" form when they heard of an impending reduction in force indicating that they would like to be considered for termination. **P Ex 4 at 86-**

**88.**  Those who volunteered and were accepted for termination were considered terminated involuntarily and received severance benefits.  **Id. at 177-178.**

Richard Ramsden during his Bayer 30(b)(6) deposition also spoke of a voluntary termination program where those who volunteered for termination when the Defendants needed to reduce the size of their workforce would receive severance benefits.  **P Ex 6 at 295-302.**  Bayer would not terminate every person who volunteered for termination.  **Id. at 296-97.**  Those who were accepted received severance "as part of the normal reduction in force."  **Id. at 297.**

Additionally, the material issue here is whether a program, policy or procedure allowing volunteers to receive severance benefits exists.  Whether "all" volunteers for termination were accepted and ultimately received severance benefits is not important, only that such a practice existed.

9.  Plaintiffs oppose the Defendants' motion because Mary Leonard does not remember any <u>specific</u> discussions, or the contents of any specific discussion, which she had with Rodney Willis about the Plaintiffs' claims for severance benefits, only that she spoke with Mr. Willis and that he told her the Plaintiffs would not be eligible for benefits.  **P Ex 4 at 65-67.**  Leonard did not recall when she first spoke with Willis about the Plaintiffs' claims for severance benefits, whether she spoke to Willis in person or over the phone, or how many times she spoke with Willis about the Plaintiffs' claims for benefits.  **Id.**

10.  Plaintiffs oppose the Defendants' motion to strike because the facts show that Bayer knew of the Plaintiffs' claims for severance in, and prior to, 2002.  The Plaintiffs' make a verbal claim for benefits in 1998 to Bayer, which Bayer verbally denied.  **P Ex 2 at 5-8; D Ex S at 18-20, 36-37.**  Bayer, through Richard Ramsen, denied the Plaintiffs' claim for benefits.  **P Ex 1 at**

5

**129-132.** Bayer admits that a claim for benefits may be made verbally. **P Ex 13 at 128-129.**

Plaintiffs' counsel sent a letter to Agfa in 2002. Bayer and Agfa Corporation entered into an indemnification agreement that would have included any Bayer employee claims as part of the transaction where by Agfa Division of Bayer was "carved out" of Bayer and came under Agfa Corporation in 1999. **D Statement ¶ 39; P Ex 7 at 109-110; P Ex 2, Attachment 4, letter of Aug. 11, 2004 from Bayer to Roach.** Mr. Sarafin, Agfa Corporation's in-house counsel and formerly Bayer's in-house counsel, worked with Bayer's present counsel as Agfa Corporation's in-house corporate attorney liaison handling this matter. **P Ex 7 at 109-110.** Therefore, Bayer was on written notice in 2002 of the Plaintiffs' claim for severance benefits.

11. The Defendants are improperly moving to strike an argument made by the Plaintiffs. The facts speak for themselves.

12. The Defendants' motion to strike facts concerning the Plaintiffs' selection of Ms. Jeanne Skene, Mr. Vincent Fiorilla and Mr. Bertrand Guillimette as their representatives is now moot. The Defendants' claims that Plaintiffs' counsel refused to provide the agreement appointing the Plaintiffs' representatives is false, as the agreement is on file. **See 2d Roach Decl., Parts A-D**; see also, Declarations of Plaintiffs filed with the Court on August 31, 2007. The agreement is on file, and the agreement also was verbal as to all issues in this matter. Also, all Plaintiffs have now stated in a Declaration, filed with the Court on August 31, 2007, that they agreed to and appointed Ms. Skene, Mr. Fiorilla and Mr. Guillimette as their representatives in this matter. This motion is moot in any event because the Bayer Review Committee heard, and denied, all the Plaintiffs' claims on remand, and all the Plaintiffs' have now made Declarations, filed with the Court on August 31, 2007. Each Plaintiff's claim is now before the Court.

13. The Plaintiffs oppose the Defendants' motion to strike Plaintiffs' Exhibit 2, entitled Plaintiffs' Answers to Interrogatories. The Defendants sent only <u>one</u> set of Interrogatories to the Plaintiffs' counsel after all the Plaintiffs agreed that three representatives, Ms. Skene, Mr. Fiorilla and Mr. Guillimette, would sign the Interrogatories on behalf of all the Plaintiffs. Also, the Defendants' objection is now moot because all the Plaintiffs have separately adopted the Answers to Interrogatories signed by Ms. Skene, Mr. Fiorilla and Mr. Guillimette in individual Declarations, filed with the Court on August 31, 2007, and made other statements in those Declarations.

14. The Defendants' motion to strike the Plaintiffs' Supplemental Answers to Interrogatories is now moot for the same reasons as stated above. The Defendants only sent <u>one</u> set of Interrogatories to Plaintiffs' counsel, and all the Plaintiffs agreed that Ms. Skene, Mr. Fiorilla and Mr. Guillimette would act as their designated representatives in this matter. The Plaintiffs separately agreed that Ms. Skene, Mr. Fiorilla and Mr. Guillimette would answer and sign the interrogatories on behalf of all the Plaintiffs. All the Plaintiffs adopted the Answers signed by Ms. Skene, Mr. Fiorilla and Mr. Guillimette in their respective Declarations to the Court, filed with the Court on August 31, 2007.

15. The Plaintiffs oppose the Defendants' motion as it is not grounded in an evidentiary basis. The June 25, 2007 letter addressed to Plaintiffs' Counsel from the Bayer Review Committee is signed only by the Committee itself. No individuals who sit on the Committee were identified, and no individual signed the June 25, 2007 letter. Norman Beesley, during his Bayer 30(b)(6) Deposition Testimony, admitted that he sat on the Committee for approximately 15 years, but that he didn't know how a person would make a claim for severance benefits. **P Ex**

**13 at 143-145.**

Plaintiffs' Counsel, in a letter to Defendants' Counsel dated August 6, 2007, requested: the identities of those persons who sat on the Bayer Review Committee when it denied the Plaintiffs' claims for benefits; any notes of the Committee's meeting concerning the Plaintiffs' claim; and any rules, policies and/or procedures that govern the Committee's decision making. Plaintiffs have not yet received this information.  **See 3d Roach Decl. Ex 4.**

                PLAINTIFFS,
                By their attorney,

                _____
                Stephen A. Roach, BBO No. 542138
                ROACH & WISE, LLP
                50 Congress Street, Suite 400
                Boston, MA 02109-4061
                (617) 723-2800

Dated: August 31, 2007

## CERTIFICATE OF SERVICE

I, Stephen A. Roach, Attorney for the Plaintiffs, hereby certify that on August 31, 2007, I served the Defendants with this document by causing copies of the same to be mailed by first class mail to their counsel of record and/or by e-filing.

                _____
                Stephen A. Roach